N3HDPERA

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

          v.                              23 Cr. 099 (LJL)

KEVIN PEREZ,

                                                              Arraignment
              Defendant.

------------------------------x

                                                              New York, N.Y.
                                                              March 17, 2023
                                                              12:30 p.m.

Before:

                        HON. LEWIS J. LIMAN,

                                                    U.S. District Judge

                            APPEARANCES

DAMIAN WILLIAMS
     United States Attorney for the
     Southern District of New York
JAMES ALAN LIGTENBERG
     Assistant United States Attorney

JEFFREY LICHTMAN
DAVID GELFARD
     Attorneys for Defendant

1           (Case called; appearances noted)

2           THE COURT:  All right.  Mr. Ligtenberg, tell me the

3   purpose we're here for today.

4           MR. LIGTENBERG:  We are here for an arraignment, and

5   then I think your Honor wants to schedule a status conference

6   where we can get all the defendants together at the same time.

7           THE COURT:  I understand this is your first appearance

8   before me; is that correct?

9           MR. LIGTENBERG:  Yes, your Honor.

10          THE COURT:  Have you been given an oral 5(f) order?

11          MR. LIGTENBERG:  No, your Honor.

12          THE COURT:  So let me start with that.  I direct the

13  prosecution to comply with its obligations under *Brady v.*

14  *Maryland*, and its progeny to disclose to the defense all

15  information, whether admissible or not, that is favorable to

16  the defendant, material either to guilt or punishment and known

17  to the prosecution.  Possible consequences for non-compliance

18  may include dismissal of individual charges or the entire case,

19  exclusion of evidence, and professional discipline, or court

20  sanctions on the attorneys responsible.

21          I will be entering a written order more fully

22  describing this obligation and possible consequences of failing

23  to meet it, and I direct the prosecution to review and comply

24  with that order.

25          Does the prosecution confirm that it understands its

1    obligations and will fulfill them?
2             MR. LIGTENBERG:  Yes, your Honor.
3             THE COURT:  All right.  So, Mr. Lichtman, is it
4    correct that we're here today for the purpose arraignment and
5    initial conference?
6             MR. LICHTMAN:  Yes, your Honor, that's accurate.
7             THE COURT:  Okay.  Let me arraign Mr. Perez.
8             Mr. Perez, have you seen a copy of the indictment
9    against you?
10            THE DEFENDANT:  Yes, sir.
11            THE COURT:  Have you read it?
12            THE DEFENDANT:  Yes, sir.
13            THE COURT:  Would you like me to read it out loud to
14   you?
15            THE DEFENDANT:  No.
16            THE COURT:  Have you discussed the indictment with
17   your lawyers?
18            THE DEFENDANT:  Yes, sir.
19            THE COURT:  How do you plead to the indictment?
20            THE DEFENDANT:  Not guilty.
21            THE COURT:  Thank you.  You may be seated.
22            So, Mr. Ligtenberg, why don't you tell me about the
23   case and where we stand with discovery.
24            MR. LIGTENBERG:  A racketeering conspiracy and a
25   number of acts of violence, including a murder in aid of

1     racketeering charging this defendant.  The parties have
2     conferred about --
3              THE COURT:  Discovery.
4              MR. LIGTENBERG:  Oh, yes.  So discovery is going to be
5     voluminous.  We're putting it together.  It consists of police
6     reports, videos, social media, subpoena returns, phones, search
7     warrants, search warrant returns.
8              We've sent around a proposed protective order.  I
9     understand that another defense counsel, not this one, has some
10    issues, so we may be raising that with the Court at the status
11    conference.  He disagrees with certain provisions that we feel
12    are necessary in the protective order, but once that is
13    resolved, we expect to start at least rolling discovery, what
14    we have relatively soon.
15             THE COURT:  Once you start rolling, how long do you
16    expect the rolling to take, and when will it be concluded?
17             MR. LIGTENBERG:  Yeah.  As I said, I think it's pretty
18    voluminous.  I think we'd expect to be done, you know, within a
19    few months.
20             THE COURT:  With respect to this defendant in
21    particular, can you describe for me what law enforcement
22    techniques were used and --
23             MR. LIGTENBERG:  Yes.  There are video files, search
24    warrants of social media accounts --
25             THE COURT:  Search warrants of what?

1             MR. LIGTENBERG:  Of information on like Instagram or
2    Facebook accounts, so messages, posts, things like that.  And I
3    believe there's also at least one phone for this defendant.
4             THE COURT:  Okay.  Any post-arrest statements for this
5    defendant?
6             MR. LIGTENBERG:  I don't believe so.
7             THE COURT:  Okay.  And search incident to arrest, that
8    would be an issue?  Do you know?
9             MR. LIGTENBERG:  I mean, I'm sure he was searched
10   incident to arrest.  He is charged with I believe a felon in
11   possession that involved a search.
12            THE COURT:  Was there any wiretap evidence in this
13   case?
14            MR. LIGTENBERG:  No, your Honor.
15            THE COURT:  Okay.  All right.  So I gather you've
16   discussed with the defense a next appearance and how you
17   propose I handle the matter; is that correct?
18            THE DEFENDANT:  Yes.  I reached out to all defense
19   counsel to sort of get everyone's availability in the hopes
20   that we could all come together at one time, unlike for the
21   arraignments, and it sounds like for all defense counsel there
22   would be availability May 1st through 4th, and May 8 and 9.
23   But the government is available whenever.
24            THE COURT:  Okay.  Let me hear from Mr. Lichtman.
25   What I have in mind is that we would have a next conference

where the government would more fully describe the discovery in the case, where we would discuss an end date for the production of discovery, and where we would begin to discuss deadlines for motions and a trial of this magnitude, at least begin to discuss a potential trial date.

MR. LICHTMAN:  Judge, that's fine.  Just so you know, this was initially a state case nextdoor.  The capital charge or potential capital charge is what was charged at 100 Center Street, so we've been through a lot of the discovery pertaining to that charge already.  So we have an idea of at least what that part of the case is.  And, granted, it's not all of it, because there's a RICO charge here, and there's other things that are -- shootings that are actually charged.

The issue I would raise is with regard to the discovery.  I understand that there is some issue from one of the defense counsel about what's described as -- it's a typical protective order, sensitive information that can only be disclosed to defense counsel and to the defendant, but it has to be not left with the defendant.  At this point, I don't want to delay any of the discovery, so perhaps -- and what it says is that absent a Court Order, so if there's any issue with regard to material that we believe should not be deemed sensitive for whatever reason, it allows us, the protective order, the opportunity to come to the Court and -- look, we'd like to leave this with the defendant, because it is hard to

prepare for a case when you have a defendant who's detained. And we can't leave a large bulk of the material in the MDC so that they can actually study it when they're not in meetings with us.  So it may be that we certainly have to come back and ask for some of this information not to be designated sensitive as such.  I just don't want to wait if it's going to be a week or three weeks or a month before this issue is resolved, before we start getting discovery.

So what I would suggest, and perhaps if it's only for this defendant, is that whatever the government was planning on turning over pursuant to this order, which I'm prepared to sign today, it may be altered down the line, that we receive it now, act under the contours of this order, and if there is a later agreement reached or if we need to come back to the Court for some -- for an application to have some of it removed from that sensitive column, that we do so.

I just don't want there to be any time wasted at all. As I said, he's been sitting in jail, first in Rikers Island, you know, when he was 18 years old for a year before we got here.  This isn't a new case for him.  It's a new case for us, though.

THE COURT:  All right.  Let me hear from the government with respect to that proposal.

MR. LIGTENBERG:  Well, in terms of the protective order, I don't think we disagree with that.  We're the ones who

1    are proposing the protective order, but to act without the

2    consent of another counsel who's not here today, because --

3            THE COURT:  Well, no.  No.  I think what Mr. Perez'

4    lawyer is proposing is that you would start production to him

5    pursuant to the terms of the protective order that you and he

6    agree on.  The terms of that protective order I gather would

7    prevent him from sharing with other defendants, or at least his

8    client from sharing with the other defendants, and at least you

9    can get the -- he can start reviewing the discovery.

10           MR. LIGTENBERG:  I think one problem that comes to

11   mind with this, I believe -- I don't have it in front of me --

12   that the protective order includes provisions that allow for

13   cross-production of certain materials, and so unless all

14   defense counsel have agreed to that cross-production, there are

15   certain materials that couldn't necessarily be cross-produced.

16   And I think there are also some suggestions made by counsel --

17   it's counsel for Mr. Smith, that the government is amenable to

18   and doesn't have a problem with, but then we're going to have

19   multiple iterations of the protective order.

20           We're fine to hash all this out and, frankly, we're --

21   if the Court wants to have the conference with everyone sooner,

22   the government is ready and available to do that any time.  We

23   can do it next week.

24           THE COURT:  No, I understand that, but there are

25   challenges with respect to getting everybody in the same room.

N3HDPERA

1  You understand that.
2       I take it there must be some discovery that is unique
3  to Mr. Perez or that is relevant to him, correct?
4       MR. LIGTENBERG:  Yeah.  There --
5       THE COURT:  So does the government have that
6  segregated in some way?  Is there some discovery with respect
7  to Mr. Perez that if this was a single defendant case, you
8  would be able to produce it to his lawyer?
9       MR. LIGTENBERG:  We could -- I mean, a lot of that
10 would be sort of like arrest records and personal info.  I'm
11 not sure it would be terribly useful.  Other things, you know,
12 like police files, that would go to everyone.  We will have to
13 redact those, because they contain a lot of information about
14 victims and witnesses, and so I don't think it's as if we're
15 prepared to make a big production, you know, today in any case,
16 putting aside the issue with the protective order.  But if he
17 wants us to start producing, we can try to do that.
18      THE COURT:  Why don't I sign the protective order that
19 you and he have agreed upon.  You can start making production.
20 You should certainly start the redaction process, because
21 you're going to need to do that anyway.
22      MR. LIGTENBERG:  And we have.
23      MR. LICHTMAN:  Well, Judge, in terms of the redaction,
24 it's my understanding the material they deem sensitive would
25 include material they would now be talking about redacting.

1  Produce it to the defense lawyer, and we won't disseminate it.

2  THE COURT: Well, I'm not going to set a deadline for
3  the government's production of documents until I have a
4  protective order that all defendants are agreed upon, or that I
5  have a conference where I hash it out with all of the lawyers.

6  I don't have any problem -- I think your suggestion is
7  a good one, that the government could start producing the
8  material, but there are going to be issues that will cross --
9  be relevant to all defendants, and I'm not going to make the
10 government make a decision today in a case that is -- or have
11 me make a decision today on an issue that would be relevant to
12 everybody without having the lawyers for those other people
13 present.

14 MR. LICHTMAN: Judge, I understand, but my point is we
15 would not disseminate it to any other counsel in the case, and
16 we would abide by this protective order, so any material that
17 we receive that should be -- that was allowed to be cross I
18 suppose provided to other people, we would agree until the
19 other lawyers sign any -- you know, any iteration of this
20 protective order, that we would keep it to ourselves.

21 We just don't want to wait until May before this issue
22 get resolved. You know, again, this is a case where he's the
23 only defendant that's been in for a year, and we'd like to get
24 going if we have the opportunity.

25 With regard to the redactions, it's my understanding

that the whole point of the protective order is to not redact, that there's materials to just give to the defense lawyer that can't be disseminated or left with the defendant that wouldn't be redacted; and we would keep it and not disclose.

Keep in mind, also, and this is not for today, we're not litigating this issue, this is a year-old case. There's been no allegations there's been harm to any of the witnesses from the state discovery we received. And I can tell you some of the state discovery we received, when there was an application to redact certain witnesses, they missed the names in some of the redactions. Not surprising. It happens. But there was no effort to contact the witnesses.

Again, I'm not looking to litigate this today. I just don't want to wait until May. I'd like to get started. We're on this case for a year, and it's time. If we can get it, we can get it.

THE COURT: Okay. Well, what you're going to do is you'll both sign a protective order that you've agreed upon. You'll submit it to me. The government can start making its productions. With respect to redactions, I'm not going to rule on anything with respect to redactions. I'm not going to set a deadline. I am going to direct the government to act in good faith to start to turn over whatever it can turn over.

If you are asking for -- well, I'm prepared to do a conference on May 1. I take it you're available on May 1?

N3HDPERA

1     MR. LICHTMAN:  Judge, I'm available on May 1, but I
2  think the reason there was the May 1 date, it was ostensibly
3  that there's already been significant discovery disclosure, and
4  then we could start having the more intelligent, knowing
5  conversations about the rest of the case.
6     THE COURT:  I understand.  Do you want me to set a
7  date two weeks from now for all counsel?  I'm happy also to do
8  that, and then you can hash it out amongst yourselves for
9  whether you're all going to be available two weeks from now,
10 and you can exercise your powers of persuasion on the counsel
11 for the other defendants.
12    MR. LICHTMAN:  That's fine.
13    THE COURT:  I'm perfectly happy to do that.
14    MR. LICHTMAN:  Why don't I do that then and speak to
15 the other counsel.  I just don't want the May date to be the
16 date where we discuss these important issues pertaining to the
17 disclosure of discovery.
18    What I'll do is I'll speak to them.  If we can agree
19 on a date or get the government to agree to perhaps an amended
20 protective order before then, we'll let the Court know.  I just
21 don't want to waste two months.
22    THE COURT:  Well, my one challenge, and I welcome your
23 thoughts with respect to it, is the speedy trial clock.  You've
24 got rights under the speedy trial clock, but I would rather
25 avoid a situation where I set the next conference for two weeks

from now and then I have you come back to me and say, listen, we can't all get together two weeks from now; actually, May 1 is the earlier date that we can do it.  Then I have to do waivers of the Speedy Trial Act by letter.  I don't want to do that.

So I can set two conference dates, a date for -- to discuss motions, which would be May 1, and an earlier date to discuss the production of discovery, if you want that, then see whether your client would be willing to wait until May 1.

MR. LICHTMAN:  I can tell you all, the counsel so far, from my understanding, have agreed to waive until May 1, but let me perhaps speak to the other lawyers and see if we can short circuit this.  I don't think this is significant enough of an issue to cause any kind of delay in discovery, which is why I'm so adamant about it.  But perhaps I can speak to them today and over the weekend, and we can have something for you next week.

THE COURT:  So this is what we're going to do.  I'm going to set a conference date for May 1.  If you want to be heard before me before May 1, you can write me a letter, and I will schedule a conference and we'll have your client present.  Hopefully we'll have lawyers for the others present.  You'll indicate to me whether the lawyers for the others will be present.  Then I'll hear you prior to May 1.

MR. LICHTMAN:  That makes sense, Judge.

N3HDPERA

1    THE COURT:  Okay.  Is there anything else that we
2 should discuss on your end?
3    MR. LICHTMAN:  Nothing from the defense, Judge.
4    THE COURT:  Let me ask one question of the government.
5 Because this is a case where there's a charge of murder in aid
6 of racketeering, and I'm not familiar enough with respect to
7 the statutes to know whether this is a case that would be death
8 eligible, and whether there's a process at main justice or
9 whether all of that is taken care of or irrelevant --
10    MR. LIGTENBERG:  Yeah, it is a death eligible case.
11 There is a process through main justice where there's a
12 decision made as to whether the department will be seeking the
13 death penalty.  That is, you know, in the works, but there has
14 been no decision yet, so as of right now it is a death eligible
15 case.
16    THE COURT:  Okay.  So I gather that may lead to some
17 delay in terms of how quickly I can schedule this for trial.
18 Is that right, from defense counsel's perspective?
19    MR. LICHTMAN:  That's been my experience.  I've had a
20 few of these cases, Judge.  There's a significant delay in
21 getting a decision from Washington.  There's got to be
22 applications made.  I believe there's got to be learned counsel
23 appointed.  I don't think we need to do any of that today, but
24 this is a process that takes -- this will delay things.
25    THE COURT:  That's been my experience so far.  So, all

1    right.  Well, let me set a conference date for May 1,
2    conference time for May 1.
3             Does 2:00 p.m. on May 1 work for the government?
4             MR. LIGTENBERG:  Yes, your Honor.
5             THE COURT:  Does it work for the defense?
6             MR. LICHTMAN:  That's fine, Judge.
7             THE COURT:  All right.  Next conference, May 1 at 2:00
8    p.m. for the purpose of discussing any issues with respect to
9    the protective order, the length of time to produce discovery
10   and at least to set a preliminary date with respect to motions
11   and trial.
12            Anything else from the government besides the Speedy
13   Trial Act?
14            MR. LIGTENBERG:  No, your Honor.
15            THE COURT:  Anything else from the defense besides the
16   Speedy Trial Act?
17            MR. LICHTMAN:  No.  Nothing, your Honor.
18            THE COURT:  Does the government have an application?
19            MR. LIGTENBERG:  Yes.  The government requests the
20   time between now and May 1, 2023, be excluded in the interest
21   of justice to allow the government to produce the discovery,
22   defendants to review discovery, and the parties to discuss
23   possible disposition without the need for trial.
24            THE COURT:  What is the defendant's position?
25            MR. LICHTMAN:  We consent to such a finding, Judge.

1     THE COURT:  Okay.  The Court will exclude time from
2 today until May 1, 2023, under the Speedy Trial Act, 18 U.S.C.
3 3161(h)(7)(A).  I find the ends of justice outweigh the
4 interests of the defendant and the public in a speedy trial in
5 that date and time until May 1 is necessary for the government
6 to begin to get the discovery ready for production, and to
7 discuss protective order, and to begin to produce discovery, as
8 well as for the parties to discuss whether there's a
9 possibility of disposition of the matter.
10     Anything further from the government?
11     MR. LIGTENBERG:  No.  Thank you, your Honor.
12     THE COURT:  From the defense?
13     MR. LICHTMAN:  No, your Honor.
14     THE COURT:  All right.  I'll see you all on May 1.
15     MR. LICHTMAN:  Thank you.
16     MR. LIGTENBERG:  Thank you.
17     (Adjourned)