UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK
_____
                                          :
UNITED STATES OF AMERICA,    :    Case Number: 23-cr-099(LJL)
                                          :
 Plaintiff,                          :    MEMORANDUM OF LAW IN
                                          :    SUPPORT OF DEFENDANT
 v.                                  :    KEVIN PEREZ'S PRETRIAL
                                          :    MOTIONS
KEVIN PEREZ,                       :
                                          :
 Defendant.                        :
_____:

---

## MEMORANDUM OF LAW AND APPENDIX IN SUPPORT OF DEFENDANT KEVIN PEREZ'S PRETRIAL MOTIONS

---

 THOMAS R. ASHLEY, ESQ.
 NJ BAR ID NO.: 242391967
 The Law Office of Thomas R. Ashley
 50 Park Place, Suite 1400
 Newark, New Jersey 07102
 TEL: (973) 623-0501
 FAX: (973) 623-0329
 E-MAIL: Ashleylaw@traesq.com

Thomas R. Ashley, Esq.    Attorney for Defendant-Movant
On the Memorandum of Law    Kevin Perez

# **TABLE OF CONTENTS**

**Page No.**

TABLE OF AUTHORITIES …………………………………………….. vi

INTRODUCTION …………………………………………………... 1

PROCEDURAL HISTORY/RELEVANT BACKGROUND ……………………. 2

LEGAL ARGUMENT …………………………………………………… 4

    POINT I

    COUNT ONE (RACKETEERING CONSPIRACY) SHOULD
    BE DISMISSED FOR UNCONSTITUTIONAL VAGUENESS
    AND INSUFFICIENT PARTICULARITY OR, ALTERNATIVELY,
    THE GOVERNMENT SHOULD BE COMPELLED TO PROVIDE
    A BILL OF PARTICULARS ……………………………………………4

        I. Count One Should Be Dismissed Due to Vagueness ………………….. 6

            A. The relevant law …………………………………………….. 6

            B. The Indictment ……………………………………………... 10

            C. Discussion

                1. The Indictment Fails To Allege the Racketeering Acts
                   that Were the Object of the Conspiracy with which Mr.
                   Perez Was Charged ………………………………………….. 13

                2. The Indictment Also Fails To Particularize the
                   Racketeering Acts …………………………………………… 15

    POINT II

    THE GOVERNMENT SHOULD PROVIDE A BILL OF
    PARTICULARS DUE TO THE UNCONSTITUTIONAL
    VAGUENESS IN THE INDICTMENT ………………………………… 18

i

I. The Government Should, Alternatively, Provide a Bill of
Particulars ................................................................................. 18

    A. Legal Principles .................................................. 18

    B. Discussion ........................................................... 22

POINT III

THE GRAND JURY MINUTES SHOULD BE ORDERED
TO BE DISCLOSED ............................................................... 26

POINT IV

THE COURT SHOULD ORDER THE GOVERNMENT TO
PROVIDE ANY RULE 404(b) EVIDENCE THAT THE
GOVERNMENT INTENDS TO USE AT TRIAL ............................. 31

POINT V

COUNT SIX THROUGH ELEVEN MUST BE SEVERED
AS MR. PEREZ IS NOT DIRECTLY NAMED IN THESE COUNTS ..... 33

POINT VI

THE COURT SHOULD ORDER THE GOVERNMENT TO
DISCLOSE ALL OUTSTANDING *BRADY/GIGLIO* EVIDENCE ......... 35

POINT VII

THIS COURT SHOULD ORDER THE EARLY DISCLOSURE
OF *JENCKS* MATERIAL ......................................................... 37

POINT VIII

THE COURT SHOULD ORDER THE GOVERNMENT TO
PROVIDE ANY STATEMENTS MADE BY DEFENDANT
PEREZ TO ANY ALLEGED CO-CONSPIRATOR .......................... 38

ii

POINT IX

THE COURT SHOULD ORDER THE GOVERNMENT TO
PROVIDE A LIST OF RECORDINGS AND OTHER
EXHIBITS THAT THE GOVERNMENT INTENDS TO
OFFER AS EVIDENCE AT TRIAL ……………………………………… 39

POINT X

THE COURT SHOULD ORDER THE GOVERNMENT TO
PROVIDE A WITNESS LIST ……………………………………………. 40

POINT XI

THE COURT SHOULD ORDER THE GOVERNMENT TO
PRESERVE AND PRODUCE ALL NOTES OF LAW
ENFORCEMENT AGENTS ……………………………………………... 42

POINT XII

THE COURT SHOULD ORDER THE GOVERNMENT TO
PROVIDE NOTIFICATION OF EXPERT WITNESSES ……………… 43

POINT XIII

THE COURT SHOULD ORDER THE GOVERNMENT TO
PROVIDE ANY: (A) STATEMENTS MADE BY THE
DEFENDANT; (B) INSPECTION OF PHYSICAL EVIDENCE;
AND (C) REPORTS OF EXAMINATIONS AND TESTS ……………... 44

POINT XIV

THE COURT SHOULD STRIKE THE PREJUDICIAL
SURPLUSAGE FROM THE INDICTMENT ……………………………. 47

POINT XV

THE GOVERNMENT SHOULD BE REQUIRED TO DISCLOSE
THE IDENTITIES OF THE GOVERNMENT'S WITNESSES ………… 49

POINT XVI

THE COURT SHOULD ORDER AN AUDIBILITY HEARING ………. 51

POINT XVII

DEFENDANT RESPECTFULLY RESERVES THE RIGHT TO
FILE ADDITIONAL MOTIONS …………………………………………… 52


CONCLUSION …………………………………………………………….. 52

APPENDIX:

Indictment (filed February 21, 2023) …………………………………….. Da1-15

Bail Disposition (filed February 23, 2023) …………………………………  Da16

Order regarding *Brady* obligations (filed March 20, 2023) ……………….. Da17-19

Letter of Smith's Counsel (filed March 21, 2023) …………………………… Da20-21

Protective Order (filed March 31, 2023) ………………………………….. Da22-26

Order Appointing Discovery Attorney (filed April 27, 2023) ……………….. Da27-29

Order for Admission *Pro Hac Vice* - Thomas R. Ashley, Esq.
(filed September 23, 2024) ………………………………………… Da30-31

Appearance of Counsel - Husain A. Gatlin, Esq. (filed October
20, 2024) ……………………………………………………………….. Da32

Order of Court - Memo Endorsement (filed October 28, 2024) ……………… Da33

Letter of Thomas R. Ashley, Esq. (dated December 6, 2024) …………….. Da34-42

Government "RICO Enterprise Letter" (dated December 13, 2024) ……… Da43-45

## TABLE OF AUTHORITIES

Page No.

*Brady v. Maryland*,
     373 U.S. 83 (1963) …………………………………………….. 1,35-36

*Giglio v. United States*,
     405 U.S. 150 (1972) ……………………………………………. 1,35-36

*De Binder v. United States*,
     292 F.2d 737 (D.C. Cir. 1961) …………………………………… 27

*Douglas Oil Co. of Cal. v. Petrol Stops Nw.*,
     441 U.S. 211 (1979) ……………………………………………. 27-28

*Hamling v. United States*,
     418 U.S. 87 (1974) ……………………………………………….. 8

*Huddleston v. United States*,
     485 U.S. 681 (1988) …………………………………………… 31

*Napue v. Illinois*,
     360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959) …………………………... 36

*Perkins v. LeFevre*,
     691 F.2d 616 (2d Cir. 1982) …………………………………… 35

*Pittsburgh Plate Glass Co. v. United States*,
     360 U.S. 395 (1959) …………………………………………… 26

*Russell v. United States*,
     369 U.S. 749 (1962) …………………………………………….. 8

*United States v. Aleynikov*,
     676 3d 71 (2d Cir. 2012) ………………………………………… 7

*United States v. Alfonso*,
     143 F.3d 772 (2d Cir. 1998) …………………………………... 7-8

*United States v. Alsugair*,
2003 WL 1799003 (D.N.J. April 3, 2003) …………………………………… 7

*United States v. Bagley*,
473 U.S. 667 (1985) …………………………………………………………… 36

*United States v. Barnes*,
158 F.3d 662 (2d Cir. 1998) ………………………………………… 19-20

*United States v. Bin Laden*,
92 F. Supp. 2d 225 (S.D.N.Y. 2000) ………………………………….. 21,23

*United States v. Bortnovsky*,
820 F.2d 572 (2d Cir. 1987) ……………………………………….. 18,20-21,23

*United States v. Brown*,
1995 WL 387698 (S.D.N.Y. June 30, 1995) ………………………………… 29

*United States v. Cain*,
671 F.3d 271 (2d Cir. 2012) ………………………………………… 13,29

*United States v. Cannone*,
528 F.2d 296 (2d Cir. 1975) ……………………………………… 40,49

*United States v. Chitty*,
760 F.2d 425 (2d Cir. 1985), *cert. denied,* 474 U.S. 945 (1985)  …….. 35-36

*United States v. Davidoff*,
845 F.2d 1151 (2d Cir. 1988) ………………………………………….. 19,21,23

*United States v. DePalma*,
461 F. Supp. 778 (S.D.N.Y. 1978) ……………………………………….. 47

*United States v. Elusma*,
849 F.2d 69 (2d Cir. 1988) …………………………………………… 42

*United States v. Facciolo*,
753 F.Supp. 449 (S.D.N.Y.1990) ………………………………………… 19

*United States v. Falkowitz*,
214 F. Supp. 2d 365 (S.D.N.Y. 2002) …………………………… 20,24-25,39

*United States v. Fed-Ex Corp.*,
No. 14-380, 2016 U.S. Dist. LEXIS 6155 (N.D.Ca. Jan. 19, 2016) ………. 27

*United States v. Feola*,
651 F. Supp. 1068, 1132 (S.D.N.Y. 1987), *aff'd,* 875 F.2d 857
(2d Cir.) (mem.), *cert. denied*, 493 U.S. 834 (1989) ………………….... 19

*United States v. Gibson*,
175 F. Supp. 2d 532 (S.D.N.Y. 2001) …………………………………….. 20

*United States v. Gonzalez*,
686 F.3d 122 (2d Cir. 2012) …………………………………………….... 9

*United States v. Henry*,
861 F. Supp. 1190 (S.D.N.Y. 1994) …………………………………… 26

*United States v. Ho*,
No. 08-00337, 2009 WL 2591345 (D. Haw. Aug. 20, 2009) …………….. 27

*United States v. Hooey*,
No. 11-337, 2014 U.S. Dist. LEXIS 91093 (S.D.N.Y. July 2, 2014) ……. 26

*United States v. Johnson*,
171 F.3d 139 (2d Cir. 1999) ………………………………………… 23-24

*United States v. LaSpina*,
299 F.3d 165 (2d Cir. 2002) ………………………………………… 9

*United States v. Leung*,
40 F.3d 577 (2d Cir.1994) ………………………………………….. 29

*United States v. Lino*,
No. 00 CR. 632 (WHP), 2001 WL 8356 (S.D.N.Y. Dec. 29, 2000) ……… 19

*United States v. Litwok*,
    678 F.3d 208 (2d Cir. 2012) ……………………………………………… 34

*United States v. Moten*,
    582 F.2d 654 (2d Cir. 1978) ……………………………………………… 26

*United States v. Nachamie*,
    91 F. Supp. 2d 565 (S.D.N.Y. 2000) ………………………………….. passim

*United States v. Naegele*,
    474 F. Supp. 2d 9 (D.D.C. 2007) ………………………………………… 27

*United States v. Napolitano*,
    552 F. Supp. 465, 480 (S.D.N.Y. 1982) …………………………………… 47

*United States v. Oaks*,
    285 F.Supp. 3d 876 (D.Md. 2018) ………………………………………… 33

*United States v. Palermo*,
    No. 99 Cr. 1199 (LMM), 2001 WL 185132 (S.D.N.Y. Feb. 26, 2001) …… 25

*United States v. Panarella*,
    277 F.3d 678 (3d Cir. 2000) …………………………………………….. 7

*United States v. Peralta*,
    763 F. Supp. 14 (S.D.N.Y. 1991) ………………………………………… 27

*United States v. Persico*,
    832 F.2d 705 (2d Cir. 1987) ……………………………………………… 13-14

*United States v. Pirro*,
    212 F.3d 86 (2d Cir. 2000) ……………………………………………… 8-9

*United States v. Rosendiz-Ponce*,
    549 U.S. 102 (2007) ……………………………………………………… 8

*United States v. Santiago*,
    174 F.Supp. 2d 16 (S.D.N.Y. 2001) ……………………………………40-41,49

*United States v. Scarpa,*
    913 F.2d 993 (2d Cir. 1990) …………………………………………….. 47

*United States v. Scotti,*
    47 F.3d 1237 (2d Cir. 1995) …………………………………………  42

*United States v. Shellef,*
    507 F.3d 82 (2d Cir. 2007) …………………………………………....  33-34

*United States v. Spero,*
    331 F.3d 57 (2d Cir. 2003) ………………………………………… 7

*United States v. Stavroulakis,*
    952 F.2d 686 (2d Cir. 1992) …………………………………………..  8

*United States v. Taylor,*
    707 F. Supp. 696 (S.D.N.Y. 1989) …………………………………  25,40

*United States v. Torres,*
    901 F.2d 205 (2d Cir. 1990) …………………………………………..  19,26

*United States v. Turkish,*
    458 F. Supp. 874 (S.D.N.Y. 1978) ……………………………………  41,49

*United States v. Turoff,*
    853 F.2d 1037 (2d Cir. 1988) …………………………………………… 31

United *States v. Twersky,*
    1994 U.S.Dist. LEXIS 8744 (S.D.N.Y. June 29, 1994) ………………………...  27

*United States v. Walsh,*
    194 F.3d 37 (2d Cir. 1999) ………………………………………….. 7

*United States v. Weinstein,*
    511 F.2d 622 (2d Cir. 1975) …………………………………………  29

*United States v. Yannotti,*
    541 F.3d 112 (2d Cir. 2008) …………………………………………… 13-14

x

*United States v. Zingaro*,
    858 F.2d 94 (2d Cir. 1988) …………………………………………….. 16-17

*U.S. v. Rogers*,
    617 F. Supp. 1024 (D.Colo. 1985) …………………………………… 19

*U.S. v. Thevis*,
    474 F. Supp. 117 (N.D.Ga. 1979) …………………………………… 19

## **INTRODUCTION**

It would be a terrible thing if criminal defendants were forced to defend against unknown charges--yet this is exactly what the Government seeks. Here, in spite of the Government's three-page "RICO Enterprise Letter" dated December 13, 2024, Defendant Kevin Perez remains unable to properly defend himself at trial due to the Government's failure to disclose the requisite discovery. Accordingly, the Indictment should be dismissed for unconstitutional vagueness (*Point I*). At the very least, the Motion for a Bill of Particulars (*Point II*) should be granted.

Mr. Perez should also be permitted access to the grand jury minutes, since the Indictment fails to indicate which acts were within the scope of his alleged conspiratorial agreement. There are also serious questions as to whether the grand jury was properly charged due to the material omissions in paragraphs 5 ("Means and Methods") and 6 ("Racketeering Conspiracy") of the Indictment. Another reason for access is the fact that the federal government took this case from New York state authorities. (*Point III*).

The Government must provide all 404(b) material (*Point IV*).

Counts Six through Eleven should be severed (*Point V*), *Brady/Giglio* evidence must be disclosed (*Point VI*), and the Court should order the early and release of Jencks material. (*Point VII*).

Mr. Perez is also entitled to the other relief requested in his pretrial motions.

1

## PROCEDURAL HISTORY/RELEVANT BACKGROUND

On February 23, 2023, a grand jury in this District returned an Indictment charging Mr. Perez, along with five other individuals, with Racketeering Conspiracy (between 2017 through the time of the Indictment), contrary to 18 U.S.C. § 1962(d) (Count One).  Mr. Perez was also charged alone with (on or about December 16, 2021),  Violent Crime in Aid of Racketeering (VICAR), contrary to 18 U.S.C. § 1959(a)(1) and 2 (Count Two); Murder Through Use of a Firearm (also on or about December 16, 2021), contrary to 18 U.S.C. § 924(j) and 2 (Count Three); VICAR (on or about November 10, 2021; with Mason and Beamon) (Count Four); Firearm Offense (on or about November 10, 2021; with Mason and Beamon), contrary to 18 U.S.C. §§ 924(c)(a)(A)(i),(ii),(iii), and 2 (Count Five).  Mason is charged alone with a VICAR (on February 10, 2022) (Count Six); a Firearm Offense (on February 10, 2022) (Count Seven) and Possession of Firearm with Defaced Serial Number (Count Ten). Johnson is charged alone with a VICAR (on June 26, 2020) (Count Eight) and a Firearm Offense (Count Nine). Smith is charged alone with Possession of Firearm After a Felony Conviction (Count Eleven. (Indictment is annexed at Da1-15).

On February 23, 2023, Mr. Perez self-surrendered and on that date was detained on consent without prejudice. (Bail Disposition at Da16).  He has been incarcerated since that date.

On March 20, 2023, this Court entered a *Brady* obligations Order. (Da17-19).

Following objection to parts of the proposed language (Da20-21), this Court overruled the objection and issued a Protective Order on March 31, 2023. (Da22-26).

On April 27, 2023, the Honorable Judge Lewis J. Liman, U.S.D.J., entered an Order appointing Julie de Almeida as Coordinating Discovery Attorney. (Da27-29).

While Mr. Perez has had several attorneys since he was charged on February 23, 2023, none filed any pretrial motions.  Mr. Perez's present counsel, Thomas R. Ashley, Esq. (along with Michael T. Ashley, Esq., of the same firm), was granted leave to proceed *pro hac vice* and leave to substitute as Mr. Perez's counsel on September 25, 2024. (Da Da30-31).[1]  Co-counsel Husain A. Gatlin, Esq., entered an appearance on October 20, 2024. (Da32).

On October 28, 2024, Judge Liman issued a Memo Endorsement establishing pretrial and trial schedules. (Da33).

On December 6, 2024, Mr. Ashley forwarded a nine-page Discovery Letter with over 40 requests to the Government. (Da34-42).  On December 13, 2024, the Government provided Mr. Ashley with a "RICO Enterprise Letter." (Da43-45).

---

[1] On May 17, 2023, Jeffrey Einhorn, Esq. (Law Offices of Jeffrey Lichtman, Esq.) entered an appearance.  On July 31, 2023, Judge Liman granted the application of Mr. Lichtman to withdraw and appointed David Touger, Esq., under the CJA.  On December 14, 2023, Judge Liman granted the *pro hac vice* application of John J. McMahon, Jr. as Mr. Perez's counsel. On September 25, 2024, Judge Liman granted Mr. McMahon's withdrawal and Mr. Ashley's entry of appearance.

## LEGAL ARGUMENT

## POINT I

### COUNT ONE (RACKETEERING CONSPIRACY) SHOULD BE DISMISSED FOR UNCONSTITUTIONAL VAGUENESS AND INSUFFICIENT PARTICULARITY OR, ALTERNATIVELY, THE GOVERNMENT SHOULD BE COMPELLED TO PROVIDE A BILL OF PARTICULARS

Count One, which charges conspiracy to violate the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(d), should be dismissed for unconstitutional vagueness and insufficient particularity. In the alternative, the Government should provide a bill of particulars describing (1) which predicate acts were within the scope of each defendant's alleged conspiratorial agreements and (2) the times, dates, and locations of, and the participants in, each racketeering act listed in paragraph 6(a) ("multiple acts involving murder"), 6(b) ("multiple acts involving robbery"); and 6(c) "multiple acts indictable under Title 18, United States Code, Sections 1343 (wire fraud), 1344 (bank fraud), and 2 (aiding and abetting) of the February 21, 2023 Indictment. (Da3-4).

While the Government did, on December 13, 2024, provide a "RICO Enterprise Letter" (Da43-45), this letter is deficient and a bill of particulars still should be provided. For example, the Government, in relation to Number 6 (the

4

June 20, 2020 purported shooting "hitting four victims, including Elyesha Cook")

writes in Footnote 2 that the law enforcement reports related to this shooting were

provided in its May 3, 2023 production at USAO_057429 through USAO_058055.

(Da44).  The Government also writes in Footnote 3 that, as to the August 10, 2020,

shooting near 2048 Mapes Avenue in the Bronx, the Government in its November

14, 2024 production provide reports at USAO_081055 through USAO_081197.

(Da44).   However, these clarifications and references to the discovery provided

in no way cures the vagueness defect in the Indictment.

   In addition, even this letter provides virtually no details as to the fraud

offenses, other than to state in Number 3:

> 3. On multiple occasions throughout the pendency of the
> racketeering conspiracy, the defendant and other members
> of Sev Side participated in multiple fraud offenses,
> including applying for COVID-related Small Business
> Association ("SBA") loans and filing unemployment
> claims, using the identities of other individuals in order to
> obtain funds to which the defendant and other Sev Side
> members were not entitled.  Moreover, the defendant and
> others in Sev Side and their allied gangs participated in
> multiple offenses involving check fraud and bank fraud, in
> which stolen and counterfeit checks were deposited into
> bank accounts controlled by members of Sev Side, and
> money was withdrawn from the accounts before the
> checks were rejected by the bank. (Da44).

These vague and conclusory allegations in no way cure the deficiencies in the

Indictment, nor do they satisfy the request for a Bill of Particulars (discussed in *Point*

*II, infra*).

## I.    Count One Should Be Dismissed Due to Vagueness

Count One, charges Mr. Perez with a conspiracy to violate RICO, 18 U.S.C. § 1962(d), by agreeing with others to commit a substantive RICO offense in violation of § 1962(c). Section 1962(c) (substantive RICO) in turn makes it a crime to operate the affairs of an enterprise through a pattern of racketeering activity which requires at least the commission of two or more predicate racketeering acts.

Count One is unconstitutionally vague and insufficiently particular and must be dismissed for the following reasons.  First, it fails to identify which of the predicate acts referenced in the Indictment were within the scope of Mr. Perez's alleged agreement (*i.e.*, the criminal act with which he is charged). Second, and most significantly, Count One fails to particularize the predicate acts themselves: it does not specify when or where they occurred, or who participated in them (a question independent of whether they were within the scope of each of the defendant's alleged criminal agreement).   Instead, the Indictment simply pleads "multiple acts involving murder"; "multiple acts involving robbery"; and "multiple acts" involving wire fraud and bank fraud. (Da4).   The Government has made it virtually impossible to mount a defense since Mr. Perez has not even been advised as to what specific acts he purportedly committed.

### A. The relevant law

Challenges to the specificity of an Indictment must be made prior to trial.

*United States v. Spero*, 331 F.3d 57, 61-62 (2d Cir. 2003). Fed. R. Crim. P. 12(b) provides that "[a]ny defense, objection, or request that the court can determine without a trial of the general issue" may be raised before trial by motion. Courts have routinely held that "[f]or purposes of Rule 12[], a charging document fails to state an offense if the specific facts alleged in the charging document fall beyond the scope of the relevant criminal statute, as a matter of statutory interpretation." *United States v. Panarella*, 277 F.3d 678, 685 (3d Cir. 2000); *see also United States v. Aleynikov*, 676 3d 71, 75-76 (2d Cir. 2012); *United States v. Alsugair*, 2003 WL 1799003 (D.N.J. April 3, 2003).

Rule 7(c) provides that an Indictment shall contain a "plain, concise and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). As explained in *United States v. Walsh*, 194 F.3d 37, 44 (2d Cir. 1999), this rule incorporates the rights of an accused under the Sixth Amendment "to be informed of the nature and cause of the accusation" and under the Fifth Amendment not to be subject to double jeopardy and to be protected from prosecution for crimes based on evidence not presented to the grand jury.

"It is well settled that 'an indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense.'" *United States v. Alfonso*, 143

F.3d 772, 776 (2d Cir. 1998) (quoting *Hamling v. United States*, 418 U.S. 87, 117 (1974)); *see also United States v. Rosendiz-Ponce*, 549 U.S. 102, 108 (2007). In order to meet this standard, the "indictment need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." *Alfonso*, 143 F.3d at 776.

In *United States v. Stavroulakis*, 952 F.2d 686, 693 (2d Cir. 1992), the Second Circuit has set forth the standard for the sufficiency of an Indictment:

> An indictment is sufficient when it charges a crime with sufficient precision to inform the defendant of the charges he must meet and with enough detail that he may plead double jeopardy in a future prosecution based on the same set of events . . . . [A]n indictment need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime.

As the Second Circuit has declared, "[a]n indictment that fails to allege the essential elements of the crime charged offends both the Fifth and Sixth Amendments." *United States v. Pirro*, 212 F.3d 86, 92 (2d Cir. 2000) (citing *Russell v. United States*, 369 U.S. 749, 760-61 (1962)). As explained in *Pirro*, "'[t]he Indictment Clause of the Fifth Amendment requires that an indictment contain some amount of factual particularity to ensure that the prosecution will not fill in elements of its case with facts other than those considered by the grand jury.'" *Id.* (quoting *United States v. Walsh*, 194 F.3d 37, 44 (2d Cir. 1999)); *see also Russell*, 369 U.S. at 768-69 (recognizing that important corollary purpose of requirement that

8

indictment state elements of offense is to allow court to evaluate whether facts alleged could support conviction); *United States v. Gonzalez*, 686 F.3d 122, 128-30 (2d Cir. 2012).

The Sixth Amendment's "guaranty of the defendant's right 'to be informed of the nature and cause of the accusation' against him is also offended by an indictment that does not state the essential elements of the crime." *Pirro*, *supra*, 212 F.3d at 93. As a result, "the indictment must state some fact specific enough to describe a particular criminal act, rather than a type of crime." 212 F.3d at 93.[2]

When alleging a violation of a statute which includes "generic terms," the Indictment must include some "fact specific enough to describe a particular criminal act, rather than a type of crime." *Pirro*, 212 F.3d at 93.

Of particular relevant to the case at bar, the requirements enunciated in *Pirro* and *Russell* are all the more important in the context of complex inchoate crimes (as opposed to simple, single-event offenses) that require knowledge and specific intent, as well as additional unusual or peculiar elements that are present in this case. *See, e.g.*, *United States v. LaSpina*, 299 F.3d 165, 177-78 (2d Cir. 2002).

---

[2] In *Pirro*, in an interlocutory appeal by the Government, the Second Circuit upheld the district court's order striking a portion of one of the counts of an Indictment which failed to allege an essential element of a tax fraud charge; i.e., a material false representation. 212 F.3d at 93.

**B. The Indictment**

Count One of Indictment alleges three categories of criminal activities: (1) "purposes" of the racketeering enterprise (the "Enterprise") (Indictment ¶ 4); (2) "means and methods" of operating the Enterprise (Indictment ¶ 5); and (3) the racketeering conspiracy and purported acts that were the objects of the conspiracy charged in Count One (Indictment ¶¶ 6-7).

An understanding as to Count One's deficiencies requires distinguishing among these three separate categories of alleged racketeering acts; accordingly, they are each described and distinguished in turn below.

First, the Indictment identifies a number of generic objectives of the Enterprise including "[p]reserving and protecting the power and territory of Sev Side/DOA," "[e]nriching the members and associates of Sev Side/DOA," "[p]romoting and enhancing Sev Side/DOA," and "[k]eeping victims and potential victims in fear of the Enterprise." *See* Indictment ¶ 4.

Second, the Indictment alleges so-called "means and methods" of the Enterprise's operation, with the category of crimes allegedly committed as part of the association-in-fact Enterprise's operations. *See* Indictment ¶ 5. It is not alleged that each defendant knew about, or agreed to operate the Enterprise by participating in, any of these "means and methods." Nor is there any allegation that each of the defendants agreed that another person would commit these acts.

10

Mr. Perez is alleged to have participated in only two of these "means and methods" of the Enterprise: 1) the VICAR/Murder Through Firearm related to Hwascar Hernandez on December 16, 2021 (Counts Two and Three); and 2) the VICAR/Firearm Offense on November 10, 2021 (Counts Four and Five).

The Indictment alleges "means and methods" of the Enterprise that <u>do not</u> involve Mr. Perez. These include: 1) unspecified "acts involving robbery;" 2) wire fraud; 3) bank fraud; 4) Mason's VICAR charge (February 10, 2022 incident) (Count Six); 5) Mason's Firearm Offense (Count Seven); 6) Johnson's VICAR charge (June 26, 2020 incident) (Count Eight); 7) Johnson's Firearm  Offense (June 26, 2020 incident) (Count Nine); 8) Mason's Defaced Firearm Offense (April 13, 2022) (Count Ten); and 9) Smith's Possession of Firearm After Felony Conviction charge (August 19, 2022) (Count Eleven). Indictment ¶¶ 16-26.

While the Government's bare bones allegations fail to particularize any of these "means and methods" of the Enterprise – no dates, times, or places are alleged – the Indictment is, however, still clear that the participants in these acts of robbery, wire fraud and bank fraud  do <u>not </u>include Mr. Perez.

Third, and most significantly, the Indictment's charging of the predicate acts in Count One (Racketeering Conspiracy), are profoundly vague and imprecise: "multiple acts involving murder," "multiple acts involving robbery," and "multiple acts" of wire fraud and bank fraud. See Indictment ¶ 6(a), (b) and (c).  This

unconstitutional vagueness and lack of specificity is compounded and exacerbated by the Indictment's summarily alleging that Mr. Perez and the other named defendants "and others known and unknown," "knowingly combined, conspired, confederated, and agreed together and with each other" to violate § 1962(c) by committing unspecified state and federal crimes of murder, robbery, wire fraud and bank fraud.

Count One is also deficient as it failed to specify which defendants allegedly agreed to partake in which racketeering act, or which defendants agreed that someone else would commit a particular offense.   Not only does this conspiracy section of the Indictment fail to allege the "who," but it also fails to allege the "when, what, and where" with respect to the purported racketeering acts charged as the object of the criminal conspiracy.  This makes the defense of these vague and nebulous charges virtually impossible.

### C. Discussion

Count One must be dismissed as it clearly fails to advise Mr. Perez of the nature of the criminal action against him.  It fails to apprise Mr. Perez of either (1) the racketeering acts involved in the § 1962(c) offense that he is alleged to have conspired to commit or (2) the dates, times, locations, participants, or any other information with which to identify and investigate the charged racketeering acts. These deficiencies are address below in turn.

12

### 1. The Indictment Fails To Allege the Racketeering Acts that Were the Object of the Conspiracy with which Mr. Perez Was Charged

The Indictment utterly fails to allege which, if any, racketeering acts were within the scope of Mr. Perez's alleged criminal agreement, and therefore fails to charge him with any clear crime. Count One charges a conspiracy to violate 18 U.S.C. § 1962(c), and this Rico Conspiracy statute 1962(c) makes it a crime to operate the affairs of an enterprise through a pattern of racketeering which requires at least committing two or more predicate racketeering acts. An agreement to operate the affairs of an enterprise by committing only one racketeering act is not a conspiracy to violate § 1962(c).

It is true that in *United States v. Cain*, 671 F.3d 271, 291 (2d Cir. 2012) and *United States v. Yannotti*, 541 F.3d 112, 129 n.11 (2d Cir. 2008), the Second Circuit held that, to violate RICO's conspiracy provision, § 1962(d), a defendant need not agree to commit any of the racketeering acts himself or herself. Nor does the Government need to prove or even allege that the acts themselves were actually committed. *United States v. Persico*, 832 F.2d 705, 713 (2d Cir. 1987) ("In order to convict a defendant of RICO conspiracy, only an agreement to commit two or more predicate acts, rather than the acts themselves, need be proven.").

However, the Government is required to prove that a RICO conspiracy defendant agreed that at least two racketeering acts would be committed by someone. *Persico*, 832 F.2d at 713 ("Although proof of a RICO conspiracy requires a

13

demonstration that a defendant agreed to commit two or more predicate acts, rather than a simple showing that the defendant agreed to join the conspiracy, the agreement proscribed by section 1962(d) is conspiracy to participate in a charged enterprise's affairs, not conspiracy to commit predicate acts.").

In other words, "in deciding whether a defendant is guilty of RICO conspiracy, the jury must consider the predicate acts charged against the defendant and his alleged co-conspirators to determine 'whether the charged predicate acts were, or were intended to be, committed as part of that conspiracy.'" *Cain*, 671 F.3d at 291 (quoting *Yannotti*, 541 F.3d at 129 n. 11) (emphasis added); *see also* Sand, Modern Federal Jury Instructions, Comment to Instruction 52-31 (2016).

The Indictment fails to specify which predicate acts were part of the § 1962(c) violation in which Mr. Perez allegedly agreed to participate. Without specifying two or more predicate racketeering acts that Mr. Perez agreed to commit himself or agreed that someone else would commit, the Indictment fails to state a § 1962(d) violation against Mr. Perez.

This concern is not merely an academic one. The "means and methods" allegations (Indictment ¶ 5) make clear that Mr. Perez is <u>not</u> alleged to have participated in a majority of the racketeering acts listed in the Indictment. As stated, there is no allegation that Mr. Perez committed "robberies" nor any "financial frauds." It therefore is entirely open to question which predicate racketeering acts

14

the government charges were within the scope of Mr. Perez's conspiratorial agreement.

The Indictment alleges that "[i]t was a part and object of the conspiracy that each defendant agreed that a conspirator would commit at least two acts of racketeering activity in the conduct of the affairs of the Sev Side/DOA." Indictment ¶ 7. Accordingly, the Indictment alleges that an object of the overall conspiracy was that each defendant would agree that someone in the conspiracy would commit two or more acts.

For instance, paragraph 6 of the Indictment alleges an agreement to agree, not an agreement to violate Section 1962(c). Even assuming for argument's sake that the defendants reached such an abstract agreement, the Indictment does not allege that the object of the conspiracy came to fruition, *i.e.*, that each defendant did in fact agree that he himself or another would engage in two more predicate racketeering acts. Much less does the Indictment allege which two predicate racketeering acts were within the scope of each defendant's agreement.

Because the Indictment is insufficiently specific as to which predicate acts fell within which defendants' agreement(s) – and in particular because fails to allege which predicate acts were within the scope of Mr. Perez's allegedly criminal agreement – it fails to allege a conspiracy to violate Section 1962(c).

## 1.  The Indictment Also Fails To Particularize the Racketeering Acts

The Indictment is also unconstitutionally insufficient as it fails to allege when any of the predicate acts supposedly within its scope occurred, where they allegedly occurred, or who is alleged to have participated in them. *See* Indictment ¶¶ 6-7. In both the "means and methods" allegations in paragraph 5 of the Indictment, and the actual conspiracy allegations in paragraphs 6-7, as to who, what, where and when the purported predicate were committed are given, nor what they pertained to. Instead, the Indictment alleges "multiple acts" involving "murder," "robbery," "wire fraud," and "bank fraud." only that these alleged different crimes were "objects" of the conspiracy. Indictment ¶67.    But without knowing when and where the listed crimes – including generically alleged murder, robbery, wire fraud, and bank fraud – are alleged to have occurred, or who was allegedly involved, it will be impossible for Mr. Perez to have sufficient notice regarding what he is defending against.

In *United States v. Zingaro*, 858 F.2d 94 (2d Cir. 1988), the Second Circuit reversed the defendant's RICO conspiracy conviction (that had been grounded on predicate acts alleging extortionate extensions of credit) because the prosecution was permitted to introduce evidence of loan-sharking instances not specified in the indictment, and without a limiting instruction that would have precluded the jury from considering those instances as potential RICO predicate acts. *Id.* at 98-103. In reversing the RICO conspiracy conviction in *Zingaro*, the Court held that the

16

contested evidence constituted a constructive amendment of the Indictment.  *Id.*

Here, the Indictment is even less specific than the Indictment in *Zingaro*, and holds the genuine prospect that the Government will introduce evidence, and rely on it for the RICO predicates, that the grand jury did not consider as such, and therefore extends beyond the scope of the Indictment.

RICO predicates cannot be a moving target but must be identified with precision prior to trial to avoid an inevitable constructive amendment of the Indictment at trial.  In addition, even if the evidence at trial constitutes a variance in proof, it will nevertheless prejudice Mr. Perez because as he has not been provided with any legitimate form of notice as to the specific charges against him.

Since the Indictment fails to allege the times, places, and participants in the racketeering acts that were allegedly within the scope of the conspiracy charged in Count One, Count One should be dismissed due to its failure to state a complete offense.

## POINT II

### THE GOVERNMENT SHOULD PROVIDE A BILL OF PARTICULARS DUE TO THE UNCONSTITUTIONAL VAGUENESS IN THE INDICTMENT

Mr. Perez incorporates the arguments and authorities in Point I, supra, and submits that the Government's three-page "RICO Enterprise Letter" dated December 13, 2024 (Da43-45) in no way satisfies its discovery obligations.  Mr. Perez moves under the Federal Rules of Criminal Procedure for an order directing the prosecution to provide a bill of particulars setting forth the specific information requested below.

### I. The Government Should, Alternatively, Provide a Bill of Particulars

In the event that Count One is not dismissed, the Government should be compelled to provide a Bill of Particulars detailing: (1) which conspirators agreed on which predicate racketeering act and (2) the dates, locations, and participants in each agreed-upon racketeering act within the scope of the charged conspiracy.

### A.  Legal Principles

"Rule 7(f) of the Federal Rules of Criminal Procedure permits a defendant to seek a bill of particulars in order to identify with sufficient particularity the nature of the charge pending against him, thereby enabling defendant to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense."  *United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987) (citations omitted). A bill of particulars should be

18

required where the charges of the indictment "do not advise the defendant of the specific acts of which he is accused." *United States v. Torres*, 901 F.2d 205, 234 (2d Cir. 1990) (citing, *United States v. Feola*, 651 F. Supp. 1068, 1132 (S.D.N.Y. 1987), aff'd, 875 F.2d 857 (2d Cir.) (mem.), *cert. denied*, 493 U.S. 834 (1989)). Furthermore, a bill of particulars is required where information sought to clarify charges "is necessary, not whether it is helpful." *United States v. Facciolo*, 753 F.Supp. 449, 451 (S.D.N.Y.1990).   Most importantly, a bill of particulars is crucial in RICO cases where the scope of conduct is extensive, and takes place over a long period of time. *United States v. Davidoff*, 845 F.2d 1151 (2d Cir. 1988). In this case, the conduct is alleged to have occurred from 2017 to present, a span of eight years, and purportedly involves violent crimes including murder and robberies, along with financial fraud, and the like.

It is axiomatic that a criminal defendant should be given enough information about the offense charged so that he may prepare adequately for trial. *See* 1 Wright, *Federal Practice and Procedure* § 219 at 436. To be sure, the "primary purpose of a bill of particulars is '[to] more specifically define the charge set forth in the indict-ment, so that the defendant is apprised of the charges against him with sufficient clarity in order to allow him the opportunity to prepare his defense and to obviate prejudicial surprise to the defendant at trial.'" *U.S. v. Rogers*, 617 F. Supp. 1024, 1027 (D.Colo. 1985), quoting *U.S. v. Thevis*, 474 F. Supp. 117, 123 (N.D.Ga. 1979);

*U.S. v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987) (reversing convictions because defendants were "hindered in preparing their defense by the district court's failure to compel the Government to reveal crucial information").

> [I]t is of no consequence that the requested information would . . . require the disclosure of evidence or the theory of the prosecution. While a bill of particulars "is not intended, as such, as a means of learning the government's evidence and theories," if necessary to give the defendant enough information about the charge to prepare his defense, "it will be required even if the effect is disclosure of evidence or of theories."

*U.S. v. Barnes*, 158 F.3d 662, 665 (2d Cir. 1998), quoting Wright, Federal Practice and Procedure, § 129 (1982).

While a bill of particulars is not a vehicle to preview the prosecution's trial evidence, here, the particulars sought are necessary to specify "the nature of the charges" to enable him to "prepare for trial," prevent unfair "surprise" and plead "double jeopardy" if faced with a second prosecution "for the same offense." *United States v. Gibson*, 175 F. Supp. 2d 532, 536 (S.D.N.Y. 2001) (*citing United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987)). Under these circumstances, compliance is "required" even if it incidentally reveals "the Government's evidence or theories." *United States v. Lino*, No. 00 CR. 632 (WHP), 2001 WL 8356, at *3 (S.D.N.Y. Dec. 29, 2000) (*citing United States v. Barnes*, 158 F.3d 662, 665 (2d Cir. 1998)). *See, e.g., United States v. Falkowitz*, 214 F. Supp. 2d 365, 390-92 (S.D.N.Y. 2002) (analyzing these factors on particulars application); *United States v.*

20

*Nachamie*, 91 F. Supp. 2d 565, 570-72 (S.D.N.Y. 2000) (same); *Bortnovsky*, 820 F.2d at 575 (government does "not fulfill its obligations merely by providing mountains of documents to defense counsel who were left unguided"). As Judge Sand has aptly noted, "[i]t is no solution to rely solely on the quantity of information disclosed by the government; sometimes, the large volume of material disclosed is precisely what necessitates a bill of particulars." *United States v. Bin Laden*, 92 F. Supp. 2d 225, 234 (S.D.N.Y. 2000).

Simply, Mr. Perez cannot prepare a defense in the absence of any allegations that would advise of the "specific acts" of which he is accused.

As the Second Circuit has explained, a Bill of Particulars achieves two discrete objectives:

> A bill is appropriate to permit a defendant "to identify with sufficient particularity the nature of the charge pending against him, thereby enabling defendant to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense.

*United States v. Davidoff*, 845 F.2d 1151, 1154 (2d Cir. 1988), *quoting United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987). *See also United States v. Nachamie*, 91 F.Supp.2d 565, 570 (S.D.N.Y. 2000) (*quoting Bortnovsky*, 820 F.2d at 574) (ordering a Bill of Particulars).

These two salutary purposes are clearly implicated with respect to Mr. Perez. For the reasons previously explained, Mr. Perez not only will be unable to prepare

his defense, but the other purpose of a Bill of Particulars – that of specifying offenses charged in order to define any possible future claims of Double Jeopardy – cannot be achieved, either. *See United States v. Davidoff*, 845 F.2d 1151, 1154 (2d Cir. 1988), (*citing and quoting United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987)).   For the foregoing reasons and reasons discussed below, it is respectfully requested that the motion for a Bill of Particulars be granted.

### B.  Discussion

A Bill of Particulars is essential for Mr. Perez to prepare a trial defense and to be apprised of the double jeopardy implications of this case's adjudication.

***First***, a Bill of Particulars is essential to allow the defense to know what it should prepare for at trial. Without a Bill of Particulars, the defense is left to guess which of the purported criminal racketeering acts the Government will seek to prove Mr. Perez conspired to commit or to have someone else commit.

Also, the defense will have to speculate about the particulars of each predicate act – the who, what, when, where – and the evidence the government will use to attempt to establish those facts. Yet, it is impossible to investigate, prepare, and effectively try a case of this scope without particulars.

The defense's concern is especially acute given the significant quantity of discovery produced by the government – well over 175 gigabytes thus far with the most recent voluminous production only one week ago. With such a large

quantity of discovery, simply sifting through the thousands of hours of wires and reviewing the voluminous other materials will not be sufficient to give the defense a sense of what the government will seek to prove at trial.

Judge Sand's decision in *United States v. Bin Laden (El-Hage)*, 92 F. Supp. 2d 225 (S.D.N.Y. 2000), is instructive. Judge Sand explained that "a bill of particulars [was] necessary . . . to permit the Defendants to prepare a defense and to prevent prejudicial surprise at trial," based, in part, on the Court's conclusion that "several of the allegations contained in the 'Overt Acts' section of the Indictment are cast in terms that are too general, in the context of [that] particular case, to permit the Defendants to conduct a meaningfully directed investigation of the relevant facts and circumstances and be prepared to respond to the charges." *Id*. at 235. Here too, without particulars, a defense investigation will be unable to focus on the relevant issues for the upcoming trial.

**Second**, without a Bill of Particulars, neither Mr. Perez nor any reviewing or subsequent court are able to know what future prosecutions would be barred by double jeopardy were he to be acquitted or convicted of Count One. This problem is acute with respect to the state law offenses because, unlike the constitutional double jeopardy prohibition enforced in federal court, New York applies a more protective, transaction-based approach pursuant to statute. *See generally United States v. Johnson*, 171 F.3d 139, 142 (2d Cir. 1999) (discussing New York double jeopardy

law).

The Indictment utilizes the phrases "and elsewhere" (Paras. 6, 11, 15, 16), "others known and unknown" (Paras. 6, 11, 15). Mr. Perez seeks particulars regarding "others known and unknown" and "and elsewhere."

In determining whether to grant a request for particulars regarding the identity of known co-conspirators, courts typically consider the following factors:

> (1) the number of co-conspirators; (2) the duration and breadth of the alleged conspiracy; (3) whether the Government otherwise has provided adequate notice of the particulars; (4) the volume of pretrial disclosure; (5) the potential danger to co-conspirators and the nature of the alleged criminal conduct; and (6) the potential harm to the Government's investigation.

*Nachamie*, 91 F. Supp. 2d at 572-73 (granting defendants' request in case involving conspiracy that lasted more than three years, with eight defendants, unknown number of un-indicted co- conspirators, and voluminous discovery); *see also Falkowitz*, 214 F. Supp. 2d at 390-92 (applying *Nachamie* factors and requiring identification of co-conspirators).

In the instant case, the above-listed factors weigh in favor of disclosing the identities of known co-conspirators. A defendant is more likely to be surprised by the identity of other co- conspirators, whom he may never have met, if the charged conspiracy involves a large number of people. *Nachamie*, 91 F. Supp. 2d at 572-73.  Here, the Indictment specifies "and others known and unknown."  Defendant

24

should not have to guess the identities of the participants.

In addition, the discovery in this case is voluminous. This fact also weighs in favor of requiring the government to identify known co-conspirators to "help [] defendant[s] focus [their] investigation and prepare for trial." *Nachamie*, 91 F. Supp. 2d at 573.

Finally, there is no reason to believe that identifying the coconspirators would place anyone in danger or interfere with the government's investigation.

Defendant submits that the Government be directed to disclose the identities of any and all un-indicted co-conspirators. *Falkowitz*, *supra*; *United States v. Palermo*, No. 99 Cr. 1199 (LMM), 2001 WL 185132 at *5 (S.D.N.Y. Feb. 26, 2001) (court granted bill of particulars identifying un- indicted co-conspirators); *Nachamie*, *supra*; *United States v. Taylor*, 707 F. Supp. 696, 700 (S.D.N.Y. 1989).

## POINT III

## THE GRAND JURY MINUTES SHOULD BE ORDERED TO BE DISCLOSED

In order to prevail under Rule 6(e), a Defendant must demonstrate that "'a particularized need' exists for the [grand jury] minutes which outweighs the policy of secrecy." *Pittsburgh Plate Glass Co. v. United States*, 360 U.S. 395, 400 (1959); *United States v. Moten*, 582 F.2d 654, 662 (2d Cir. 1978) (a defendant seeking disclosure of grand jury minutes "because of a matter that occurred before the grand jury" must "show a particularized need that outweighs the government's strong interest in secrecy"); *see also Torres*, 901 F.2d at 233 ("[g]rand jury proceedings carry a presumption of regularity" and *in camera* "review of grand jury minutes is rarely permitted without specific factual allegations of government misconduct") (internal quotations omitted). In this regard, "[m]ere speculation" by defendants "as to what occurred in front of the Grand Jury does not warrant inspection of the minutes by defense counsel." *United States v. Henry*, 861 F. Supp. 1190, 1194 (S.D.N.Y. 1994) (citations omitted). *See also United States v. Hooey*, No. 11-337, 2014 U.S. Dist. LEXIS 91093 (S.D.N.Y. July 2, 2014) (conducting review because defendant "has come forward with more than mere speculation that the grand jury did not receive the proper instructions on the 'but-for' causation necessary to trigger

26

the twenty year mandatory minimum sentence"); *see also* United *States v. Twersky*, 1994 U.S.Dist. LEXIS 8744, at *14 (S.D.N.Y. June 29, 1994) (conducting review because defendants' argument that erroneous legal instructions might have been provided to the Grand Jury did not rest "entirely on speculation"); *United States v. Peralta*, 763 F. Supp. 14 (S.D.N.Y. 1991) (conducting review of ATF agent's grand jury testimony after the trial testimony of other law enforcement appeared inconsistent with that ATF agent's account before the grand jury); *United States v. Fed-Ex Corp.*, No. 14-380, 2016 U.S. Dist. LEXIS 6155 (N.D.Ca. Jan. 19, 2016) (defendant showed a particularized need for review of grand jury instructions because the indictment suggested the government misunderstood the law); *United States v. Ho*, No. 08-00337, 2009 WL 2591345, at *4 (D. Haw. Aug. 20, 2009) (granting the defendant's request for disclosure where the prosecutor, on the record, expressed an incorrect understanding of the law, with which he may have misled the grand jury); *United States v. Naegele*, 474 F. Supp. 2d 9, 10-11 (D.D.C. 2007) (granting inspection because defendant demonstrated "that grounds exist to support the proposition that irregularities may have occurred in the grand jury proceedings and may justify the dismissal of one or more counts of the indictment."); *De Binder v. United States*, 292 F.2d 737, 739 (D.C. Cir. 1961) (remanding for inspection because "ample ground" existed for "suspicion" of "inconsistencies" between grand

27

jury and trial testimony of prosecution's "sole, key, eyewitness").

In this case, as discussed, *supra*, the Indictment fails to specify which, if any, predicate acts were within the scope of which defendant's alleged conspiratorial agreements. Accordingly, there is a non-frivolous basis for believing that the grand jury was not properly instructed on the elements of Count One. In addition, the Federal Government in this case took over the prosecution of Mr. Perez from the New York State Court system, which had indicted Mr. Perez with the matter being litigated when the Government took over the matter. Mr. Perez has an additional non-frivolous basis for obtaining the grand jury minutes due to the federal government taking over the New York State case.

Mr. Perez concedes that federal courts "consistently have recognized that the proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings." *Douglas Oil Co. of Cal. v. Petrol Stops Nw.*, 441 U.S. 211, 218 (1979). In spite of this, courts may nonetheless authorize disclosure of grand jury minutes "at the request of a defendant who shows that a ground may exist to dismiss the indictment." Fed. R. Crim. P. 6(e)(3)(E)(ii). Mr. Perez must now show that the material he seeks "is needed to avoid a possible injustice, that the need for disclosure is greater than the need for continued secrecy, and that his or her request is structured to cover only material so needed." *Douglas Oil*, 441 U.S. at 222; *see also United*

28

*States v. Weinstein*, 511 F.2d 622, 627 (2d Cir. 1975) (holding that a defendant must show a "particularized need" to unseal grand jury minutes).

As explained in *United States v. Brown*, 1995 WL 387698, at *7 (S.D.N.Y. June 30, 1995), a court will not authorize disclosure of grand jury minutes when the defendant alleges "mere speculation as to what occurred in front of the grand jury." Rather, a defendant must present "concrete allegations of Government misconduct" for a court to allow inspection of grand jury minutes. *United States v. Leung*, 40 F.3d 577, 582 (2d Cir.1994).

Here, the material omissions in paragraphs 5-6 of the Indictment – the sections of the Indictment describing the "means and methods," "the racketeering conspiracy," and the object of the allegedly unlawful agreement – raise serious questions about whether the grand jury was properly charged on the elements of the offense (18 U.S.C. § 1962(d)).

As discussed in *Point I supra*, to obtain a RICO conspiracy conviction, the Government must prove that a defendant agreed that he or another person would commit at least two predicate acts in operating the affairs of an enterprise. *E.g.*, *Cain*, 671 F.3d at That process requires a defendant-by-defendant assessment of "whether the charged predicate acts were, or were intended to be, committed as part of that conspiracy." *Id.*

29

Here, because the Indictment fails to specify which, if any, predicate acts were within the scope of Mr. Perez's – or any other defendant's – alleged conspiratorial agreement (*see* Indictment ¶¶ 15-16), the defense has a non-frivolous basis for believing that the grand jury was not properly instructed on how criminal liability inheres for a RICO conspiracy offense.

Due to the serious question as to the propriety of the legal instructions provided to the grand jury, along with the issue concerning the Government taking over the New York State case, it is respectfully submitted that the defense should be permitted to inspect the sufficiency of the instructions provided to the grand jury concerning Count One to ensure that the grand jury was properly instructed on the law when it voted on whether to return a true bill.

30

## POINT IV

## THE COURT SHOULD ORDER THE GOVERNMENT TO PROVIDE ANY RULE 404(b) EVIDENCE THAT THE GOVERNMENT INTENDS TO USE AT TRIAL

The Court should order the production of any evidence of prior bad acts that the government intends to introduce at the defendant's trial. In this regard, Rule 404(b) states in relevant part that evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith.  It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Thus, if the government intends to offer evidence of any "other crimes," the defense has a right to advance notice to object to the admission of such evidence before trial. In *Huddleston v. United States*, 485 U.S. 681, 695 (1988), the Supreme Court held that evidence of similar bad acts is admissible if there is sufficient evidence to support a jury finding that the defendant committed the similar act.  *Id.* The Court stated that, with this rule, protection from unfair prejudice emanates from four sources: first, that the other crimes' evidence (1) must have a proper purpose; (2) that the preferred evidence must be relevant; (3) that its probative value must

31

outweigh its potential for unfair prejudice; and (4) that the Court must charge the jury to consider the other crimes' evidence only for the limited purpose for which it is admitted. *Id.* at 691-692. The Court must examine all of the evidence in the case and decide whether the jury can reasonably find the conditional fact by a preponderance of the evidence. *Id.* at 690.

Accordingly, the Court should order the government to provide timely notice of 404(b) materials (at least six weeks before trial), to the extent that it plans on using such evidence. Such disclosure should include:

> 1.     Any and all factual details known to the government, including the details it seeks to introduce at trial, of "other uncharged crimes" if any;
>
> 2.     Whether this evidence will be introduced by means of documentary evidence, and if so, the identity of each exhibit and its availability for inspection and copying;
>
> 3.     The name of any witness who will give testimony regarding "other crimes" and a summary of his or her intended testimony;
>
> 4.     Whether each of the "other crimes" is presently the subject of a pending charge or ongoing investigation and if so, whether the government intends to introduce the evidence by testimony or through an exhibit; and
>
> 5.     The element of the crime for which each "other crime" is offered as proof, i.e., "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

32

## POINT V

## COUNTS SIX THROUGH ELEVEN MUST BE SEVERED AS MR. PEREZ IS NOT DIRECTLY NAMED IN THESE COUNTS

Mr. Perez submits that Counts Six through Eleven must be severed as Mr. Perez is not directly names in these Counts.

Offenses based on transactions that constitute a common scheme or plan or that are of the same or similar character may warrant joinder to promote judicial efficiency. But if the "common scheme or plan" or "same or similar character" is framed too broadly, then "everything may be connected," which defeats the purpose of having any rules about joinder in the first place. *See United States v. Turoff*, 853 F.2d 1037, 1039 (2d Cir. 1988) (acknowledging this dilemma); *see also United States v. Oaks*, 285 F. Supp. 3d 876, 880 (D. Md. 2018) (finding charges improperly joined where government's "alleged scheme [was] so broad that *any* act of corruption at *any* point during [defendant's] public service could be properly joined").

The Second Circuit has reversed convictions where the Government relied on joinder theories involving such overbroad common schemes or plans. *See United States v. Shellef*, 507 F.3d 82, 99–100 (2d Cir. 2007) (reversing and remanding for new trial, rejecting government's argument that tax charges and non-tax charges

33

were properly joined on ground that they all concerned the sale of a regulated chemical where funds generated by alleged scheme were unrelated to the unreported income that supported the tax charges and the tax violations occurred before the other scheme began); *United States v. Litwok*, 678 F.3d 208, 217 (2d Cir. 2012) (similar); *Halper*, 590 F.2d at 432 (rejecting government's argument that Medicaid fraud and tax fraud charges were properly joined on ground that "totality of [defendant's] deceitful practices evidenced his intent to enrich himself by submitting false documents to [g]overnment agencies").

Here, the Government's joinder of unrelated Counts similarly "paints the allegations with too broad a brush" mandating a severance of *Counts VI* through *XI*. *See Shellef*, *supra*, 507 F.3d at 99.

## POINT VI

## THE COURT SHOULD ORDER THE GOVERNMENT TO DISCLOSE ALL OUSTANDING *BRADY/GIGLIO* EVIDENCE

Defendant respectfully submits that the Court should officially order it to disclose all exculpatory evidence within the purview of *Brady v. Maryland*, 373 U.S. 83 (1963), and impeachment evidence within the purview of *Giglio v. United States*, 405 U.S. 150 (1972). The Government should also immediately be required to turn over the debriefings of all witnesses (and their respective grand jury testimony).

It cannot be disputed that the prosecution should not withhold evidence that is both favorable to the accused and material to either guilt or punishment. Furthermore, the *Brady* rule applies to evidence that might be used for impeachment purposes. In *Giglio*, the Supreme Court of the United States held that the prosecutor has a duty to disclose any and all inducements or beneficial treatment extended to or hoped for by the prosecution's witnesses and that the duty is a continuing one. *Giglio*, 405 U.S. at 154.

Also, there can be no serious dispute over the proposition that *Brady* encompasses material that might well alter the jury's judgment of the credibility of a significant prosecution witness. *Perkins v. LeFevre*, 691 F.2d 616, 619 (2d Cir. 1982) (*citing Giglio*, 405 U.S. at 154); *See also United States v. Chitty*, 760 F.2d

35

425, 428 (2d Cir. 1985), <u>cert. denied</u>, 474 U.S. 945 (1985) (*Brady* rule applies

equally to impeachment and exculpatory evidence). Thus, in *United States v.*

*Bagley*, 473 U.S. 667 (1985), the Court stated:

> Impeachment evidence…as well as exculpatory evidence,
> falls within the *Brady* rule, <u>See</u> *Giglio v. United States*,
> 405 U.S. 150, 154, 92 S.Ct.763, 766, 31 L.Ed. 2d 104
> (1972). Such evidence is evidence favorable to an
> accused, *Brady*, 373 U.S. at 87, 83 S. Ct. at 1196, so that,
> if disclosed and used effectively, it may make the
> difference between conviction and acquittal. *Napue v.*
> *Illinois*, 360 U.S. 264, 269, 79 S.Ct. 1173, 1177, 3 L.Ed.2d
> 1217 (1959). (The jury's estimate of the truthfulness and
> reliability of a given witness may well be determinative of
> guilt or innocence, and it is upon such subtle factors as the
> possible interest of the witness in testifying falsely that a
> defendant's life or liberty may depend).

Accordingly, the Court should designate a specific date upon which the

Government is obligated to disclose all *Brady/Giglio* materials.

For the foregoing reasons, all *Brady/Giglio* evidence should be provide to Mr.

Perez forthwith.

36

## POINT VII

## THE COURT SHOULD ORDER THE EARLY DISCLOSURE OF *JENCKS* MATERIAL

As the trial date is barely one month away, the Court should order the immediate disclosure of *Jencks* material pursuant to Title 18, U.S.C. §3500(a), which requires the Government to furnish and disclose all statements and reports of any prospective Government witnesses who will testify at trial. An early disclosure is warranted here, as this is a case with a potentially voluminous amount of material. It is essential due to the volume of material involved, that counsel obtain this material in a reasonable period prior to trial in order to ensure an effective level of preparation by counsel that the Constitution requires.

While it is true that under 18 U.S.C. §3500, the Government is not required to disclose statements of the Government's witnesses until after the witnesses testify, the facts of this case counsel for early disclosure (at least three (3) weeks prior to trial). Indeed, such earlier production would avoid burdensome trial recesses, allow adequate time for Defendant Perez to prepare, and ensure his right to effective assistance of counsel is realized.

## <u>POINT VIII</u>

## THE COURT SHOULD ORDER THE GOVERNMENT TO PROVIDE ANY STATEMENTS MADE BY DEFENDANT PEREZ TO ANY ALLEGED CO-CONSPIRATOR

The Court should order the Government to disclose all statements by Mr. Perez to any other person or alleged co-conspirator which it claims will be admissible under the co-conspirator exception to the hearsay rule. *See* Federal Rule of Evidence 801(d)(2)(e). The early disclosure of these statements will assist in the defense's preparation for trial, allow for pre-trial motions *in limine*, and provide for a more efficient trial without any unnecessary delays.

## POINT IX

**THE COURT SHOULD ORDER THE GOVERNMENT TO PROVIDE A LIST OF RECORDINGS AND OTHER EXHIBITS THAT THE GOVERNMENT INTENDS TO OFFER AS EVIDENCE AT TRIAL**

The Court should order the Government to provide a list of recordings and other exhibits that it intends to offer at trial. It is within the Court's discretion to order the Government to produce an exhibit list prior to trial. *United States v. Falkowitz*, 214F. Supp. 2d 365, 392-93 (S.D.N.Y. 2002). It is an appropriate exercise of such discretion where the Court finds that "the interests of justice and fair play" mediate in favor of requiring the Government to produce an exhibit list to afford the defendant a fair trial. *Id.* Such is the case here. An early production is necessary to enable Mr. Perez to review the designated conversations and verify the accuracy of the Government's transcripts. Designation of the recordings intended to be introduced at trial is also necessary to enable defendant to determine whether any *in limine* motions are necessary with respect to any such recordings.

Accordingly, the Court should order the Government to provide a list of recordings on a rolling basis commencing immediately.

39

## POINT X

## THE COURT SHOULD ORDER THE GOVERNMENT TO PROVIDE A WITNESS LIST

The Court should order the Government to provide a list of names of all prospective government witnesses whose testimony the government intends to offer at trial. *United States v. Taylor*, 707 F. Supp. 702 (S.D.N.Y. 1989). While Rule 16 of the Federal Rules of Criminal Procedure does not require the government to provide such information, the Court must balance the defendant's need for disclosure with the Government's interest in protecting the identity of prospective witnesses prior to trial. Here, the disclosure of the identities of the Government's witnesses is proper because it is "material to the preparation of his case and is otherwise reasonable." *United States v. Santiago*, 174 F.Supp. 2d 16, 38 (S.D.N.Y. 2001) (citing *United States v. Cannone*, 528 F.2d 296, 300-01 (2d Cir. 1975); *United States v. Nachamie*, 91 F. Supp. 2d 565, 579 (S.D.N.Y. 2000).

In this regard, materiality and reasonableness of the request should be assessed through the application of a six-factor test:

(1) Did the offense alleged in the indictment involve a crime of violence?

(2) Have the defendants been arrested or convicted for crimes involving violence?

40

(3) Will the evidence in the case largely consist of testimony relating to documents (which by their nature are not easily altered)?

(4) Is there a realistic possibility that supplying the witnesses' names prior to trial will increase the likelihood that the prosecution's witnesses will not appear at trial, or will be unwilling to testify at trial?

(5) Do the indictment's alleged offenses occurring over an extended period of time, making preparation of the defendants' case complex and difficult?

(6) Do the defendants have limited funds with which to investigate and prepare their defense?
*See Santiago*, 174 F. Supp. 2d at 38-39 (quoting *United States v. Turkish*, 458 F. Supp. 874, 881 (S.D.N.Y. 1978).

Mostly all of the *Turkish, supra*, factors militate in favor of disclosure here. Also, the defense is unaware of any indication that disclosure of the Government's witnesses would impair its ability to produce them at trial. Accordingly, the Court should order the Government to immediately furnish a witness list.

41

## POINT XI

## THE COURT SHOULD ORDER THE GOVERNMENT TO PRESERVE AND PRODUCE ALL NOTES OF LAW ENFORCEMENT AGENTS

The Court should order the Government to preserve all rough notes and handwritten drafts of reports made during the course of the investigation and concerning any witness interview. Such an order is necessary to ensure the defense is afforded an adequate opportunity to exercise impeachment of the government's case, and to protect the due process rights of the Defendant and his ability to mount a defense. In this regard, the Government is obligated to preserve for trial handwritten notes made by law enforcement agents during witness interviews. *See Taylor*, 707 F. Supp. at 702; *United States v. Elusma*, 849 F.2d 69, 76 (2d Cir. 1988) (holding that an agent's handwritten notes need to be preserved where the notes are incorporated into a final report that is produced to the defense).

Additionally, in *United States v. Scotti*, 47 F.3d 1237, 1249 (2d Cir. 1995), the Second Circuit held that rough notes constitute 3500 material of a witness if they (1) are "adopted or approved" by the witnesses or (2) the notes were a "substantially verbatim recital of the witnesses." For these reasons the Government should be ordered to preserve all rough notes and handwritten drafts of reports made during the course of the investigation.

42

# **POINT XII**

## **THE COURT SHOULD ORDER THE GOVERNMENT TO PROVIDE NOTIFICATION OF EXPERT WITNESSES**

The Court should order the Government to provide pre-trial notification of any expert testimony as required by Federal Rule of Evidence 702. This notification should include the name of the expert, his prior testimony, resume, and the nature and scope of his expected testimony.

43

## POINT XIII

## THE COURT SHOULD ORDER THE GOVERNMENT TO PROVIDE ANY: (A) STATEMENTS MADE BY THE DEFENDANT; (B) INSPECTION OF PHYSICAL EVIDENCE; AND (C) REPORTS OF EXAMINATIONS AND TESTS

Pursuant to Rule 16(a) of the Federal Rules of Criminal Procedure, the Court should order the Government to provide all statements made by the Defendant, allow for inspection of physical evidence, and disclose any relevant reports of examinations and tests.

## STATEMENTS MADE BY THE DEFENDANT

Subsection (A) of Fed. R. Crim. P. 16(a)(1) requires in part:

> Upon request of a defendant, the government must disclose to the defendant and make available for inspection, copying, or photographing: any relevant written or recorded statements made by the defendant, or copies thereof, within the possession, custody or control of the government, the existence of which is known, or by the exercise of due diligence may become known, to the attorney for the government; that portion of any written record containing the substance of any relevant oral statement made by the defendant whether before or after arrest in response to interrogation by any person then known to the defendant to be a government agent; and recorded testimony of the defendant before a grand jury which relates to the offense charged. The government must also disclose to the defendant the substance of any other relevant oral statement made by the defendant whether before or after arrest in response to interrogation

44

by any person then known by the defendant to be a
government agent if the government intends to use that
statement at trial…

## INSPECTION OF PHYSICAL EVIDENCE

Subsection (C) requires that:

Upon request of the defendant the government shall permit
the defendant to inspect and copy or photograph books,
papers, documents, photographs, tangible objects,
buildings or places, or copies or portions thereof, which
are within the possession, custody or control of the
government, and which are material to the preparation of
the defendant's defense or are intended for use by the
government as evidence in chief at the trial, or were
obtained from or belong to the defendant.

## REPORTS AND EXAMINATIONS RELATING TO THE DEFENDANT

Subsection (D) requires:

Upon request of a defendant the government shall permit
the defendant to inspect and copy or photograph any
results of reports of physical or mental examinations, and
of scientific tests or experiments, or copies thereof, which
are within the possession, custody or control of the
government, the existence of which is known, or by the
exercise of due diligence may become known, to the
attorney of the government, and which are material to the
preparation of the defense or are intended for use by the
government as evidence in chief, at the trial.[3]

---

[3] Discovery of the reports of any scientific tests, examinations, or analyses that the
government conducted in relation to this case are discoverable pursuant to Rule
16(a)(1)(D). *See Taylor*, 707 F.Supp. at 702.

Mr. Perez should be permitted to inspect all statements made by him, along with physical evidence and reports of any physical or mental examinations.

## POINT XIV

## THE COURT SHOULD STRIKE THE PREJUDICIAL SURPLUSAGE FROM THE INDICTMENT

The Indictment utilizes the phrases "and elsewhere" (Paras. 6, 11, 15, 16), "others known and unknown" (Paras. 6, 11, 15).  This Court should strike the use of these words throughout the charging instrument.

Motions to strike surplusage from an indictment will be granted where the challenged allegations are "not relevant to the crime charged and are inflammatory and prejudicial."  *United States v. Scarpa*, 913 F.2d 993 (2d Cir. 1990) (quoting *United States v. Napolitano*, 552 F. Supp. 465, 480 (S.D.N.Y. 1982)) (internal quotations omitted).  Indeed, "if evidence of the allegation is admissible and relevant to the charge, then regardless of how prejudicial the language is, it may not be stricken." *Id.* (citing *United States v. DePalma*, 461 F. Supp. 778, 797 (S.D.N.Y. 1978) (internal quotations omitted).

Here, there is a valid basis for striking the challenged language as there is no basis for the phrase "elsewhere" to be stated throughout the indictment.  Despite the regular practice of the Government in this district to include "elsewhere," where applicable, in various indictments returned by the grand jury, such practice is improper here.  Such ambiguous language provides no substance other than to

47

confuse a jury into thinking that the criminal activity is broader than what the Government will actually prove and thus unduly prejudicial to Defendant Mr. Perez.

## POINT XV

## THE GOVERNMENT SHOULD BE REQUIRED TO DISCLOSE THE IDENTITIES OF THE GOVERNMENT'S WITNESSES

A trial court has the discretion to order disclosure of the identities of the Government's witnesses "upon a finding that a defendant's request is material to the preparation of his case and is otherwise reasonable." *United States v. Santiago*, 174 F. Supp. 2d 16, 38 (S.D.N.Y. 2001) (*citing United States v. Cannone,* 528 F.2d 296, 300-01 (2d Cir. 1975); *Nachamie,* 91 F. Supp.2d at 579. Materiality and reasonableness of the request should be assessed through application of a six-factor test:

> "(1) Did the offense alleged in the indictment involve a crime of violence? (2) Have the defendants been arrested or convicted for crimes involving violence? (3) Will the evidence in the case largely consist of testimony relating to documents (which by their nature are not easily altered)? (4) Is there a realistic possibility that supplying the witnesses' names prior to trial will increase the likelihood that the prosecution's witnesses will not appear at trial, or will be unwilling to testify at trial? (5) Does the indictment allege offenses occurring over an extended period of time, making preparation of the defendants' case complex and difficult? (6) Do the defendants have limited funds with which to investigate and prepare their defense?" *Santiago*, 174 F. Supp. 2d at 38-39 (quoting *United States v. Turkish,* 458 F. Supp. 874, 881 (S.D.N.Y. 1978)).

Though this case includes allegations of violence, the remaining *Turkish*

49

factors favor disclosure of the Government's witnesses. The defense is unaware of any indication that disclosure of the Government's witnesses would impair its ability to produce them at trial. Accordingly, Mr. Perez respectfully requests that the Court order the Government to furnish defense counsel with a witness list.

## **POINT XVI**

### **THE COURT SHOULD ORDER AN AUDIBILITY HEARING**

Mr. Perez preserves the right to seek the Court's intervention to address any audibility issues with respect to any of the Government's recordings that it may propose for the admission at trial. In this respect, however, the defense will attempt to reach an agreement with the Government as to the substance of these recordings to be introduced and any audibility concerns.

## POINT XVII

## DEFENDANT RESPECTFULLY RESERVES THE
## RIGHT TO FILE ADDITIONAL MOTIONS

While Defendant Perez has made a good faith effort to raise all issues known to him at this time, it is possible that further motions may be required as the prosecution continues to make discovery productions and Mr. Perez continues to research and investigate his case. Accordingly, Mr. Perez respectfully requests that he be permitted to file additional motions if necessary.

## CONCLUSION

WHEREFORE, Defendant Kevin Perez respectfully requests that this Honorable Court grant the relief sought herein, and grant leave and permission for counsel to file additional motions on behalf of Defendant, and for such other and further relief as this Court may deem just and proper.

Dated: December 20, 2024

/s/ Thomas R. Ashley
NJ BAR ID NO.: 242391967
The Law Office of Thomas R. Ashley
50 Park Place, Suite 1400
Newark, New Jersey 07102
TEL: (973) 623-0501
FAX: (973) 623-0329
E-MAIL: Ashleylaw@traesq.com
Attorney for Defendant-Movant
Kevin Perez

52

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

      - v. -

KEVIN PEREZ,
   a/k/a "Kay Flock,"
   a/k/a "Kay,"
   a/k/a "KK,"
DEVON MASON,
   a/k/a "BJ,"
ERVIN BEAMON,
   a/k/a "EJ,"
NICHOLAS JOHNSON,
   a/k/a "Nick,"
SEAN SMITH,
   a/k/a "Sticky," and
JOSSI CASTRO,
   a/k/a "Jesse,"

          Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**SEALED**
**INDICTMENT**

23 Cr.

**23 CRIM 099**

### COUNT ONE
### (Racketeering Conspiracy)

The Grand Jury charges:

1. From at least in or about 2017, up to and including the present, KEVIN

PEREZ, a/k/a "Kay Flock," a/k/a "KK," DEVON MASON, a/k/a "BJ," ERVIN BEAMON, a/k/a

"EJ," NICHOLAS JOHNSON, a/k/a "Nick," SEAN SMITH, a/k/a "Sticky," and JOSSI CASTRO,

a/k/a "Jesse," the defendants, and others known and unknown, were members and associates of a

criminal organization named "Sev Side" or "DOA" (short for "Dead On Arrival"), which operated

principally in the Belmont neighborhood of the Bronx, New York ("Sev Side/DOA," or the

1

Da1

"Enterprise"). Members and associates of Sev Side/DOA engaged in, among other activities, robberies, wire fraud, bank fraud, and acts involving murder and assault.

   2. Sev Side/DOA, including its leadership, its membership, and its associates, constituted an "enterprise," as defined by Title 18, United States Code, Section 1961(4), that is, a group of individuals associated in fact, although not a legal entity. Sev Side/DOA constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of Sev Side/DOA. At all times relevant to this Indictment, Sev Side/DOA was engaged in, and its activities affected, interstate and foreign commerce.

   3. KEVIN PEREZ, a/k/a "Kay Flock," a/k/a "KK," DEVON MASON, a/k/a "BJ," ERVIN BEAMON, a/k/a "EJ," NICHOLAS JOHNSON, a/k/a "Nick," SEAN SMITH, a/k/a "Sticky," and JOSSI CASTRO, a/k/a "Jesse," the defendants, participated in unlawful and other activities in furtherance of the conduct of Sev Side/DOA's affairs.

<div align="center">PURPOSES OF SEV SIDE/DOA</div>

   4. The purposes of Sev Side/DOA included the following:

    a. Preserving and protecting the power and territory of Sev Side/DOA and its members and associates through acts involving murder, assault, other acts of violence, and threats of violence.

    b. Enriching the members and associates of Sev Side/DOA through, among other things, (i) robberies; and (ii) financial frauds.

    c. Promoting and enhancing Sev Side/DOA and the reputation and activities of its members and associates.

    d. Keeping victims and potential victims in fear of the Enterprise and its members and associates through acts and threats of violence.

<div align="center">2</div>

<div align="center"># Da2</div>

<u>MEANS AND METHODS OF SEV SIDE/DOA</u>

5.     Among the means and methods employed by the members and associates in conducting and participating in the conduct of the affairs of Sev Side/DOA were the following:

a.     Members and associates of Sev Side/DOA committed and conspired, attempted, and threatened to commit, acts of violence, including acts involving murder and assault, to protect and to expand Sev Side/DOA's reputation, and to retaliate against rival gangs.

b.     Members and associates of Sev Side/DOA committed robberies;

c.     Members and associates of Sev Side/DOA committed financial frauds involving attempts to obtain funds by depositing fraudulent checks into bank accounts controlled by members and associates of Sev Side/DOA, and submitting fraudulent unemployment claims.

d.     Members and associates of Sev Side/DOA obtained, possessed, and used firearms and ammunition.

e.     Members and associates of Sev Side/DOA promoted and celebrated the criminal conduct of Sev Side/DOA on social media websites such as Instagram and Facebook and through reference to real acts of violence in songs posted publicly on websites such as Youtube.

<u>THE RACKETEERING CONSPIRACY</u>

6.     From at least in or about 2017, up to and including the present, in the Southern District of New York and elsewhere, KEVIN PEREZ, a/k/a "Kay Flock," a/k/a "KK," DEVON MASON, a/k/a "BJ," ERVIN BEAMON, a/k/a "EJ," NICHOLAS JOHNSON, a/k/a "Nick," SEAN SMITH, a/k/a "Sticky," and JOSSI CASTRO, a/k/a "Jesse," the defendants, and

Da3

others known and unknown, being persons employed by and associated with the racketeering enterprise described in Paragraphs One through Five of this Indictment, namely, Sev Side/DOA, which enterprise engaged in, and the activities of which affected, interstate and foreign commerce, knowingly combined, conspired, confederated, and agreed together and with each other to violate the racketeering laws of the United States, to wit, Title 18, United States Code, Section 1962(c), that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of Sev Side/DOA through a pattern of racketeering activity, as that term is defined in Title 18, United States Code, Sections 1961(1) and 1961(5), consisting of:

        a.     multiple acts involving murder, chargeable under the following provisions of state law: New York Penal Law, Sections 125.25 (murder), 105.15 (conspiracy), 110.00 (attempt), and 20.00 (aiding and abetting);

        b.     multiple acts involving robbery, chargeable under the following provisions of state law: New York Penal Law Sections 160.00, 160.05, 160.10, 160.15 (robbery), 105.05 (conspiracy), 110.00 (attempt), and 20.00 (aiding and abetting);

        c.     multiple acts indictable under Title 18, United States Code, Sections 1343 (wire fraud), 1344 (bank fraud), and 2 (aiding and abetting).

        7.     It was a part of the conspiracy that each defendant agreed that a conspirator would commit at least two acts of racketeering activity in the conduct of the affairs of Sev Side/DOA.

## **NOTICE OF SPECIAL SENTENCING FACTORS**

### **Murder**

        8.     On or about December 16, 2021, in the Southern District of New York and elsewhere, KEVIN PEREZ, a/k/a "Kay Flock," a/k/a "KK," the defendant, knowingly murdered

Da4

and aided and abetted the murder of Hwascar Hernandez in the vicinity of 151st Street and

Amsterdam Avenue in New York, New York, in violation of New York Penal Law, Sections

125.25(1) and (2) and 20.00, in that (i) with intent to cause the death of another person, PEREZ

caused the death of Hwascar Hernandez, and aided and abetted the same; and (ii) under

circumstances evincing a depraved indifference to human life, PEREZ recklessly engaged in

conduct which created a grave risk of death to another person, and thereby caused the death of

Hernandez, and aided and abetted the same.

(Title 18, United States Code, Section 1962(d).)

## COUNT TWO
### (Violent Crime in Aid of Racketeering:
### December 16, 2021 Murder)
### (PEREZ)

The Grand Jury further charges:

9.    At all times relevant to this Indictment, Sev Side/DOA, as described in

Paragraphs One through Five of Count One of this Indictment, which are repeated and incorporated

by reference as though fully set forth herein, including its leadership, members, and associates,

constituted an enterprise, as that term is defined in Title 18, United States Code, Section

1959(b)(2), that is, an association in fact of individuals which engaged in, and the activities of

which affected, interstate and foreign commerce. Sev Side/DOA constituted an ongoing

organization whose members functioned as a continuing unit for a common purpose of achieving

the objectives of Sev Side/DOA.

10.    At all times relevant to this Indictment, Sev Side/DOA, through its members

and associates, engaged in racketeering activity, as that term is defined in Title 18, United States

Code, Sections 1961(1) and 1959(b)(1), namely acts involving murder, in violation of New York

Penal Law; acts involving robbery, in violation of New York Penal Law; and acts indictable under

5

Da5

Title 18, United States Code, Sections 1343 (wire fraud), 1344 (bank fraud), and 2 (aiding and abetting).

        11.     On or about December 16, 2021, in the Southern District of New York and elsewhere, KEVIN PEREZ, a/k/a "Kay Flock," a/k/a "KK," the defendant, and others known and unknown, as consideration for the receipt of, and as consideration for a promise and agreement to pay, a thing of pecuniary value from Sev Side/DOA, and for the purpose of maintaining and increasing position in Sev Side/DOA, an enterprise engaged in racketeering activity, as described above, knowingly murdered Hwascar Hernanez, and aided and abetted the same, in the vicinity of 151st Street and Amsterdam Avenue in New York, New York, in that (i) with intent to cause the death of another person, PEREZ caused the death of Hernandez, and aided and abetted the same; and (ii) under circumstances evincing a depraved indifference to human life, PEREZ recklessly engaged in conduct which created a grave risk of death to another person, and thereby caused the death of Hernandez, and aided and abetted the same, to wit, PEREZ shot and killed Hernandez, in violation of New York Penal Law, Sections 125.25 and 20.00.

<div align="center">(Title 18, United States Code, Sections 1959(a)(1)<br>and 2.)</div>

<div align="center">

**COUNT THREE**
**(Murder Through Use of a Firearm)**
**(PEREZ)**

</div>

The Grand Jury further charges:

        12.     On or about December 16, 2021, in the Southern District of New York and elsewhere, KEVIN PEREZ, a/k/a "Kay Flock," a/k/a "KK," the defendant, during and in relation to a crime of violence for which he may be prosecuted in a Court of the United States, namely, the murder charged in Count Two of this Indictment, knowingly used and carried a firearm, and in furtherance of such crime, possessed a firearm, and in the course thereof did cause the death of a

<div align="center">6</div>

<div align="center">

# Da6

</div>

person through the use of a firearm, which killing is murder as defined in Title 18, United States Code, Section 1111, and did aid and abet the same, to wit, PEREZ shot and killed Hwascar Hernandez, and aided and abetted the same, in the vicinity of 151st Street and Amsterdam Avenue in New York, New York.

<div align="center">(Title 18, United States Code, Sections 924(j) and 2.)</div>

<div align="center">

**COUNT FOUR**
**(Violent Crime in Aid of Racketeering:**
**November 10, 2021 Assault with a Dangerous Weapon and**
**Attempted Murder)**
**(PEREZ, MASON, and BEAMON)**

</div>

The Grand Jury further charges:

13.    At all times relevant to this Indictment, Sev Side/DOA, as described in Paragraphs One through Five of Count One of this Indictment, which are repeated and incorporated by reference as though fully set forth herein, including its leadership, members, and associates, constituted an enterprise, as that term is defined in Title 18, United States Code, Section 1959(b)(2), that is, an association in fact of individuals which engaged in, and the activities of which affected, interstate and foreign commerce. Sev Side/DOA constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of Sev Side/DOA.

14.    At all times relevant to this Indictment, Sev Side/DOA, through its members and associates, engaged in racketeering activity, as that term is defined in Title 18, United States Code, Sections 1961(1) and 1959(b)(1), namely acts involving murder, in violation of New York Penal Law; acts involving robbery, in violation of New York Penal Law; and acts indictable under Title 18, United States Code, Sections 1343 (wire fraud), 1344 (bank fraud), and 2 (aiding and abetting).

<div align="center">7</div>

<div align="center">Da7</div>

15.    On or about November 10, 2021, in the Southern District of New York and elsewhere, KEVIN PEREZ, a/k/a "Kay Flock," a/k/a "KK," DEVON MASON, a/k/a "BJ," and ERVIN BEAMON, a/k/a "EJ," the defendants, and others known and unknown, as consideration for the receipt of, and as consideration for a promise and agreement to pay, a thing of pecuniary value from Sev Side/DOA, and for the purpose of maintaining and increasing position in Sev Side/DOA, an enterprise engaged in racketeering activity, as described above, knowingly assaulted an individual with a dangerous weapon and attempted to murder an individual, and aided and abetted the same, to wit, PEREZ, MASON, and BEAMON shot at rival gang members, and aided and abetted the shooting at rival gang members, in the vicinity of Matthewson Road and Roberto Clemente State Park Bridge in the Bronx, New York, in violation of New York Penal Law, Sections 125.25, 120.14, 120.15, 110.00, and 20.00.

(Title 18, United States Code, Sections 1959(a)(3),
1959(a)(5), and 2.)

## COUNT FIVE
### (Firearm Offense)
### (PEREZ, MASON, and BEAMON)

The Grand Jury further charges:

16.    On or about November 10, 2021, in the Southern District of New York and elsewhere, KEVIN PEREZ, a/k/a "Kay Flock," a/k/a "KK," DEVON MASON, a/k/a "BJ," and ERVIN BEAMON, a/k/a "EJ," the defendants, during and in relation to a crime of violence for which they may be prosecuted in a court of the United States, namely the violent crime in aid of racketeering charged in Count Four of this Indictment, knowingly used and carried a firearm, and in furtherance of such crime, possessed a firearm, which was brandished and discharged, and did

8

Da8

aid and abet the same.

(Title 18, United States Code, Sections 924(c)(1)(A)(i),
(ii), (iii), and 2.)

## COUNT SIX
### (Violent Crime in Aid of Racketeering:
### February 10, 2022 Assault with a Dangerous Weapon and
### Attempted Murder)
### (MASON)

The Grand Jury further charges:

17.    At all times relevant to this Indictment, Sev Side/DOA, as described in Paragraphs One through Five of Count One of this Indictment, which are repeated and incorporated by reference as though fully set forth herein, including its leadership, members, and associates, constituted an enterprise, as that term is defined in Title 18, United States Code, Section 1959(b)(2), that is, an association in fact of individuals which engaged in, and the activities of which affected, interstate and foreign commerce. Sev Side/DOA constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of Sev Side/DOA.

18.    At all times relevant to this Indictment, Sev Side/DOA, through its members and associates, engaged in racketeering activity, as that term is defined in Title 18, United States Code, Sections 1961(1) and 1959(b)(1), namely acts involving murder, in violation of New York Penal Law; acts involving robbery, in violation of New York Penal Law; and acts indictable under Title 18, United States Code, Sections 1343 (wire fraud), 1344 (bank fraud), and 2 (aiding and abetting).

19.    On or about February 10, 2022, in the Southern District of New York and elsewhere, DEVON MASON, a/k/a "BJ," the defendant, and others known and unknown, as consideration for the receipt of, and as consideration for a promise and agreement to pay, a thing

Da9

of pecuniary value from Sev Side/DOA, and for the purpose of maintaining and increasing position in Sev Side/DOA, an enterprise engaged in racketeering activity, as described above, knowingly assaulted an individual with a dangerous weapon and attempted to murder an individual, and aided and abetted the same, to wit, MASON shot at a rival gang member, and aided and abetted the shooting at a rival gang member, in the vicinity of Webster Avenue and East Fordham Road in the Bronx, New York, which resulted in the rival gang member being shot in the leg, in violation of New York Penal Law Sections 120.05(2), 120.10, 125.25, 110.00, and 20.00.

(Title 18, United States Code, Sections 1959(a)(3),
1959(a)(5), and 2.)

**COUNT SEVEN**
**(Firearm Offense)**
**(MASON)**

The Grand Jury further charges:

20.    On or about February 10, 2022, in the Southern District of New York and elsewhere, DEVON MASON, a/k/a "BJ," the defendant, during and in relation to a crime of violence for which he may be prosecuted in a court of the United States, namely the violent crime in aid of racketeering charged in Count Six of this Indictment, knowingly used and carried a firearm, and in furtherance of such crime, possessed a firearm, which was brandished and

Da10

discharged, and did aid and abet the same.

(Title 18, United States Code, Sections 924(c)(1)(A)(i),
(ii), (iii), and 2.)

### COUNT EIGHT
**(Violent Crime in Aid of Racketeering:
June 26, 2020 Assault with a Dangerous Weapon and
Attempted Murder)
(JOHNSON)**

The Grand Jury further charges:

21.    At all times relevant to this Indictment, Sev Side/DOA, as described in Paragraphs One through Five of Count One of this Indictment, which are repeated and incorporated by reference as though fully set forth herein, including its leadership, members, and associates, constituted an enterprise, as that term is defined in Title 18, United States Code, Section 1959(b)(2), that is, an association in fact of individuals which engaged in, and the activities of which affected, interstate and foreign commerce. Sev Side/DOA constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of Sev Side/DOA.

22.    At all times relevant to this Indictment, Sev Side/DOA, through its members and associates, engaged in racketeering activity, as that term is defined in Title 18, United States Code, Sections 1961(1) and 1959(b)(1), namely acts involving murder, in violation of New York Penal Law; acts involving robbery, in violation of New York Penal Law; and acts indictable under Title 18, United States Code, Sections 1343 (wire fraud), 1344 (bank fraud), and 2 (aiding and abetting).

23.    On or about June 26, 2020, in the Southern District of New York and elsewhere, NICHOLAS JOHNSON, a/k/a "Nick," the defendant, and others known and unknown, as consideration for the receipt of, and as consideration for a promise and agreement to pay, a thing

11

of pecuniary value from Sev Side/DOA, and for the purpose of maintaining and increasing position

in Sev Side/DOA, an enterprise engaged in racketeering activity, as described above, knowingly

assaulted an individual with a dangerous weapon and attempted to murder an individual, and aided

and abetted the same, to wit, JOHNSON shot at rival gang members, and aided and abetted the

shooting at rival gang members, in the vicinity of Briggs Avenue and East Kingsbridge Road in

the Bronx, New York, which resulted in a victim being shot in the face, in violation of New York

Penal Law Sections 125.25, 120.05(2), 120.10, 110.00, and 20.00.

<div align="center">

(Title 18, United States Code, Sections 1959(a)(3),
1959(a)(5), and 2.)

**COUNT NINE**
**(Firearm Offense)**
**(JOHNSON)**

</div>

The Grand Jury further charges:

24.    On or about June 26, 2020, in the Southern District of New York and

elsewhere, NICHOLAS JOHNSON, a/k/a "Nick," the defendant, during and in relation to a crime

of violence for which he may be prosecuted in a court of the United States, namely the violent

crime in aid of racketeering charged in Count Eight of this Indictment, knowingly used and carried

a firearm, and in furtherance of such crime, possessed a firearm, which was brandished and

discharged, and did aid and abet the same.

<div align="center">

(Title 18, United States Code, Sections 924(c)(1)(A)(i),
(ii), (iii), and 2.)

**COUNT TEN**
**(Possession of Firearm with Defaced Serial Number)**
**(MASON)**

</div>

The Grand Jury further charges:

25.    On or about April 13, 2022, in the Southern District of New York, DEVON

<div align="center">

12

# Da12

</div>

MASON, a/k/a "BJ," the defendant, knowingly possessed and received a firearm, to wit, a silver Smith & Wesson .38 caliber revolver, which had the importer's and manufacturer's serial number removed, obliterated, and altered, and had previously been shipped and transported in interstate and foreign commerce.

<div align="center">(Title 18, United States Code, Sections 922(k) and 2.)</div>

<div align="center">

**COUNT ELEVEN**
**(Possession of Firearm After a Felony Conviction)**
**(SMITH)**

</div>

The Grand Jury further charges:

26.     On or about August 19, 2022, in the Southern District of New York, SEAN SMITH, a/k/a "Sticky," the defendant, knowing he had previously been convicted of a crime punishable by imprisonment for a term exceeding one year, knowingly possessed a firearm, to wit, a loaded .22 caliber Smith & Wesson handgun with serial number HJE6351, and the firearm was in and affecting commerce.

<div align="center">(Title 18, United States Code, Sections 922(g)(1) and 2.)</div>

<div align="center">

**FORFEITURE ALLEGATION AS TO COUNT ONE**

</div>

27.     As a result of committing the offense alleged in Count One of this Indictment, KEVIN PEREZ, a/k/a "Kay Flock," a/k/a "KK," DEVON MASON, a/k/a "BJ," ERVIN BEAMON, a/k/a "EJ," NICHOLAS JOHNSON, a/k/a "Nick," SEAN SMITH, a/k/a "Sticky," and JOSSI CASTRO, a/k/a "Jesse," the defendants, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 1963:

a.     any interest acquired and maintained in violation of Title 18, United States Code, Section 1962, which interests are subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 1963(a)(1);

<div align="center">13</div>

<div align="center">

# Da13

</div>

      b.      any interest in, security of, claims against, and property and contractual rights of any kind affording a source of influence over, the enterprise which the defendant has established, operated, controlled, conducted, and participated in the conduct of, in violation of Title 18, United States Code, Section 1962, which interests, securities, claims, and rights are subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 1963(a)(2); and

      c.      any property constituting and derived from any proceeds which the defendant obtained, directly and indirectly, from racketeering activity, in violation of Title 18, United States Code, Section 1962, which property is subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 1963(a)(3).

### **Substitute Assets Provision**

28.      If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

      a.      cannot be located upon the exercise of due diligence;

      b.      has been transferred or sold to, or deposited with, a third person;

      c.      has been placed beyond the jurisdiction of the Court;

      d.      has been substantially diminished in value; or

      e.      has been commingled with other property which cannot be subdivided without difficulty;

Da14

it is the intent of the United States, pursuant to Title 18, United States Code, Section 1963(m),

Title 21, United States Code, Section 853(p), and Title 28, United States Code, Section 2461(c),

to seek forfeiture of any other property of the defendants up to the value of the above forfeitable

property.

(Title 18, United States Code, Section 1963;
Title 21, United States Code, Section 853; and
Title 28, United States Code, Section 2461.)

_____ (DFP)
GRAND JURY FOREPERSON

_____
DAMIAN WILLIAMS
United States Attorney

15

Da15

Proceeding via: ☐ Video Conference ☐ AT&T ☑ In Person

DOCKET No. 23CR99 _____    DEFENDANT Kevin Perez _____

AUSA Ni Qian/James Ligtenberg _____    DEF.'S COUNSEL Marc Fernich _____
                                          ☐ RETAINED  ☐ FEDERAL DEFENDERS  ☐ CJA  ☑ PRESENTMENT ONLY
☐ _____ INTERPRETER NEEDED
                                          ☐ DEFENDANT WAIVES PRETRIAL REPORT

☐ Rule 5  ☑ Rule 9  ☐ Rule 5(c)(3)  ☐ Detention Hrg.    DATE OF ARREST 2/23/2023 _____    ☐ VOL. SURR.
                                                          TIME OF ARREST 7:30 AM _____      ☐ ON WRIT
☐ Other: _____                         TIME OF PRESENTMENT 2:33 pm

## BAIL DISPOSITION

                                                                                  ☐ SEE SEP. ORDER
☑ DETENTION ON CONSENT W/O PREJUDICE    ☐ DETENTION: RISK OF FLIGHT/DANGER  ☐ SEE TRANSCRIPT
☐ DETENTION HEARING SCHEDULED FOR: _____
☐ AGREED CONDITIONS OF RELEASE
☐ DEF. RELEASED ON OWN RECOGNIZANCE
☐ $ _____ PRB  ☐ _____ FRP
☐ SECURED BY $ _____ CASH/PROPERTY: _____
☐ TRAVEL RESTRICTED TO SDNY/EDNY/ _____
☐ TEMPORARY ADDITIONAL TRAVEL UPON CONSENT OF AUSA & APPROVAL OF PRETRIAL SERVICES
☐ SURRENDER TRAVEL DOCUMENTS (& NO NEW APPLICATIONS)

☐ PRETRIAL SUPERVISION:  ☐ REGULAR  ☐ STRICT  ☐ AS DIRECTED BY PRETRIAL SERVICES
☐ DRUG TESTING/TREATMT AS DIRECTED BY PTS  ☐ MENTAL HEALTH EVAL/TREATMT AS DIRECTED BY PTS
☐ DEF. TO SUBMIT TO URINALYSIS; IF POSITIVE, ADD CONDITION OF DRUG TESTING/TREATMENT
☐ HOME INCARCERATION  ☐ HOME DETENTION  ☐ CURFEW  ☐ STAND ALONE MONITORING
☐ LOCATION MONITORING TECHNOLOGY AS DIRECTED BY PTS  ☐ GPS
☐ DEF. TO PAY ALL OF PART OF COST OF LOCATION MONITORING, AS DETERMINED BY PRETRIAL SERVICES

☐ DEF. TO CONTINUE OR SEEK EMPLOYMENT  [OR]  ☐ DEF. TO CONTINUE OR START EDUCATION PROGRAM
☐ DEF. NOT TO POSSESS FIREARM/DESTRUCTIVE DEVICE/OTHER WEAPON

☐ DEF. TO BE DETAINED UNTIL ALL CONDITIONS ARE MET
☐ DEF. TO BE RELEASED ON OWN SIGNATURE, PLUS THE FOLLOWING CONDITIONS: _____
_____ ; REMAINING CONDITIONS TO BE MET BY: _____

**ADDITIONAL CONDITIONS/ADDITIONAL PROCEEDINGS/COMMENTS:**

☐ DEF. ARRAIGNED; PLEADS NOT GUILTY          ☑ CONFERENCE BEFORE D.J. ON 3/20/23
☐ DEF. WAIVES INDICTMENT
☑ SPEEDY TRIAL TIME EXCLUDED UNDER 18 U.S.C. § 3161(h)(7) UNTIL 3/20/23

For Rule 5(c)(3) Cases:
☐ IDENTITY HEARING WAIVED              ☐ DEFENDANT TO BE REMOVED
☐ PRELIMINARY HEARING IN SDNY WAIVED   ☐ CONTROL DATE FOR REMOVAL: _____

PRELIMINARY HEARING DATE: _____    ☐ ON DEFENDANT'S CONSENT

DATE: 2-23-2023 _____

                                          _____
                                          UNITED STATES MAGISTRATE JUDGE, S.D.N.Y.

WHITE (original) – COURT FILE    PINK – U.S. ATTORNEY'S OFFICE    YELLOW – U.S. MARSHAL    GREEN – PRETRIAL SERVICES AGENCY
Rev'd 2016

Da16

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

-v-

KEVIN PEREZ, DEVON MASON, NICHOLAS
JOHNSON, SEAN SMITH, and JOSSI CASTRO,

Defendants.

---

23-CR-99 (LJL)

<u>ORDER</u>

Lewis J. Liman, United States District Judge:

This Order is entered, pursuant to Federal Rule of Criminal Procedure 5(f) and the Due

Process Protections Act, Pub. L. No 116–182, 134 Stat. 894 (Oct. 21, 2020), to confirm the

Government's disclosure obligations under *Brady* v. *Maryland*, 373 U.S. 83 (1963), and its

progeny, and to summarize the possible consequences of violating those obligations.

The Government must disclose to the defense all information "favorable to an accused" that

is "material either to guilt or to punishment" and that is known to the Government. *Id.* at 87. This

obligation applies regardless of whether the defendant requests this information or whether the

information would itself constitute admissible evidence. The Government shall disclose such

information to the defense promptly after its existence becomes known to the Government so that

the defense may make effective use of the information in the preparation of its case.

As part of these obligations, the Government must disclose any information that can be used

to impeach the trial testimony of a Government witness within the meaning of *Giglio v. United*

*States*, 405 U.S. 150 (1972), and its progeny. Such information must be disclosed sufficiently in

advance of trial in order for the defendant to make effective use of it at trial or at such other time as

the Court may order.[1]

---

[1] This Order does not purport to set forth an exhaustive list of the Government's disclosure obligations.

The foregoing obligations are continuing ones and apply to materials that become known to the Government in the future. These obligations also apply to information that is otherwise subject to disclosure regardless of whether the Government credits it.

In the event the Government believes that a disclosure under this Order would compromise witness safety, victim rights, national security, a sensitive law-enforcement technique, or any other substantial government interest, it may apply to the Court for a modification of its obligations, which may include in camera review or withholding or subjecting to a protective order all or part of the information otherwise subject to disclosure.[2]

For purposes of this Order, the Government has an affirmative obligation to seek all information subject to disclosure under this Order from all current or former federal, state, and local prosecutors, law enforcement officers, and other officers who have participated in the prosecution, or investigation that led to the prosecution, of the offense or offenses with which the defendant is charged.

If the Government fails to comply with this Order, the Court, in addition to ordering production of the information, may:

    (1) specify the terms and conditions of such production;

    (2) grant a continuance;

    (3) impose evidentiary sanctions;

    (4) impose contempt or other sanctions on any lawyer responsible for violations of the Government's disclosure obligations, or refer the matter to disciplinary authorities;

    (5) dismiss charges before trial or vacate a conviction after trial or a guilty plea; or

    (6) enter any other order that is just under the circumstances.

---

[2] The Classified Information Procedures Act sets forth separate procedures to be followed in the event that the Government believes matters relating to classified information may arise in connection with the prosecution. *See* 18 U.S.C. app. 3 §§ 1 *et seq.*

2

Da18

SO ORDERED.

Dated: March 20, 2023
       New York, New York

LEWIS J. LIMAN
United States District Judge

Da19

**Andrew G. Patel**
Attorney-at-Law
15 Chester Avenue
White Plains, New York 10601
apatel@apatellaw.com                                                   Telephone 212-349-0230

**By Email and ECF**

March 31, 2023

The Honorable Lewis J. Liman
United States District Judge
United States Courthouse
500 Pearl Street
New York, NY 10007

Re:    <u>U.S. v. Perez et al, including Sean Smith</u>
        23 Cr. 99 (LJL)

Dear Judge Liman:

New York State authorities arrested Kevin Perez more than one year ago for the
murder charged in this indictment.   Sean Smith, fully aware of the charges against Mr.
Perez, remained at liberty until he voluntarily surrendered to federal authorities earlier this
month.   In the interim, there have been no allegations of threats of harm to witnesses by
either Mr. Perez or Mr. Smith.   Those are facts.

Rule 16, Fed. R. Crim. P., requires a showing of good cause to obtain a Protective
Order.   "Good cause exists when a party shows that disclosure will result in a clearly
defined, specific and serious injury. A finding of harm must be based on a particular factual
demonstration of potential harm, not on conclusory statements."   *United States v. Smith*,
985 F. Supp.2d 506, 523 (S.D.N.Y 2013) (internal citations and quotation marks omitted).

All defense counsel agree that good cause has been established for the Court to issue
a Protective Order and to file the Order on the public record.   We object to language in the
Order proposed by the Government because the proposal implicates, with no showing of "a
particular factual demonstration of potential harm," that individuals subject to this Order
might threaten any witness or anyone or anything related to any witness.   No Complaint
was filed in this case.   The Government's reliance on boiler plate language of the
indictment does not meet the factual standard for a showing of good cause.

The defendants are prejudiced by the issuance of an Order that implies they could be
guilty of a crime for which they have never been charged.   The presumption of innocence
requires a greater showing before such an Order is issued. We ask that the objectionable
language in the Government's Proposed Order be stricken as follows: "Certain of the
Government's disclosure material, referred to herein as 'sensitive disclosure material,'

The Honorable Lewis J. Liman
United States District Judge
March 31, 2023
Page 2

contains information that identifies, or could lead to the identification of, witnesses ~~who may be subject to intimidation or obstruction, and whose lives, persons, and property, as well as the lives, persons and property of loved ones, will be subject to risk of harm~~ absent the protective considerations set forth herein."

The Government is not prejudiced by removing this language.    The Government still gets all the protection it seeks for "sensitive disclosure material" after the offensive language is deleted.    There is precedent in this District for issuing Protective Orders that do not contain this language.    *See United States v. Adames*, 18 Cr. 776 (CS) (Dkt. # 220) (narcotics); *United States v. White*, 23 Cr. 40 (JRS) (Dkt. # 12) (multi-victim fraud); *United States v. Grant*, 21 Cr. 655 (AKH) (Dkt. # 15) (murder); *United States v. Sampson*, 22 Cr. 640 (KMK) (Dkt. # 46) (RICO conspiracy).

Accordingly, we respectfully request that the Court issue a Protective Order without the objectionable language and further Order the Government and defense counsel to meet and confer about redactions that would permit the defendants greater access to sensitive disclosure material.    *See United States v. Baker*, 2020 WL 4589808 at *2 (S.D.N.Y. Aug. 10, 2020) (Liman, J.).

Respectfully submitted,


      /s/Andrew Patel
Andrew G. Patel

cc:    All counsel by ECF and Email

MEMO ENDORSEMENT.
All parties agree that there constitutes good cause for the issuance of the protective order. The Court also finds by a preponderance that, based upon the indictment and the Government's proffer, that there exists a risk that certain of the Government's disclosure material could lead to the identification of witnesses who might be subject to intimidation or obstruction, and whose lives, persons, and property, as well as the lives, persons and property of love ones, will be subject to risk of harm absent the protective considerations set forth in the protective order. Accordingly, the Court has signed the protective order as modified and, to that extent, overrules the objections of Perez and Smith. The Court's findings, of course, do not constitute an admission by any defendant nor will they be admissible against the defendants at trial.

3/31/2023    SO ORDERED.

LEWIS J. LIMAN
United States District Judge

Da21

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

United States of America

v.

Kevin Perez, *et. al.*,

*Defendants.*

**Protective Order**

**23 Cr. 99 (LJL)**

Upon the application of the United States of America, with the consent of the undersigned counsel, and the defendants having requested discovery under Fed. R. Crim. P. 16, the Court hereby finds and orders as follows:

1. **Disclosure Material.** The Government has made and will make disclosure to the defendant(s) of documents, objects and information, including electronically stored information ("ESI"), pursuant to Federal Rule of Criminal Procedure 16, 18 U.S.C. §3500, and the Government's general obligation to produce exculpatory and impeachment material in criminal cases, all of which will be referred to herein as "disclosure material." The Government's disclosure material may include material that (i) affects the privacy and confidentiality of individuals and entities; (ii) would impede, if prematurely disclosed, the Government's ongoing investigation of uncharged individuals; (iii) would risk prejudicial pretrial publicity if publicly disseminated; and (iv) that is not authorized to be disclosed to the public or disclosed beyond that which is necessary for the defense of this criminal case.

2. **Sensitive Disclosure Material.** Certain of the Government's disclosure material, referred to herein as "sensitive disclosure material," contains information that identifies, or could lead to the identification of, witnesses who may be subject to intimidation or obstruction, and whose lives, persons, and property, as well as the lives, persons and property of loved ones, will

based upon the indictment and the Government's proffer,

be subject to risk of harm absent the protective considerations set forth herein. Disclosure Material produced by the Government to the defendant or his counsel that are designated in whole or in part as "Sensitive" by the Government shall include a Bates or other label stating "Sensitive," shall be deemed "Sensitive Material." The Government's designation of material as sensitive disclosure material will be controlling absent contrary order of the Court.

**NOW, THEREFORE, FOR GOOD CAUSE SHOWN, IT IS HEREBY ORDERED:**

1. Disclosure material shall not be disclosed by the defendant or defense counsel, including any successor counsel ("the defense") other than as set forth herein, and shall be used by the defense solely for purposes of defending this action. The defense shall not post any disclosure material on any Internet site or network site to which persons other than the parties hereto have access, and shall not disclose any disclosure material to the media or any third party except as set forth below.

2. Disclosure material that is not sensitive disclosure material may be disclosed by counsel who may provide copies to:

(a) the defendant;

(b) Personnel for whose conduct counsel is responsible, *i.e.*, personnel employed by or retained by counsel, as needed for purposes of defending this action;

(c) Prospective witnesses for purposes of defending this action.

3. Sensitive disclosure material shall be disclosed by counsel only as follows:

(a) the defendant, who may review such discovery but counsel must retain possession of Sensitive disclosure material at all times;

2

Da23

(b) Personnel for whose conduct counsel is responsible, *i.e.*, personnel employed by or retained by counsel, as needed for purposes of defending this action;

4. The Government may authorize, in writing, disclosure of disclosure material beyond that otherwise permitted by this Order without further Order of this Court.

5. This Order does not prevent the disclosure of any disclosure material in any hearing or trial held in this action, or to any judge or magistrate judge, for purposes of this action. However, sensitive disclosure material pertinent to any motion before the Court should initially be filed under seal, absent consent of the Government or Order of the Court. All filings should comply with the privacy protection provisions of Fed. R. Crim. P. 49.1.

6. The Government has advised that information that may be subject to disclosure in this case may be contained within ESI that the Government has seized, pursuant to warrants issued during the course of the investigation, from various cell phones, other devices and storage media, and social media accounts. This ESI was seized from Kevin Perez, Nicholas Johnson, and others. Upon consent of all counsel, the Government is authorized to disclose to counsel for the defendants, for use solely as permitted herein, the entirety of such seized ESI as the Government believes may contain disclosure material ("the seized ESI disclosure material"). The defendant, defense counsel, and personnel for whose conduct counsel is responsible, *i.e.*, personnel employed by or retained by counsel, may review the seized ESI disclosure material to identify items pertinent to the defense. They shall not further disseminate or disclose any portion of the seized ESI disclosure material except as otherwise set forth under this Order.

3

Da24

7. Except for disclosure material that has been made part of the record of this case, the defense shall return to the Government or securely destroy or delete all disclosure material, including the seized ESI disclosure material, within 30 days of the expiration of the period for direct appeal from any verdict in the above-captioned case; the period of direct appeal from any order dismissing any of the charges in the above-captioned case; or the granting of any motion made on behalf of the Government dismissing any charges in the above-captioned case, whichever date is latest. If disclosure material is provided to any prospective witnesses, counsel shall make reasonable efforts to seek the return or destruction of such materials.

8. This Order places no restriction on a defendant's use or disclosure of ESI that originally belonged to the defendant.

4

Da25

## Retention of Jurisdiction

9. The provisions of this order shall not terminate at the conclusion of this criminal prosecution and the Court will retain jurisdiction to enforce this Order following termination of the case.

AGREED AND CONSENTED TO:

DAMIAN WILLIAMS
United States Attorney

by: _____     Date:   3/1/2023
Elizabeth Espinosa/James Ligtenberg/Ni Qian
Assistant United States Attorneys


_____     Date:  _____
Jeffrey Lichtman, Esq.,
Counsel for Kevin Perez


_____     Date:  _____
Jacobs Kaplan, Esq.,
Counsel for Devon Mason


_____     Date:  _____
David Bertan, Esq.
Counsel for Nicholas Johnson


_____     Date:  _____
Stephen Turano, Esq.
Counsel for Jossi Castro


_____     Date:  _____
Andrew Patel, Esq.
Counsel for Sean Smith

SO ORDERED:

Dated: New York, New York
    March 3, 2023

_____
THE HONORABLE LEWIS J. LIMAN
UNITED STATES DISTRICT JUDGE

5

Da26

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

                 Plaintiff,

    v.

KEVIN PEREZ,
a/k/a "Kay Flock,"
a/k/a "Kay,"
a/k/a "KK,"
DEVON MASON,
a/k/a "BJ,"
ERVIN BEAMON,
a/k/a "EJ,"
NICHOLAS JOHNSON,
a/k/a "Nick,"
SEAN SMITH,
a/k/a "Sticky," and
JOSSI CASTRO,
a/k/a "Jesse,"
Defendants

NO. 23-CR-99 (LJL)

ORDER APPOINTING JULIE DE
ALMEIDA AS COORDINATING
DISCOVERY ATTORNEY

It is hereby **ORDERED** that Julie de Almeida is appointed as Coordinating Discovery Attorney

for court-appointed defense counsel.

The Coordinating Discovery Attorney shall oversee any discovery issues that are

common to all the defendants. Her responsibilities will include:

- Managing and, unless otherwise agreed upon with the Government, distributing discovery produced by the Government and relevant third-party information common to all defendants;

- Assessing the amount and type of case data to determine what types of technology should be evaluated and used so duplicative costs are avoided and the most efficient and cost-effective methods are identified;

1

Da27

- Acting as a liaison with federal prosecutors to ensure the timely and effective exchange of discovery;

- Identifying, evaluating, and engaging third-party vendors and other litigation support services;

- Assessing the needs of individual parties and identifying any additional vendor support that may be required—including copying, scanning, forensic imaging, data processing, data hosting, trial presentation, and other technology depending on the nature of the case;

- Identifying any additional human resources that may be needed by the individual parties for the organization and substantive review of information;

Therefore, the Coordinating Discovery Attorney shall assess the most effective and cost-efficient manner to organize the discovery with input from defense counsel.

Discovery issues specific to any particular defendant shall be addressed by defense counsel directly with the Government and not through the Coordinating Discovery Attorney. The Coordinating Discovery Attorney's duties do not include providing additional representation services, and he therefore will not be establishing an attorney-client relationship with any of the defendants.

The Government shall provide discovery to the Coordinating Discovery Attorney unless otherwise agreed. To avoid delay in providing discovery to defense counsel, any additional discovery not already produced shall be provided directly to the Coordinating Discovery Attorney, who shall duplicate and distribute the discovery to all defense counsel. The Government shall work with the Coordinating Discovery Attorney to provide discovery in a timely manner.

The Coordinating Discovery Attorney shall petition this Court, *ex parte* for funds for outside services and shall monitor all vendor invoices for these services including confirming the work was as previously agreed. However, her time and the time spent by her staff will be paid

by the Administrative Office of the U.S. Courts, Defender Services Office.  All petitions for outside services shall include a basis for the requested funds and a determination that the costs of the services are reasonable.

The Coordinating Discovery Attorney shall also provide this Court with *ex parte* status reports depicting the status of work and if any third-party services are used, whether those services remain within the budget authorized by the Court.

DATED this   27   day of April 2023.

Honorable Judge Lewis J. Liman
U.S. District Court Judge

Da29

Case 1:23-cr-00099-LJL    Document 127-2    Filed 09/23/24    Page 1 of 2

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,  :

    Plaintiff,  :       Crim. No. 23-99-1(LJL)

        :

vs.  :       Hon. Lewis J. Liman, U.S.D.J.

        :

KEVIN PEREZ  :  **ORDER FOR ADMISSION**

        :  **PRO HAC VICE**

    Defendant.  :

---

**IT IS HEREBY ORDERED** that the motion of Thomas R. Ashley for admission to practice Pro Hac Vice in the above captioned case is granted.

The Applicant has declared that he is a member in good standing of the bar of New Jersey; and that his contact information is as follows:

> Thomas R. Ashley
> The Law Office of Thomas R. Ashley
> 50 Park Place, Suite 1400
> Newark, New Jersey 07102
> T. 973.623.0501  F. 973.623.0329
> Email ashleylaw@traesq.com

Applicant having requested admission Pro Hac Vice to appear for all purposes as counsel for Kevin Perez in the above entitled action;

**IT IS ON THIS** _____23rd_____ **day of** _____September_____, **2024**

**HEREBY ORDERED** that Applicant is admitted to practice Pro Hac Vice in the above captioned case in the United States District Court for the Southern District of New York. All

attorneys appearing before this Court are subject to the Local Rules of the Court, including the

Rules governing discipline of attorneys.

_____

UNITED STATES DISTRICT/MAGISTRATE JUDGE

AO 458 (Rev. 06/09)  Appearance of Counsel

# UNITED STATES DISTRICT COURT
### for the

| | | |
|---|---|---|
| United States of America | ) | |
| *Plaintiff* | ) | |
| v. | ) | Case No.    23 cr 99 (LJL) |
| Kevin Perez | ) | |
| *Defendant* | ) | |

## APPEARANCE OF COUNSEL

To:    The clerk of court and all parties of record

I am admitted or otherwise authorized to practice in this court, and I appear in this case as counsel for:

(as co-counsel and/or additional counsel for) Defendant Kevin Perez.                                    .

Date:    10/20/2024

_____
*Attorney's signature*

Husain A. Gatlin (5396346)
*Printed name and bar number*
Law Office of Husain A. Gatlin LLC
1 Gateway Center
Suite 2600
Newark, New Jersey 07102
*Address*

HG@GatlinLaw.com
*E-mail address*

(973) 494-9700
*Telephone number*

(973) 400-4102
*FAX number*

[Print]    [Save As...]    [Reset]

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

October 25, 2024

**BY ECF**

The Honorable Lewis J. Liman
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

> MEMO ENDORSEMENT.
> The schedule is approved. The Final Pretrial Conference is rescheduled to January 14, 2025 at 11:00AM in Courtroom 15C. Time is excluded until January 21, 2025 under the Speedy Trial Act, 18 U.S.C. 3161(h)(7)(A). The Court finds that the ends of justice outweigh the interests of the public and the defendant in a speedy trial in that the excluded time is necessary for the defendant to prepare for trial.

        Re:    *United States v. Kevin Perez*, **23 Cr. 99 (LJL)**  10/28/2024  SO ORDERED.

                                                                    LEWIS J. LIMAN
                                                                    United States District Judge

Dear Judge Liman:

        In light of the Court's order adjourning trial in this matter to October 4, 2024 (*see* Dkt. No. 136), the parties respectfully propose the following deadlines, which are consistent with the deadlines previously set by this Court (*see* 7/29/24 Dkt. Entry), taking into account the end-of-year Court holidays:

- Government expert disclosures: December 20, 2024

- Requests to charge, motions in limine, and proposed voir dire: December 20, 2024

- Defense expert disclosure deadline: January 3, 2025

- Objections to requests to charge and proposed voir dire, and responses to motions in limine: January 3, 2025

- Final pretrial conference: the parties propose the week of January 13, 2025

        The Government further requests that the Court exclude Speedy Trial Act time from November 12, 2024, through January 21, 2025, pursuant to 18 U.S.C. § 3161(h)(7)(A), to accommodate the defendant's request for additional time to prepare for trial. (*See, e.g.*, Dkt. No. 134). The defense does not object to this request.

                                Respectfully submitted,

                                DAMIAN WILLIAMS
                                United States Attorney

                        By:        /s/
                                Michael R. Herman / James A. Ligtenberg /
                                Patrick R. Moroney
                                Assistant United States Attorneys
                                (212) 637-2221 / -2665 / -2330

cc:    All counsel of record (by ECF)

Da33

# LAW OFFICE OF THOMAS R. ASHLEY

ROBERT TREAT CENTER

50 PARK PLACE, SUITE 1400

NEWARK, NEW JERSEY 07102

TEL: (973) 623-0501

FAX: (973) 623-0329

December 6, 2024

AUSAs Michael R. Herman, James A. Ligtenberg,
and Patrick Moroney
Office of the United States Attorney
1 St. Andrew's Plaza
New York, NY 10007

Re: *United States v. Kevin Perez*
   23 Cr. 99 (LJL)

In accordance with Local Rule 3, Rule 16, F. R. Crim. P., and the constitutional requirements set forth in *Brady v. Maryland*, 373 U.S. 83 (1963), *Giglio v. United States*, 405 U.S. 150 (1972) and *United States v. Agurs*, 427 U.S. 97 (1976), I ask the government to furnish or permit discovery, inspection and the right to copy the following:

1. Count One clearly fails to advise Mr. Perez of the nature of the criminal action against him. It fails to apprise Mr. Perez of either (1) the racketeering acts involved in the § 1962(c) offense that he is alleged to have conspired to commit or (2) the dates, times, locations, participants, or any other information with which to identify and investigate the charged racketeering acts. Mr. Perez will have to move for a Bill of Particulars if these deficiencies are not addressed.

2. Count One also fails to specify which defendants allegedly agreed to partake in which racketeering act, or which defendants agreed that someone else would commit a particular offense. Not only does this conspiracy section of the

1

Indictment fail to alleged the "who," but it also fails to allege the "when, what, and where" with respect to the purported racketeering acts charged as the object of the criminal conspiracy. This makes the defense of these vague and nebulous charges virtually impossible. Again, Mr. Perez will be forced to move for a bill of particulars if these deficiencies are not addressed.

Mr. Perez also seeks the following:

3. Any statements made by the defendant, or copies thereof, within the possession, custody or control of the government, the existence of which is known or by the exercise of due diligence may become known to the attorney for the government. This request includes, without limitation, discovery of written or recorded statements and recordings of defendant's conversations by any means of mechanical recordation or electronic surveillance, whether made before or after arrest and/or indictment and whether or not in response to interrogation. The term "statements" includes the "substantially verbatim" as well as the "mere summary" and encompasses defendant's statements whether before or after arrest and in whatever form preserved. This request also calls for discovery of the time, place and circumstances of such statements.

4. The substance of any oral statement made by the defendant, whether before or after arrest (a) during a conversation with any person who in fact was a government agent or informer or who is now a government witness, or (b) in response to interrogation by any person then known to defendant to be a government agent. This request is designed to reach those statements by defendant which have not been preserved in any writing or recording. This request also calls for discovery of the time, place and circumstances of such statements.

5. Any recorded testimony of defendant before a governmental agency, entity or instrumentality or before a grand jury, state or federal.

6. Defendant's prior criminal record, if any, as is within the possession, custody or control of the government, the existence of which is known or by the exercise of due diligence may become known to the attorney for the government.

7. The case files from Defendant's prior criminal convictions including, without limitation, any conviction that the client has in any Court. This request includes prior charging documents, any transcripts any court proceeding including

2

pleas, conferences, trials and sentencing, sentencing submissions, discovery material, Department of Correction and/or BOP records.

8. Any books, papers, documents, photographs, tangible objects, buildings or places, or copies or portions thereof, which are within the possession, custody or control of the government and which are material to the preparation of the defense. This request includes but is not limited to any books, papers, documents, photograph or other tangible objects, or copies thereof, which came into the possession, custody or control of the prosecution by subpoena, seizure or request directed to: any person whom the prosecution intends to call as a witness at trial.

This request also specifically includes but is not limited to any books, records or other documentation within the possession, custody or control of the government having to do with financial or business activity or any witness the prosecution intends to call at trial.

9. Any books, papers, documents, photographs, tangible objects, buildings or places, or copies or portions thereof, which are within the possession, custody or control of the government and which are intended for use by the government as evidence at the trial or which are material to preparing the defense. Specific attention is called to any employee, policy or procedural manuals, circulars, advisories, internal memorandum with respect to the management, governance and loan policy as to any federal regulatory agent or agency.

10. Any books, papers, documents, photographs, tangible objects, or copies or portions thereof, which are within the possession, custody or control of the government and which were obtained from or belong to the defendant, or any co-defendant.

11. Any books, papers, documents, photographs, tangible objects, buildings or places, or copies thereof, which are within the possession, custody or control of the government that (a) are referred to in the indictment; (b) related to any statement of fact in the indictment; (c) constitute the fruits or means of perpetrating any of the offenses set forth in the indictment; or (d) were presented to the grand jury in its investigation of the criminal offenses referred to in the indictment.

12. All results or reports of physical or mental examinations and of scientific tests or experiments, or copies thereof, which are within the possession, custody or control of the government, the existence of which is known or by the exercise of due

3

diligence may become known to any attorney for the government and which are either (a) material to the preparation of the defense or (b) are intended for use by the government as evidence-in-chief at the trial.

13. All charts, summaries or calculations reflecting the contents of voluminous writings which are either (a) material to the preparation of the defense or (b) for use by the government as evidence-in-chief at the trial.

14. A written list of the names, addresses and qualifications of all experts the government intends to call as witnesses at trial, together with all reports made by such experts or, if reports have not been made, a description of the opinion and subject matter of the opinion to which each is to testify, and the bases for such opinion. This request includes, without limitation, a written summary of testimony that the government intends to use under Rule 702, 703, or 705 of the Federal Rules of Evidence.

15. Any documents reflecting or relating to any wire communications or oral communications intercepted by the government to which defendant was a party to during which defendant was present, or which were obtained by interceptions directed against the defendant, co-defendant or co-conspirator or to which any witness the prosecution intends to call at trial was a party, whether or not such interceptions were authorized or lawful. The terms "wire communications," and "interception" are used here as defined in 18 U.S.C. § 2510. This request includes, without limitation, one-party "consent" aural acquisitions. The request includes, without limitation, logs, transcripts and tapes of the intercepted communications, a list of all communications to which defendant has been identified as a party, all applications to the Court and orders of the Court with respect thereto, all inventory orders, inventories and reports of service thereof and competent evidence of all the facts and circumstances concerning the authorization for the applications to intercept any wire communications involved in this case.

16. The date, time and place of every occasion on which any surveillance, mail cover, search and/or seizure, whether electronic, photographic, mechanical, visual, aural or of any other type, was made of defendant, together with all documents, photographs, recordings, or other materials resulting from or reflecting or relating to such occasions.

17. Any and all written or oral statements or utterances - formal or informal - made to the prosecution, its agents and representatives by any person which are in

4

any way conceivably contrary to the testimony or expected testimony of that person or any other person whom the prosecution intends to call as a witness at trial or which otherwise reflect upon the credibility, competency, bias or motive of prosecution witnesses.

18. All relevant statements, trial testimony, grand jury testimony, and handwritten or informal notes of interviews in the possession, custody or control of the government which were made by any person who is a witness or prospective witness in this case which was made or given either (a) prior to the time such person was a prospective witness in this case or (b) in connection with an investigation or proceeding other than this case.

19. All statements required to be produced under 18 U.S.C. § 3500, including but not limited to handwritten and other information notices of interviews. If any such statements or notes have been or are intended to be discarded or destroyed, please identify such statements and notices, in sufficient detail to permit a request to the Court for appropriate relief in advance of trial. This demand includes notes of prosecutors, statements known by prosecutors, statements indicative of witness bias, notes of agents, police and informants.

20. Please inform me, either by furnishing the pertinent documents or otherwise, of any and all evidence of criminal conduct - state or federal - on the part of any person whom the prosecution intends to call as a witness at trial of which the prosecution, its agents and representatives have become aware. This request includes institutional disciplinary records, if such person was a federal or state inmate.

21. Please inform me, either by furnishing the pertinent documents or otherwise, of any and all promises, understandings or agreements, formal or informal, between the prosecution, its agents and representatives and persons (including counsel for such persons) whom the government intends to call as witnesses at trial, together with copies of all documentation pertaining thereto. This request includes, but is not limited to, such promises, understandings or agreements as may have been made in connection with other cases or investigations. This request includes information concerning any payment of monies to any prospective witness.

22. Please inform me, either by furnishing the pertinent documents or otherwise, of any and all evidence that any person who is a government witness or prospective government witness in this case is or was suffering from any physical or mental disability or emotional or emotional disturbance, drug addiction or alcohol

5

addiction at any time during the period of the indictment to the present. This request includes records and reports of psychological or psychiatric testimony with respect to any such person who was an inmate of a federal or state prison or underwent such tests as a condition of entering the federal witness protection program.

23. Any and all statements - formal and informal, oral or written - by the prosecution, its agents and representatives to any person (including counsel for such persons) whom the prosecution intends to call as a witness at trial pertaining in any way to the possibility, likelihood, course or outcome of any government action - state or federal, civil or criminal - or immigration matters against the witness, or anyone related by immigration matters against the witness, or anyone related by blood or marriage to the witness, or anyone associated in business with the witness, or any corporation, partnership, joint venture or other association employing the witness or in which the witness has an interest.

24. A written list of the names and addresses of all persons whom the prosecution, its agents and representatives believe to have relevant knowledge and/or information with reference to the charges contained in the indictment but whom the prosecution does not propose to call as a witnesses at trial, along with all statements of such persons made to government agents or the grand jury which pertain to the instant captioned defendant, any of his co-defendants or co-conspirators.

25. Set forth as precisely as possible the date, time and place of any utterances, statements or actions by the defendant upon which the prosecution intends to rely at trial in order to establish the offenses charged in the indictment.

26. Identify by name and address all persons said to have been present at or to have personal knowledge of the utterances, statements or actions of the defendant upon which the prosecution intends to rely at trial to establish the offenses charged in the indictment.

27. Please inform me of the names of any witnesses or prospective witnesses in this case who are or have been in the Witness Protection Program and furnish all documents pertaining to any offers by the government to any witness or prospective witness to enter the Witness Protection Program, and all psychological testimony, and polygraphing.

28. A list of all documents used, obtained or written in connection with the

6

investigation preceding the indictment that the government destroyed, for whatever reason, including but not limited to rough notes to interviews, reports, memoranda, subpoenaed documents and other documents.

29. A written list of the names and addresses of all government witnesses which the attorney for the government intends to call in the presentation of its case-in-chief, together with any record of prior convictions of any such witnesses which is within the possession, custody or control of the government, the existence of which is known or by the exercise of due diligence may become known to the attorney for the government.

30. Any statements or documents, including but not limited to grand jury testimony and federal, state and local tax returns made or executed by any potential government witness at the trial in this case which the government knows, or through reasonable diligence, should have reason to know is false.

31. Please inform me of any statements reflecting, relating or referring to any discussion or conversations in which the government suggested that an individual might possibly be afforded more favorable treatment in any regard in the event such individual offered evidence against defendant. This request includes a list of the date(s), time(s) and place(s) of each such occurrence and the name(s) of the person(s),   including counsel, who were present.

32. A list of all persons (and their counsel) who were asked by the government or its representatives whether they or their clients would and/or could implicate the defendant in any criminal wrongdoing.

33.   Please inform me of all judicial proceedings in any criminal cases involving (as a witness, unindicted co-conspirator or defendant) any person who is a potential government witness at the trial in this action.

34. Any and all actions, promises or efforts - formal or informal - on the part of the government, its agents and representatives to aid, assist or obtain benefits of any kind for any person whom the government considers a potential witness at trial, or a member of the immediate family of such witness, or for the corporation, partnership, unincorporated association, labor union or business employing such potential witness or in which the witness is an employee, director, shareholder, trustee, partner, member, agent or servant. This request includes, but is not limited to: (a) letters to anyone informing the recipient of the witness' corporation; (b)

7

recommendations concerning federal aid or benefits; (c) recommendations concerning licensing, certification or registration; (d) promises to take affirmative action to help the status of the witness in a profession, business or employment or promises not to jeopardize such status; (e) aid or efforts in securing or maintaining the business or employment of a witness; (f) aid or effort concerning a new identity for the witness and his family, together with all other actions incidental thereto; (g) direct payments of money or subsidies to the witness; or (h) any other activities, efforts or promises similar in kind or related to the items listed in (a) through (g) above.

35. Please inform me whether or not the government has used informants, undercover agents or any such entity or individual. If so, provide the names of such individuals and a means by which such individual may be located.

36. In addition to the information and material requested above, any documents, books, papers, photographs, scientific tests or experiments, tangible objects, written or recorded statements or anyone, grand jury transcripts and oral statements of anyone, reports, memoranda, names and addresses of persons, or other evidence or information which either tends to exculpate defendant or tends to be favorable or useful to the defense as to either guilt or punishment, or tends to affect the weight or credibility of the evidence to be presented against defendant, or which will lead to evidence favorable to or exculpatory of defendant which is within the possession, custody or control of the government, the existence of which is known or by the exercise of due diligence may become known to the attorney for the government. This shall include any statements of any witness which conflicts with the government's theory of its case.

37. All photographs, video tapes and/or motion pictures taken in connection with this case.

38. Whether or not during the investigation of this matter, the defendant's photograph, likeness, image or voice recording was exhibited or played to anyone, not then employed by a law enforcement agency. This includes providing a list of the date(s), time(s) and place(s) of each occurrence and the name(s) of the person(s), including counsel who were present. This includes also providing a copy of any and all photographs, drawings, film, video, or audio tape exhibited or played either individually or as part of a group.

39. A copy of all writs, whether <u>ad prosequendum</u> or <u>ad testificandum</u> issued

8

to procure the presence of the defendant in the Southern District of New York.

40. Please state whether evidence of similar acts is intended to be introduced against the defendant or any co-defendant or co-conspirator and what that evidence is.

41. Please state whether or not during the course of the investigation of this matter, any foreign government, foreign police force, foreign intelligence agency or any other foreign agency participated, provided information, provided intelligence or in any other way assisted or furthered this investigation.


## BRADY DEMAND

In addition to the specific Brady request delivered to you on this date, with respect to government witnesses, the following material is demanded:

1. Any statements of the witness, reports of law enforcement officers or agents, transcripts, affidavits, declarations, other court filings, and any other documents or information that conflicts with the government's present theory of the case as outlined in the Indictment.

We request that you respond in writing to this letter as soon as possible and we expect your office to be both reasonable and cooperative.

Very truly yours,

By: _____

THOMAS R. ASHLEY, ESQ.
NJ BAR ID NO.: 242391967
50 Park Place, Suite 1400
Newark, New Jersey 07102
TEL: (973) 623-0501
FAX: (973) 623-0329
E-MAIL: Ashleylaw@traesq.com
Attorney for Defendant Kevin Perez

TRA/jvs
cc: All counsel of record

9



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 38th Floor*
*New York, New York 10278*

December 13, 2024

**By Email**
Thomas R. Ashley, Esq.
Law Office of Thomas R. Ashley
50 Park Place, Suite 1400
Newark, New Jersey 07102

Re:    *United States v. Perez*, 23 Cr. 99 (LJL)

Dear Mr. Ashley:

The Government writes this letter (the "RICO Enterprise Letter") to provide advance notice of its intention to introduce at trial evidence regarding the incidents listed below.[1] Evidence of the predicate crimes described below is admissible because it constitutes direct, substantive proof of the charges in the Indictment by demonstrating: (i) the nature, existence, and background of the racketeering enterprise alleged in the racketeering conspiracy charged in Count One and the violent crimes in racketeering charged in Counts Two through Five; (ii) the nature of the relationships, including positions of mutual trust, among the defendant and other members and associates of the racketeering enterprise; and (iii) the pattern of racketeering activity engaged in by the racketeering enterprise and the enterprise's effect on interstate commerce. Additionally, and in the alternative, the evidence described below is also admissible pursuant to Federal Rule of Evidence 404(b) because it demonstrates the defendant's knowledge, intent, motive, opportunity, modus operandi, and lack of mistake or accident with respect to the charged racketeering offenses. The Government reserves the right to supplement this letter in advance of trial as additional incidents are identified or if additional material information comes to light regarding the incidents listed below.

1.  The defendant was a member, and eventually the leader of, a violent street gang known as "Sev Side" or "DOA" (referred to as "Sev Side" in this letter). Sev Side operated primarily on 187th Street between Park Avenue and Southern Boulevard in the Bronx. Members and associates of Sev Side had rivalries with several other street gangs, which often resulted in acts of violence, including murders and attempted murders. Sev Side's rivals included the 800 YGz, the Drillys, River Park Towers ("RPT"), the OYz, and others. Sev Side allied with other gangs over time, which included Third Side, Reyway, and others. In connection with their attacks on rival gang members, Sev Side members (along with, at times, members from their allied gangs) traveled together to rival gang territories to "spin the block," meaning to shoot at gang rivals and others located in the rival gang's territory. The defendant and other Sev Side members frequently posted

---

[1] *See United States v. Sierra*, No. 11 CR. 1032 PAE, 2012 WL 2866417, at *8 (S.D.N.Y. July 11, 2012) (noting that "RICO enterprise letter[s] . . . have been productively utilized in numerous racketeering cases in this District, as a means of particularizing the allegations in an indictment or the evidence the Government intends to introduce at trial.").

videos and photos on social media declaring their affiliation with Sev Side. The defendant also frequently put out rap songs and videos glorifying his leadership in Sev Side and his desire to harm rival gang members.

2. On December 16, 2021, in connection with one of Sev Side's gang disputes, the defendant murdered Hwascar Hernandez in the vicinity of West 151st Street and Amsterdam Avenue in Manhattan, as charged in Counts Two and Three of the Indictment.

3. On multiple occasions throughout the pendency of the racketeering conspiracy, the defendant and other members of Sev Side participated in multiple fraud offenses, including applying for COVID-related Small Business Association ("SBA") loans and filing unemployment claims, using the identities of other individuals in order to obtain funds to which the defendant and other Sev Side members were not entitled. Moreover, the defendant and others in Sev Side and their allied gangs participated in multiple offenses involving check fraud and bank fraud, in which stolen and counterfeit checks were deposited into bank accounts controlled by members of Sev Side, and money was withdrawn from the accounts before the checks were rejected by the bank.

4. On or about November 10, 2021, the defendant, as well as Sev Side members Devon Mason and Ervin Beamon, traveled to RPT territory in a BMW (the "BMW") and shot at rival RPT gang members in the vicinity of Matthewson Road and Roberto Clemente State Park Bridge in the Bronx, as charged in Counts Four and Five of the Indictment.

5. On or about October 23, 2021, Perez received traffic citations while operating the BMW on Astoria Boulevard in Queens.

6. On or about June 20, 2020, the defendant, and allied Third Side members Michael Gant and Iszayah Rowson, committed a shooting in 800 YGz territory, hitting four victims, including Elyesha Cook, a member of the 800 YGz who was shot in the face in the vicinity of 2048 Mapes Avenue in the Bronx.[2]

7. On or about August 10, 2020, the defendant and other allied gang members shot at 800 YGz in the vicinity of 2048 Mapes Avenue in the Bronx, striking, among other individuals, Elyesha Cook in the foot.[3]

8. On or about June 26, 2020, after rival gang members shot a Sev Side member near 4646 Park Avenue, Sev Side Members Nicholas Johnson and Phillip Santiago shot at members of the rival Drilly gang in retaliation, in the vicinity of 2591 Briggs Avenue,

---

[2] The Government produced law enforcement reports related to this shooting in its May 8, 2023 production beginning with identification numbers USAO_057429 through USAO_058055, in which Elyesha Cook's name (along with the names of other victims) is redacted.

[3] The Government produced law enforcement reports related to this shooting in its November 14, 2024 production beginning with identification numbers USAO_081055 through USAO_081197, in which Elyesha Cook's name is not redacted.

Page 3

in the Bronx, striking an individual in the cheek, as charged in Counts Eight and Nine of the Indictment.

9. On or about July 18, 2020, and November 12, 2021, Perez illegally possessed firearms, in front of the 2345 Crotona Avenue in the Bronx (on July 18) and in the vicinity of Main Street and Buena Vista Avenue in Yonkers (on November 12).

Very truly yours,

DAMIAN WILLIAMS
United States Attorney

By:_____/s/_____
Michael R. Herman
James A. Ligtenberg
Patrick R. Moroney
Assistant United States Attorneys
(212) 637-2221 / -2665 / -2330

cc (by e-mail):    Michael Ashley, Esq.
Husain Gatlin, Esq.

Da45