UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

v.                                                          23 Cr. 99 (LJL)

KEVIN PEREZ,

                                        Defendant.

**THE GOVERNMENT'S OPPOSITION TO THE
DEFENDANT'S PRETRIAL MOTIONS**

EDWARD Y. KIM
Acting United States Attorney for the
Southern District of New York
26 Federal Plaza, 37th Floor
New York, NY 10278

Michael R. Herman
James A. Ligtenberg
Patrick R. Moroney
Assistant United States Attorneys
        *- Of Counsel -*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT .......................................................................................................................... 1

I.   The Motion to Dismiss the Racketeering Conspiracy Charge Should Be Denied ................ 1

   A.   Perez's Motion to Dismiss Is Untimely ...................................................................... 1

   B.   Perez's Motion to Dismiss Is Meritless ...................................................................... 3

II.   A Bill of Particulars Is Not Warranted ............................................................................ 5

   A.   Perez's Motion for a Bill of Particulars Is Untimely ................................................... 6

   B.   Perez's Motion for a Bill of Particulars Is Meritless ................................................... 7

III.   The Motion to Inspect the Grand Jury Minutes Should Be Denied .................................. 12

   A.   Applicable Law ....................................................................................................... 12

   B.   Discussion .............................................................................................................. 13

IV.   The Motion to Sever Counts Six through 11 Should be Denied as Moot ........................... 13

V.   Because the Government Has Compiled and Will Continue to Comply with Its Discovery, Brady, Giglio, Rule 404(b), and Other Obligations, Perez's Motions Should be Denied ............ 14

   A.   Rule 404(b) ............................................................................................................ 14

   B.   *Brady*, *Giglio*, and Jencks Act ................................................................................... 14

   C.   Statements of the Defendant and Co-Conspirators ................................................... 16

VI.   The Defendant's Additional Discovery Requests Should Be Denied ................................ 17

VII.   The Motion To Strike Should Be Denied, Because the Language Is Not Surplusage .......... 19

CONCLUSION ..................................................................................................................... 21

## PRELIMINARY STATEMENT

The Government respectfully submits this memorandum of law in opposition to defendant Kevin Perez's pretrial motions (Dkt. 173 ("Mot.")), most of which are untimely discovery motions and challenges to the Indictment. For the reasons discussed below, Perez's motions should be denied in their entirety.

## ARGUMENT

### I.    The Motion to Dismiss the Racketeering Conspiracy Charge Should Be Denied

Perez first seeks dismissal of the racketeering conspiracy charged in Count One of the Indictment, arguing that it is unconstitutionally vague and insufficiently particular. (Mot. 4-17). This pretrial motion—filed more than a year after the deadline for pretrial motions passed—is wildly untimely and should be denied on that basis alone. It is also meritless. Count One contains the elements of the offense charged, fairly informs Perez of the charge against which he must defend, and enables him to plead an acquittal of conviction in bar of future prosecutions for the same offense. No more is required.

#### A.    Perez's Motion to Dismiss Is Untimely

First, the Court should deny Perez's motion as untimely. Rule 12 of the Federal Rules of Criminal Procedure governs pretrial motions alleging "a defect in the indictment," including a "lack of specificity." Fed. R. Crim. P. 12(b)(3)(B)(iii). Under Rule 12, a district court is permitted to "set a deadline for the parties to make pretrial motions." Fed. R. Crim. P. 12(c)(1). "If a party does not meet the deadline for making a Rule 12(b)(3) motion, the motion is untimely. But a court may consider the defense, objection, or request if the party shows good cause." Fed. R. Crim. P. 12(c)(3). "Good cause" under Rule 12(c)(3) requires, "[a]t a minimum," that "the party seeking a waiver articulate some legitimate explanation for the failure to timely file." *United States v. Archuleta*, No. 02 Cr. 1060 (LAP), 2018 WL 8646703, at *2 (S.D.N.Y. July 31, 2018).

Here, Perez's motion is untimely and he has failed to offer any explanation, let alone good cause, for submitting an untimely motion. This Court set a deadline of November 30, 2023, for pretrial motions. (*See* Sept. 19, 2023 Docket Entry ("Defendants to make their pretrial motions by November 30, 2023.")). Perez did not file a pretrial motion by November 30, 2023, and did not seek an extension of the deadline for pretrial motions. Instead, on December 20, 2024—more than *one year* after the deadline, and only one month before trial—Perez filed his motion to dismiss Count One. The motion is grossly untimely.

The Court "may" consider an untimely motion "if the party shows good cause," Fed. R. Crim. P. 12(c)(3), but Perez has not offered any explanation for the timing of his motion to dismiss. Perez's voluntary decision to repeatedly switch his retained counsel does not constitute good cause and, any in event, his current counsel has been retained since at least September 2024. (*See* Dkt. 120); *see, e.g.*, *United States v. Gerace*, No. 19 Cr. 227 (MRJ), 2022 WL 19003139, at *4 (W.D.N.Y. Dec. 19, 2022) ("[C]ourts have recognized that the retention of new counsel is insufficient to establish good cause for purposes of Rule 12(c)(3)." (collecting cases)); *United States v. Hester*, 674 F. App'x 31, 36 (2d Cir. 2016) ("A strategic decision by counsel not to pursue a claim, inadvertence of one's attorney, and an attorney's failure to consult with his client do not constitute good cause."). Because Perez's motion to dismiss is untimely, and because he has failed to demonstrate "good cause" for his delay, the Court should deny the motion without considering the merits. *See* Fed. R. Crim. P. 12(c)(3); *see also, e.g.*, *United States v. Ramos*, No. 23 Cr. 554 (MKV), 2024 WL 4979204, at *6 (S.D.N.Y. Dec. 4, 2024) (denying motion to dismiss as untimely under Rule 12(c)(3)); *United States v. Berry*, No. 20 Cr. 84 (AJN), 2022 WL 17336512, at *5 (S.D.N.Y. Nov. 30, 2022) (same); *United States v. Blackstad*, No. 19 Cr. 486 (ER), 2021 WL 5233417, at *14 (S.D.N.Y. Nov. 9, 2021) (same); *Archuleta*, 2018 WL 8646703, at *2 (same).

**B.     Perez's Motion to Dismiss Is Meritless**

Even putting aside its untimeliness, Perez's motion also lacks merit. Count One—which is fully consistent with the charging language regularly used to charge a racketeering conspiracy in this district—is plainly sufficient.

"A defendant faces a high standard in seeking to dismiss an indictment, because an indictment need provide the defendant only a plain, concise, and definite written statement of the essential facts constituting the offense charged." *United States v. Smith*, 985 F. Supp. 2d 547, 561 (S.D.N.Y. 2014) (citation omitted). "It bears recalling that [the Second Circuit has] consistently upheld indictments that do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." *Id.*; *see United States v. Walsh*, 194 F.3d 37, 44 (2d Cir. 1999) (same). "An indictment is sufficient as long as it (1) contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and (2) enables the defendant to plead an acquittal or conviction in bar of future prosecutions for the same offense." *United States v. Wedd*, 993 F.3d 104, 120 (2d Cir. 2021); *Smith*, 985 F. Supp. 3d at 561; *see United States v. Resendiz-Ponce*, 549 U.S. 102, 108 (2007). "An indictment . . . need not be perfect, and common sense and reason are more important than technicalities." *United States v. De La Pava*, 268 F.3d 157, 162 (2d Cir. 2001).

The dismissal of an otherwise facially valid indictment is an "'extraordinary remedy' reserved only for extremely limited circumstances implicating fundamental rights." *Id.* at 165. "When the charges in an indictment have stated the elements of the offense and provided even minimal protection against double jeopardy," the Second Circuit "has repeatedly refused, in the absence of any showing of prejudice, to dismiss charges for lack of specificity." *Stringer*, 730 F.3d at 124-25.

Perez cannot meet the "high standard" necessary to justify the "extraordinary remedy" of dismissing Count One of the Indictment. Count One provides "a plain, concise, and definite written statement of the essential facts constituting the offense charged." *Smith*, 985 F. Supp. 3d at 561. It "contains the elements" of 18 U.S.C. § 1962(d), "fairly informs" Perez "of the charge against which he must defend," and enables him to plead an acquittal of conviction in bar of a future prosecution for conspiring to participate in the Sev Side/DOA racketeering enterprise. *Id.* No more is required to overcome Perez's motion to dismiss.

Perez argues that Count One "fails to apprise [him] of either (1) the racketeering acts involved in the § 1962(c) offense that he is alleged to have conspired to commit or (2) the dates, times, locations, participants, or any other information with which to identify and investigate the charged racketeering acts." (Mot. 12). This argument is both legally and factually baseless.

As a legal matter, the Indictment was not required to provide the specific information that Perez claims is missing. As the Second Circuit has made clear, an indictment need not allege "the particulars of how a defendant effected a crime." *United States v. D'Amelia*, 683 F.3d 412, 418 (2d Cir. 2012). Rather, an indictment need only address the "core of criminality" of an offense, meaning, the essence of a crime in general terms. *Id.* None of the cases cited by Perez suggest otherwise. As Perez admits, an indictment "need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." (Mot. 8 (citing *United States v. Alfonso*, 143 F.3d 772, 776 (2d Cir. 1998)).

As a factual matter, Perez's argument also mischaracterizes the Indictment, which provides him with ample notice of the charges against him. Count One explains, among other things, that from at least 2017 to 2023, Perez and his co-conspirators were members and associates of "Sev Side" or "DOA," "which operated principally in the Belmont neighborhood of the Bronx" and

4

which engaged in "robberies, wire fraud, bank fraud, and acts involving murder and assault." (Dkt. 1 at 1-2).[1] Count One lists five of Perez's co-conspirators. (Dkt. 1 at 1). It further describes the purposes of Sev Side/DOA and the means and methods of the gang. (Dkt. 1 at 2-3). The Indictment also specifically identifies numerous acts of violence and gun possession that Perez and his co-conspirators committed in furtherance of the gang—listing the dates and locations of those crimes. (Dkt. 1 at 4-13). It explicitly states, for instance: (1) that, "[o]n or about December 16, 2021," Perez "shot and killed Hwascar Hernandez "in the vicinity of 151st Street and Amsterdam Avenue in New York, New York"; and (2) that, "[o]n or about November 10, 2021," Perez and others "shot at rival gang members" "in the vicinity of Matthewson Road and Roberto Clemente State Park Bridge in the Bronx, New York." (Dkt. 1 at 2-9). Given these specific allegations, Perez's claim that the Indictment failed to "specify[] two . . . predicate racketeering acts that Mr. Perez agreed to commit himself or agreed that someone else would commit" (Mot. 14) is simply false.

In short, because the Indictment "track[s] the language of the statute charge and state[s] the time and place (in approximate terms) of the alleged crime," Perez's motion to dismiss is meritless and should be denied. *Wedd*, 993 F.3d at 121; *Walsh*, 194 F.3d at 44; *Alfonso*, 143 F.3d at 776; *Smith*, 985 F. Supp. 3d at 561.

## II.    A Bill of Particulars Is Not Warranted

Perez next argues that he is entitled to a bill of particulars. (Mot. 18-25). This request is untimely, coming more than 20 months after the deadline for such a motion has passed. And given the extensive information provided to Perez about the case against him, the motion is meritless as well. Perez has received, among other things, a detailed Indictment, comprehensive and well-

---

[1] At trial, the Government does not expect to introduce evidence of Perez's involvement in robberies.

organized Rule 16 discovery (including more than a dozen search warrants describing the charged scheme), and a thorough enterprise letter reciting the predicate offenses on which the Government intends to rely at trial. The Government will also be producing substantial materials pursuant to 18 U.S.C. § 3500 in the near future. Taken together, this information more than satisfies the applicable legal standard of enabling the defendant to understand the charges, prepare a defense, and protect against double jeopardy.

### A.    Perez's Motion for a Bill of Particulars Is Untimely

As an initial matter, the Court should deny Perez's motion for a bill of particulars based on its untimeliness. A defendant may move for a bill of particulars "before or within 14 days after arraignment or a later time if the court permits." Fed. R. Crim. P. 7(f). Because Perez was arraigned on March 17, 2023, a motion for a bill of particulars was due on March 31, 2023. Perez never requested an extension of the time to file a motion for a bill of particulars and never offered any explanation for why he could not file one sooner.

Instead, without seeking the Court's permission, he filed the instant motion on December 20, 2024—more than 20 months after the deadline. Perez's motion should therefore be denied based solely on its untimeliness. *See, e.g.*, *United States v. Kozel*, No. 19 Cr. 460 (KMW), 2020 WL 4751498, at *3 (S.D.N.Y. Aug. 17, 2020) (denying motion for bill of particulars as untimely because the defendant filed the motion "more than six months" after he was arraigned, the defendant "offer[ed] no explanation for his delay," and "the Court decline[d] to excuse Defendant's lateness"); *United States v. Russo*, No. 20 Cr. 23 (DLI), 2021 WL 1723250, at *4-5 (E.D.N.Y. Apr. 30, 2021) (denying motion for bill of particulars as "untimely" because defendant filed the motion "more than ten months" after he was arraigned and "[t]he Court did not grant Defendant permission to move for a bill of particulars at a later time"); *United States v. McKay*, 70 F. Supp. 2d 208, 211 (E.D.N.Y. 1999) (denying motion for bill of particulars as untimely

because defendant filed the motion three and a half months after he was arraigned, and rejecting argument that substitution of counsel constituted good cause for extending Rule 7(f)'s time limit).

### B. Perez's Motion for a Bill of Particulars Is Meritless

Even putting aside its untimeliness, Perez's motion for a bill of particulars lacks merit. A bill of particulars is not a general investigatory tool for the defense. *See United States v. Salazar*, 485 F.2d 1272, 1277-78 (2d Cir. 1973). Nor is it a device to compel disclosure of the Government's evidence or its legal theory prior to trial. *United States v. Gottlieb*, 493 F.2d 987, 994 (2d Cir. 1974). Rather, the sole purpose of a bill of particulars is to furnish facts that are necessary to apprise a defendant of the charges against him with sufficient precision to (i) enable him to prepare his defense, (ii) avoid unfair surprise at trial, and (iii) preclude a second prosecution for the same offense. *See Wong Tai v. United States*, 273 U.S. 77, 80-82 (1927); *United States v. Torres*, 901 F.2d 205, 234 (2d Cir. 1991).

Indeed, "a bill of particulars should be required only where the charges of an indictment are so general that they do not advise the defendant of the specific acts of which he is accused." *Torres*, 901 F.2d at 234; *accord United States v. Chen*, 378 F.3d 151, 163 (2d Cir. 2004). Furthermore, "a bill of particulars is not necessary where the government has made sufficient disclosures concerning its evidence and witnesses by other means." *United States v. Walsh*, 194 F.3d 37, 47 (2d Cir. 1999) (affirming denial of request for a bill of particulars where the Government adequately informed the defendant of the nature of the charges against him through discovery). Ultimately, "[i]n deciding a motion for a bill of particulars, '[t]he important question is whether the information sought is necessary, not whether it is helpful.'" *United States v. Triana-Mateus*, No. 98-CR-958 (SWK), 2002 WL 562649, at *5 (S.D.N.Y. Apr. 15, 2002) (quoting *United States v. Facciolo*, 753 F. Supp. 449, 451 (S.D.N.Y. 1990)). Moreover, where, as here, the defendant is charged with criminal conspiracy, the Second Circuit has made clear that "[t]he

Government need not. . . set out with precision each and every act committed by the conspirators in the furtherance of the conspiracy." *United States v. Cohen*, 518 F.2d 727, 733 (2d Cir. 1975) (citing *Wong Tai*, 273 U.S. at 81).

Here, Perez has been provided with more than sufficient information to understand the charges against him, prepare a defense, and protect against double jeopardy. The Indictment sets forth in considerable detail the contours of the alleged conspiracy, including the principle means and methods of the conspiracy, the nature of the defendant's criminal conduct, the dates of the defendant's criminal conduct, and the defendant's specific efforts to facilitate the various criminal charges.

The Government, moreover, has provided Perez with extensive and organized discovery. For each predicate act of violence, the Government provided a clearly marked folder containing all of the NYPD's files for that case. Those files include the specific dates and locations of each predicate act and, where available, videos of the incidents. The Government also produced more than a dozen detailed search warrants describing the Sev Side/DOA racketeering scheme and the criminal acts that Perez and his co-conspirators committed in furtherance of that enterprise. Moreover, in the near future, Perez will also be receiving materials pursuant to 18 U.S.C. § 3500, which will provide additional details regarding the charged offenses.

In addition to the Rule 16 discovery, the Government has provided Perez with a thorough enterprise letter reciting the predicate offenses on which the Government intends to rely at trial. (*See* Dkt. 173-1 at 14-16). That letter provides the following information:

1. The defendant was a member, and eventually the leader of, a violent street gang known as "Sev Side" or "DOA" (referred to as "Sev Side" in this letter). Sev Side operated primarily on 187th Street between Park Avenue and Southern Boulevard in the Bronx. Members and associates of Sev Side had rivalries with several other street gangs, which often resulted in acts of violence, including murders and attempted murders. Sev Side's rivals included the 800 YGz, the

8

Drillys, River Park Towers ("RPT"), the OYz, and others. Sev Side allied with other gangs over time, which included Third Side, Reyway, and others. In connection with their attacks on rival gang members, Sev Side members (along with, at times, members from their allied gangs) traveled together to rival gang territories to "spin the block," meaning to shoot at gang rivals and others located in the rival gang's territory. The defendant and other Sev Side members frequently posted videos and photos on social media declaring their affiliation with Sev Side. The defendant also frequently put out rap songs and videos glorifying his leadership in Sev Side and his desire to harm rival gang members.

2. On December 16, 2021, in connection with one of Sev Side's gang disputes, the defendant murdered Hwascar Hernandez in the vicinity of West 151st Street and Amsterdam Avenue in Manhattan, as charged in Counts Two and Three of the Indictment.

3. On multiple occasions throughout the pendency of the racketeering conspiracy, the defendant and other members of Sev Side participated in multiple fraud offenses, including applying for COVID-related Small Business Association ("SBA") loans and filing unemployment claims, using the identities of other individuals in order to obtain funds to which the defendant and other Sev Side members were not entitled. Moreover, the defendant and others in Sev Side and their allied gangs participated in multiple offenses involving check fraud and bank fraud, in which stolen and counterfeit checks were deposited into bank accounts controlled by members of Sev Side, and money was withdrawn from the accounts before the checks were rejected by the bank.

4. On or about November 10, 2021, the defendant, as well as Sev Side members Devon Mason and Ervin Beamon, traveled to RPT territory in a BMW (the "BMW") and shot at rival RPT gang members in the vicinity of Matthewson Road and Roberto Clemente State Park Bridge in the Bronx, as charged in Counts Four and Five of the Indictment.

5. On or about October 23, 2021, Perez received traffic citations while operating the BMW on Astoria Boulevard in Queens.

6. On or about June 20, 2020, the defendant, and allied Third Side members Michael Gant and Iszayah Rowson, committed a shooting in 800 YGz territory, hitting four victims, including Elyesha Cook, a member of the 800 YGz who was shot in the face in the vicinity of 2048 Mapes Avenue in the Bronx.

7. On or about August 10, 2020, the defendant and other allied gang members shot at 800 YGz in the vicinity of 2048 Mapes Avenue in the Bronx, striking, among other individuals, Elyesha Cook in the foot.

8. On or about June 26, 2020, after rival gang members shot a Sev Side member near 4646 Park Avenue, Sev Side Members Nicholas Johnson and Phillip

9

Santiago shot at members of the rival Drilly gang in retaliation, in the vicinity of 2591 Briggs Avenue, in the Bronx, striking an individual in the cheek, as charged in Counts Eight and Nine of the Indictment.

9. On or about July 18, 2020, and November 12, 2021, Perez illegally possessed firearms, in front of the 2345 Crotona Avenue in the Bronx (on July 18) and in the vicinity of Main Street and Buena Vista Avenue in Yonkers (on November 12).

(Dkt. 173-1 at 14-16 (footnotes omitted)). As demonstrated by the foregoing, the Government has provided Perez with detailed information regarding "the dates, locations, and participants in each agreed-upon racketeering act"—exactly the information Perez claims he is missing. (*See* Mot. 18). The extensive information provided in this letter easily satisfies the requirement that the defendant have adequate notice of the charges to enable him to prepare for trial and avoid unfair surprise.

Moreover, as noted above, the Rule 16 discovery regarding each of these incidents is organized into clearly labeled folders. The Government's letter identifies some of the discovery materials for specific incidents by Bates number. And the Government has made itself available to defense counsel to answer any questions regarding particular aspects of the evidence produced in discovery. Because the Government has directed the defense to the relevant discovery materials, the Court should reject Perez's argument that the "significant quantity of discovery produced by the government" prevents him from preparing for trial. (Mot. 22-23). Likewise, the Court should disregard Perez's claim that he cannot prepare for trial because he has to "sift[] through the thousands of wires." (Mot. 23). This claim is simply false, as the Government did not use any wires in investigating this case.

Finally, the Court should reject Perez's claim that he needs a list of every single co-conspirator involved in the case in order to defend it. (*See* Mot. 24-25). Perez already has extensive information about the identities of his co-conspirators. Five of Perez's co-conspirators were listed in the Indictment. Other, unindicted co-conspirators are specifically identified in the warrants

produced in discovery and in the other Rule 16 materials. And additional information about undicted co-conspirators will soon be provided in the Government's 3500 materials. In short, Perez has detailed information regarding the identities of his co-conspirators, and no additional information is necessary under the law.

In light of the Indictment, the well-organized discovery, the enterprise letter, and the forthcoming 3500 material, Perez is well-apprised of the nature of the charges against him and there will be little surprise at trial. His motion for a bill of particulars is thus a transparent attempt to obtain additional, detailed disclosures regarding the charged crimes and the ways in which the Government intends to prove its case at trial—disclosures to which he is simply not entitled. *See United States v. Sindone*, No. 01-CR-517 (MBM), 2002 WL 48604, at *1 (S.D.N.Y. Jan. 14, 2002) ("[T]he government is not required to turn over information that will permit a defendant to preview the government's case and tempt him to tailor proof to explain it away, or see to it that the government's proof is not presented."). Perez's request for a bill of particulars should therefore be denied. *See, e.g.*, *United States v. Reinhold*, 994 F. Supp. 194, 201 (S.D.N.Y. 1998) (denying request for bill of particulars where "[t]he . . . indictment is detailed in its allegations" and "[the] defendants have had extensive discovery"); *United States v. Conesa*, 899 F. Supp. 172, 176 (S.D.N.Y. 1995) (denying request for bill of particulars because "[t]he Indictment sufficiently advises defendants of the specific acts of which they are accused" and "the Government . . . has made available to defense counsel extensive discovery that supplements the information provided in the . . . Indictment"); *see also United States v. Bin Laden*, 92 F. Supp. 2d 225, 242 (S.D.N.Y. 2000) ("[R]equests, such as those made by the Defendants here, for particulars as to when, where, how, and with whom each individual defendant joined an alleged conspiracy have 'almost uniformly been denied.'").

11

### III.    The Motion to Inspect the Grand Jury Minutes Should Be Denied

Perez next demands disclosure of the grand jury minutes relevant to the Count One racketeering conspiracy, repeating his argument that the Indictment's language is unconstitutionally vague and claiming, without basis, that an error must have occurred in failing to properly instruct the grand jury on the elements of the crime of racketeering conspiracy. These allegations, which amount to sheer (and unfounded) speculation, should not be entertained and Perez's motion should be denied out of hand.

### A.    Applicable Law

Courts "consistently have recognized that the proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings." *Douglas Oil Co. of Cal. v. Petrol Stops Nw.,* 441 U.S. 211, 218 (1979). To obtain disclosure of grand jury minutes, a defendant must show "that a ground may exist to dismiss the indictment." Fed. R. Crim. P. 6(e)(3)(E)(ii). Indeed, "review of grand jury minutes is rarely permitted without specific factual allegations of government misconduct." *United States v. Torres*, 901 F.2d 205, 233 (2d Cir. 1990), *abrogated on other grounds by United States v. Marcus*, 628 F.3d 36, 41 (2d Cir. 2010)). Disclosure should not be authorized when the defendant's request amounts to "mere speculation as to what occurred in front of the grand jury." *United States v. Brown*, 98–CR–168, 1995 WL 387698, at *7 (S.D.N.Y. June 30, 1995); *accord United States v. Blondet*, No. S5 16-CR-387 (JMF), 2019 WL 5690711, at *4 (S.D.N.Y. Nov. 4, 2019) (same). Instead, the defendant must present "concrete allegations of Government misconduct" for a court to allow inspection of grand jury minutes. *United States v. Leung,* 40 F.3d 577, 582 (2d Cir. 1994); *see also United States v. Shyne*, No. 05-CR-1067 (KMK), 2007 WL 1075035, at *9 (S.D.N.Y. Apr. 5, 2007) ("It is decidedly not the province of the federal courts to police the sufficiency of the evidence in a prosecutor's presentation to the Grand Jury.").

**B.    Discussion**

Perez's motion relies on a faulty premise—that a ground may exist to dismiss any count of the Indictment. For the reasons previously discussed (*see supra* pp. 1-5), the Indictment is not unconstitutionally vague, and no valid grounds exist to dismiss the Indictment on that basis. Perez relies on that incorrect premise to speculate that the Government must have misled the grand jury or that the grand jury was "not properly instructed" on racketeering law. (Mot. 30). But as described above, the racketeering charges were properly charged in the Indictment. Nor would any possible evidentiary insufficiency (of which there was none) be sufficient to warrant the relief Perez seeks. *United States v. Laster*, No. S1 06-CR-1064 (JFK), 2007 WL 3070599, at *2 (S.D.N.Y. Oct. 19, 2007), *aff'd*, 313 F. App'x 369 (2d Cir. 2009) ("Speculation regarding the possible insufficiency of evidence presented to the grand jury does not warrant the disclosure of the grand jury materials."). And Perez cites no case law for the proposition that misconduct occurred because Perez was initially charged by New York State authorities before the Indictment was unsealed.

Accordingly, there is no basis for Perez's assertion that the Indictment suggests that the Government has misunderstood the law or conveyed a mistaken understanding of the law to the grand jury, much less engaged in affirmative misconduct. Perez's speculative allegations are woefully insufficient to warrant the relief he seeks. The motion should, therefore, be denied.

## IV.    The Motion to Sever Counts Six through 11 Should be Denied as Moot

Perez moves to sever Counts Six through Eleven, which charge co-defendants with acts of violence for which Perez is not charged. Those co-defendants have all pleaded guilty and the Government is, of course, not proceeding against Perez on counts for which he is not charged.

Accordingly, this motion should be denied as moot.

### V.    Because the Government Has Compiled and Will Continue to Comply with Its Discovery, Brady, Giglio, Rule 404(b), and Other Obligations, Perez's Motions Should be Denied

#### A.    Rule 404(b)

Rule 404(b) requires that the Government provide "reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown," of its intent to use evidence of other crimes, wrongs, or bad acts. Fed. R. Evid. 404(b). The Rule specifies that the Government need only provide "the general nature of any such evidence." *Id.* Rule 404(b), however, sets no minimum time for action by the Government, nor would any time limit be appropriate, because the evidence the Government wishes to offer may change as the proof and potential defenses crystallize. *See United States v. Allums*, 97 Cr. 267 (HS), 1997 WL 599562, at *1 (S.D.N.Y. Sept. 25, 1997) ("The Government has agreed to produce this material in time so that the defense may have an opportunity to challenge their admission; this is all that is required with respect to Rule 404(b) evidence."); *United States v. Helbrans*, 547 F. Supp. 3d 409, 437–38 (S.D.N.Y. 2021) (same). Here, the Government provided Rule 404(b) notice within its enterprise letter and has produced all underlying discovery. This motion should therefore be denied as moot.

#### B.    *Brady*, *Giglio*, and Jencks Act

Perez seeks the immediate disclosure of *Brady* and *Giglio* materials. (Mot. 35-36). The Government is well aware of its obligations under *Brady v. Maryland*, 373 U.S. 83 (1963), which requires the Government to turn over, at the earliest possible time, any "evidence favorable to an accused . . . material either to guilt or to punishment." *Id.* at 87. In fact, the Court issued a *Brady* order several years ago in this case. (Dkt. 21). Should any exculpatory material come into the Government's possession, it will be disclosed promptly. No order requiring the Government to meet its obligations is necessary.

14

Similarly, there is no basis to order immediate disclosure of *Giglio* or Jencks material. "[C]ourts generally decline to compel early disclosure of impeachment or *Giglio* material." *United States v. Segovia-Landa*, No. 20-CR-287 (JPO), 2021 WL 1966117, at *5 (S.D.N.Y. May 17, 2021); *see, e.g.*, *United States v. Nixon*, 418 U.S. 683, 701 (1974) (holding that the "need for evidence to impeach witnesses is insufficient to require its production in advance of trial"); *United States v. Mejia*, No. 98-CR-4, 1998 WL 456257, at *1 (S.D.N.Y. Aug. 5, 1998) ("It is well-established that a defendant [is] not entitled to [*Giglio*] information in advance of trial."). And the Second Circuit has consistently "held that [the] Jencks Act prohibits a District Court from ordering the pretrial disclosure of witness statements." *See, e.g.*, *United States v. Coppa*, 267 F.3d 132, 145 (2d Cir. 2001); *In re United States*, 834 F.2d 283, 287 (2d Cir. 1987); *United States ex rel. Lucas v. Regan*, 503 F.2d 1, 3 n.1 (2d Cir. 1974). Courts in this Circuit have thus repeatedly refused to compel such disclosures in advance of trial.[2]

---

[2] *See, e.g.*, *United States v. Rivera*, No. 16 Cr. 175 (LGS), 2017 WL 1843302, at *2 (S.D.N.Y. May 8, 2017) ("Because Defendants have not identified any special circumstances necessitating early disclosure, their motions to compel the early production of *Giglio* and Jencks Act material are denied."); *United States v. Rodriguez-Perez*, No. 10 Cr. 905 (LTS), 2012 WL 3578721, at *11 (S.D.N.Y. Aug. 16, 2012) (denying motion to compel early production of *Giglio* and 3500 material where Government indicated intent to produce one week before trial); *United States v. Okpomo*, No. 09 Cr. 143 (LBS), 2009 WL 1211403, at *3 (S.D.N.Y. May 5, 2009) ("Although the Second Circuit has encouraged pretrial disclosure [of 3500 material] in complex cases to avoid delays during trial, the statute does not enable courts to compel early disclosure." (*citing United States v. Percevault*, 490 F.2d 126, 132 (2d Cir.1974))); *United States v. Battaglia*, No. 05 Cr. 774 (KMW), 2008 WL 144826, at *2 (S.D.N.Y. Jan. 15, 2008) ("The Jencks Act requires disclosure of a testifying witness's prior statements only after direct examination of that witness, 18 U.S.C. § 3500(a), and the Court may not otherwise compel the early disclosure of such material over a party's objections."); *United States v. Gallo*, No. 98 Cr. 338 (JGK), 1999 WL 9848, at *7-8 (S.D.N.Y. Jan. 11, 1999) (denying defendants' motions to require the early production of *Giglio* and 3500 material); *United States v. Mejia*, No. 98 Cr. 4 (JGK), 1998 WL 456257, at *1 (S.D.N.Y. Aug. 5, 1998) ("It is well-established that a defendant not entitled to [*Giglio*] information in advance of trial."); *United States v. Szur*, No. 97 Cr. 108 (JGK), 1998 WL 132942, at *15 (S.D.N.Y. Mar. 20, 1998) ("The defendants are not entitled to [*Giglio*] information in advance of trial."); *United States v. Gutierrez-Flores*, No. 94 Cr. 393 (CSH), 1994 WL 558034, at *3 (S.D.N.Y. Oct. 11, 1994) ("The defendants' request for material which would assist in impeaching confidential informants or

Moreover, while "[t]he practice in this District is to provide both Giglio and Jen[c]ks Act material at the same time, which should be at least one day prior to the testimony of the witness," *United States v. Rivera*, No. 16 Cr. 175 (LGS), 2017 WL 1843302, at *2 (S.D.N.Y. May 8, 2017) (internal quotation omitted), the Government often produces material earlier as a courtesy and plans to do so in this case at least one week before trial. The Government would be willing to engage with the defense on a mutually agreeable schedule for such disclosure, but, to date, the defense has not been willing to reach such an agreement.[3] *United States v. Rodriguez-Perez*, No. 10-CR-905, 2012 WL 3578721, at *10-11 (S.D.N.Y. Aug. 16, 2012) (declining to order early disclosures under *Giglio* where the Government intended to make such material available to defense counsel one week before trial); *United States v. Trippe*, 171 F. Supp. 230, 238 (S.D.N.Y. 2001) ("The usual practice in this district is that the Government agrees to make impeachment information available to the defense at the same time as Jencks Act Material, that is, at least one day before the Government witness is called to testify."). Accordingly, there is no basis for the Court to order the Government to disclose these materials sooner.

### C.    Statements of the Defendant and Co-Conspirators

The Government has already produced all known statements of Perez and his co-conspirators. Accordingly, this motion should be denied as moot.

---

government witnesses is premature. The government is not required to disclose such material until the witness is called to testify.").

[3] Indeed, the Government emailed the defense attaching proposed stipulations to avoid the need to call multiple custodial witnesses concerning topics about which there is no meaningful dispute, and indicated that it could produce Jencks material sooner if those stipulations were agreed to. Until this morning (January 3, 2025), defense counsel did not respond to the Government's repeated emails and attempted phone calls to have that discussion. Earlier today, one defense counsel indicated he was still reviewing the stipulations, but the Government has not received any other response.

## VI.    The Defendant's Additional Discovery Requests Should Be Denied

Perez's motion also makes a number of other discovery requests that should be denied, several of which are moot.

Exhibit List: The Government will provide an exhibit list no later than one week before trial. In the only case that Perez cites in support of his request, Judge Marrero directed the Government to produce a "working copy of its exhibit list one week prior to trial." *United States v. Falkowitz*, 214 F. Supp. 2d 365, 392–93 (S.D.N.Y. 2002).

Witness List: Perez's motion also seeks disclosure of the identities of the Government's trial witnesses. (Mot. 40-41). Courts in this District have been cautious about ordering early disclosure of witnesses' identities in violence cases—indeed, in the primary case that Perez cites on this point, the court denied a request for early disclosure of witnesses' identities, noting that the case involved alleged "crimes of violence, including murder, attempted murder, and assault." *United States v. Santiago*, 174 F. Supp. 2d 16, 39 (S.D.N.Y. 2001); *see also United States v. Robles*, No. 04 Cr. 1036 (GEL), 2005 WL 957338, at *1 (S.D.N.Y. Apr. 22, 2005) ("It is well established that witness lists and exhibit lists need not be provided in advance of trial. Such disclosure is particularly inappropriate in this case, which involves charges of violent crimes, where the witnesses will include cooperating individuals and victims." (citation omitted)). The Government will provide a witness list no later than one week before trial.

Agents' Notes: The Motion requests that the Court direct the Government to preserve and produce law enforcement agents' notes. (Mot. 42). The Government will provide any such notes that are within its possession and that are required to be produced when it produces witnesses' *Giglio* and Jencks Act material.

Expert Notices: On November 21, 2024, well in advance of the December 20, 2024 court-ordered deadline for expert disclosures, the Government noticed three expert witnesses—a

ballistics expert, a medical examiner, and a DNA criminalist.[4] Accordingly, the defense motion to order the Government to produce expert notice should be denied as moot. (Mot. 43).

Rule 16(a) Requests: Perez's motion also requests that the Government produce statements made by the defendant, allow the defense to inspect physical evidence, and provide any reports of examinations and tests. (Mot. 44-46). Consistent with Rule 16, the Government has already produced any such statements and reports and has offered the defense the opportunity to inspect any physical evidence.

Audibility Hearing: The heading to point 16 of Perez's motion asserts: "The Court Should Order an Audibility Hearing." (Mot. 63). In the body of this section, however, Perez asserts only that the defense "preserves the right" to seek Court intervention "to address any audibility issues with respect to any of the Government's recordings," adding that the defendant will "attempt to reach an agreement with the Government as to the substance of these recordings to be introduced." (Mot. 63).

As noted above, the Government has sent the defense a number of proposed exhibits—including YouTube videos and other records—seeking stipulations as to authenticity and other basic facts, and the defense has not responded with its position. The Government stands willing to discuss these recordings and does not foresee any audibility issues that would preclude their admission. *See, e.g.*, *United States v. McDonald*, 198 F.3d 235, 1999 WL 753488, at *2 (2d Cir. Sept. 16, 1999) ("A tape recording is not inadmissible merely because portions of it are inaudible. Unless the unintelligible portions are so substantial as to render the recording as a whole

---

[4] The November 21, 2024 disclosure indicated that the DNA criminalist had left the Office of the Chief Medical Examiner ("OCME") and that the Government may notice and call a different OCME criminalist to testify at trial. The Government noticed that other criminalist on December 20, 2024.

untrustworthy the recording is admissible, and the decision should be left to the sound discretion of the judge." (citations omitted)).

## VII.    The Motion To Strike Should Be Denied, Because the Language Is Not Surplusage

Perez requests that the Court strike two phrases from the Indictment: the phrase "and elsewhere" from paragraphs 6, 11, 15, and 16 of the Indictment, and the phrase "and others known and unknown" from paragraphs 6, 11, and 15 of the Indictment. (Mot. 59–60).

"Motions to strike surplusage from an indictment will be granted only where the challenged allegations are not relevant to the crime charged and are inflammatory and prejudicial." *United States v. Mulder*, 273 F.3d 91, 100 (2d Cir. 2001). In racketeering cases specifically, courts have refused to strike allegations "that serve to identify the enterprise and the means by which its members and associates conduct various criminal activities." *United States v. Scarpa*, 913 F. 2d 993, 1013 (2d Cir. 1990).  With respect to the challenged phrases, the Second Circuit has explained that "expansive language such as 'and elsewhere' or 'and others' is used in indictments to provide prosecutors with flexibility in proving their cases." *United States v. Olmeda*, 461 F.3d 271, 284 (2d Cir. 2006). The Circuit has declined to "assume from the fact that certain expensive pleading language is routine that it equates to 'mere surplusage.'" *Id.* Rather, the Circuit has assumed that "when such language is included in an indictment, it is supported by a reasonable good faith belief that places or persons other than those specifically alleged are involved in the charged conduct, even if the particulars of those places or persons are not yet known." *Id.*

Use of the phrase "and others known and unknown" is accurate with respect to the cited paragraphs of the Indictment, and is neither inflammatory nor prejudicial. As to the racketeering conspiracy count (paragraph 6 of the Indictment), the Government has not identified all members of SevSide/DOA. As to the paragraphs related to the December 16, 2021 murder (paragraph 11) and the November 10, 2021 River Park Towers shooting (paragraph 15), during each act of

violence the defendant was accompanied by other individuals, some of whom the Government has not been able to identify, as reflected in the law enforcement reports and other discovery materials produced to the defense. At trial, the Government will introduce evidence that the defendant worked with others to commit acts of violence; inclusion of the phrase "with others known and unknown" is no more "inflammatory and prejudicial." *Mulder*, 273 F.3d at 100.

The same is true of the phrase "and elsewhere." At trial, the Government expects to introduce evidence that the defendant and his co-conspirators filed unemployment claims in Arizona, among other acts of interstate fraud. Use of the phrase "the Southern District of New York and elsewhere" is thus accurate with respect to the paragraph relating to the racketeering conspiracy (paragraph 6). Moreover, in order to prove the violent-crime-in-aid-of-racketeering counts (paragraphs 11 and 15), as well as the Section 924(c) count that is based on one of those counts (paragraph 16), the Government will need to prove the existence of an enterprise that affected interstate commerce and was engaged in racketeering activity. *See, e.g.*, Sand, Modern Federal Jury Instructions – 52-36. That the SevSide/DOA enterprise engaged in racketeering activity outside of the Southern District of New York is thus accurate and relevant to the charged counts. And, in any event, use of the phrase "and elsewhere" is neither inflammatory nor prejudicial. *See United States v. Lester*, No. S1 95 CR. 216 (AGS), 1995 WL 656960, at *12 (S.D.N.Y. Nov. 8, 1995) ("The Court finds nothing inflammatory or prejudicial in the phrase 'and elsewhere' . . . . This phrase simply provides a general description that the criminal conduct and activities alleged in the Indictment occurred in the Southern District of New York as well as in other federal districts."). That is especially true in light of the other evidence that the jury will hear: that the defendant committed a murder, participated in multiple attempted murders, and repeatedly bragged about his violence.

## CONCLUSION

For the foregoing reasons, the Government respectfully requests that the Court deny Perez's motions in their entirety.

Dated: New York, New York
January 3, 2025

Respectfully submitted,

EDWARD Y. KIM
Acting United States Attorney for the
Southern District of New York

By:    /s/
Michael R. Herman
James A Ligtenberg
Patrick R. Moroney
Assistant United States Attorneys
(212) 637-2221 / -2665 / -2330

21