UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

---

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Case Number: 23-cr-099(LJM) |
| | : | |
| Plaintiff, | : | MEMORANDUM OF LAW IN |
| | : | REPLY TO GOVERNMENT'S |
| v. | : | MOTIONS *IN LIMINE* |
| | : | |
| KEVIN PEREZ, | : | |
| | : | |
| Defendant. | : | |
| | : | |

---

## REPLY MEMORANDUM OF LAW ON BEHALF
## OF DEFENDANT KEVIN PEREZ

---

THOMAS R. ASHLEY, ESQ.
NJ BAR ID NO.: 242391967
The Law Office of Thomas R. Ashley
50 Park Place, Suite 1400
Newark, New Jersey 07102
TEL: (973) 623-0501
FAX: (973) 623-0329
E-MAIL: Ashleylaw@traesq.com
Attorney for Defendant Kevin Perez

Thomas R. Ashley, Esq.
Michael T. Ashley, Esq.
Husain A. Gatlin, Esq.

On the Reply Memorandum of Law

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................... 1

PROCEDURAL HISTORY/RELEVANT BACKGROUND ......................... 3

### POINT I

THE COURT SHOULD NOT PRECLUDE EVIDENCE
THAT HERNANDEZ WAS IN POSSESSION OF
A GUN AT THE TIME MR. PEREZ SHOT HIM ............................. 4

### POINT II

RAP VIDEOS AND LYRICS BY MR. PEREZ PURPORTEDLY
RELATING TO THE CHARGED CRIMES SHOULD NOT
BE ADMITTED ................................................................. 11

### POINT III

MR. PEREZ WILL ABIDE BY THE APPLICABLE LAW
AS TO EVIDENCE AND ARGUMENT CONCERNING
THE POTENTIAL PUNISHMENT OR CONSEQUENCES
OF CONVICTION ............................................................. 20

### POINT IV

MR. PEREZ WILL ABIDE BY THE APPLICABLE LAW AS TO
JURY NULLIFICATION AND THE EVIDENTIARY RULES ............. 21

### POINT V

MR. PEREZ WILL DECIDE AS TO HIS POSITION
REGARDING THE ADMISSION OF BUSINESS RECORDS
ONCE ALL CERTIFICATIONS ARE RECEIVED .......................... 22

i

POINT VI

MR. PEREZ WILL COMPLY WITH HIS RULE 16(b)
OBLIGATIONS ................................................................... 23

CONCLUSION ............................................................................ 24

## PRELIMINARY STATEMENT

Criminal trials are supposed to be a search for the truth. The Government in *Point I* seeks to turn this given on its head by arguing that defendant Kevin Perez's self-defense claim to the shooting of Hwascar Hernandez should be factually eviscerated. It is Mr. Perez's contention that he acted in self-defense as Hernandez was reaching for Hernandez's gun to shoot and kill Mr. Perez and that this action prompted Mr. Perez to shoot Mr. Hernandez in self-defense. Nothing could be more relevant than the fact that Hernandez did, in fact, possess a gun which he was reaching for to shoot Mr. Perez. The fact that Hernandez had a gun corroborates Mr. Perez's belief that the actions of Hernandez "reaching/drawing" were, in fact, for a gun to be used to kill Mr. Perez. It is, quite simply, the *res gestae* of the case. To be sure, if it turned out that Hernandez was reaching for his cell phone, the Government would be vehemently arguing for the cell phone's admissibility. Or, if Mr. Perez was a New York City police officer, the fact that the "victim" was armed with a gun would be the most salient fact.

The fact that Hernandez possessed a gun that he was reaching for is not only highly relevant, but is the truth and this truth establishes Mr. Perez's defense of self-defense. To bar admission of Hernandez's gun from evidence is ludicrous and

violative of all notions of fairness and due process and would, in essence, deprive Mr. Perez of his best defense. Tellingly, the Government offers no case either federal or state in support of its ridiculous contention.

As to *Point II*, the lyrics and music videos cited by the Government in *Perez* are nothing more than "hyperbole, parody, kitsch, [and] dramatic license" which lack the requisite factual nexus to be admissible. All of the lyrics/videos cited in the Government's brief should be ruled inadmissible and the Government's motion should be denied.

## **PROCEDURAL HISTORY/RELEVANT BACKGROUND**

Mr. Perez respectfully relies upon the "Procedural History/Relevant Background" provided in his "Memorandum of Law and Appendix in Support of Defendant Kevin Perez's Pretrial Motions" filed December 20, 2024 (Doc. 173-2).

## THE COURT SHOULD NOT PRECLUDE EVIDENCE THAT HERNANDEZ WAS IN POSSESSION OF A GUN AT THE TIME MR. PEREZ SHOT HIM

The Government seeks to preclude evidence which goes to the very heart of Mr. Perez's self-defense case and their application should be rejected. Criminal trials are a search for the truth but the Government seeks to bar the true fact that Hernandez was, in fact, reaching for a gun with which he was about to shoot Mr. Perez. Any factual disputes about what words were exchanged or who drew their weapons first are squarely within the purview of the jury. However, it will be impossible for the jury to meaningfully weigh Mr. Perez's self-defense claim if they are deprived of the most significant fact related to this offense--that Hernandez had, in fact, reached for a gun with which he was going to shoot (and potentially kill) Mr. Perez with.

Under Fed. R. Evid. 402 all relevant evidence is admissible unless it is precluded by the United States Constitution, a federal statute, the federal rules, or other rules prescribed by the Supreme Court.

While the Government cites Fed. R. Evid. 401 (Gb9),[1] this rule actually supports Mr. Perez's position as it reads:

---

[1] "Gb" denotes "The Government's Motions *In Limine*" filed on December 20, 2024.

4

Evidence is relevant if:

    (a) it has any tendency to make a fact more of less probative than it would be without the evidence; and

    (b) the fact is of consequence in determining the action.

It is difficult to conceive of a more relevant fact here than Hernandez's possession of a gun for which he was reaching to shoot Mr. Perez. To state that this is a fact "of consequence in determining the action" is a gross understatement.

Both the Government's contention that Hernandez's possession of a gun should be precluded on relevancy grounds (Fed. R. Evid. 401) and due to a danger of unfair prejudice and misleading the jury (Fed. R. Evid. 403) should be rejected by this Court. In fact, if this Court grants the Government's motion and bars the most highly relevant evidence of Hernandez's gun there will not only be unfair prejudice against Mr. Perez but the jury will, unquestionably, be misled as contemplated by Rule 403.

In support of its application, the Government only cites two cases: *Jackson v. Edwards*, 404 F.3d 612 (2d Cir. 2005), upon which it primarily relies, and *United States v. Malpeso*, 115 F.3d 155 (2d Cir. 1997). Neither case supports the Government's position as both are factually and legally distinguishable to a high

degree.

*Jackson* concerns the affirmance by the Second Circuit of the grant of federal habeas relief involving a state conviction for manslaughter and criminal possession of a weapon. The Circuit in *Jackson* held that a justification charge was warranted where the defendant shot an unarmed but heavily intoxicated man who had allegedly pushed and punched him. If anything, *Jackson* supports Mr. Perez's position as that case held that the evidence was sufficient to require a jury instruction on justification and the refusal to give a justification instruction violated due process.

While research has revealed no case directly on point, an examination of the relevant New York State law on justification and its liberal application is relevant and supports Mr. Perez's position that Hernandez's possession of a gun should be admissible.

New York law recognizes a "defense of justification (Penal Law art [.] 35) [that] affirmatively permits the use of force under certain circumstances." *People v. McManus,* 67 N.Y.2d at 545, 505 N.Y.S.2d 43, 496 N.E.2d 202. A defendant's use of deadly physical force is justified as long as the following conditions are met: (1) the defendant subjectively believed that deadly physical force was necessary to defend himself, and that belief was objectively reasonable under the circumstances;

(2) the defendant retreated from the encounter if he knew that he was able to do so with complete safety; and (3) the defendant was not the initial aggressor. *See* N.Y. Penal Law § 35.15.

As stated, New York has adopted a very liberal standard that allows a defendant for whom the defense is applicable to have the jury instructed on it without requiring a heavy burden of proof. *See People v. Steele,* 26 N.Y.2d 526, 528, 311 N.Y.S.2d 889, 260 N.E.2d 527 (1970). Thus, "if on any reasonable view of the evidence, the fact finder might have decided that defendant's actions were justified ... the trial court should instruct the jury as to the defense and must when so requested." *People v. Padgett,* 60 N.Y.2d 142, 144–45, 468 N.Y.S.2d 854, 456 N.E.2d 795 (1983). In making this determination, the court must consider the evidence in the light most favorable to the defendant. *Padgett,* 60 N.Y.2d at 144, 468 N.Y.S.2d 854, 456 N.E.2d 795; *see also Davis v. Strack,* 270 F.3d 111, 124–25 (2d Cir. 2001).

To establish justification in New York, a defendant must establish that he had a subjective fear that "the use of force was necessary under the circumstances." *Matter of Y.K.,* 87 N.Y.2d 430, 434, 639 N.Y.S.2d 1001, 663 N.E.2d 313 (1996). Nevertheless, such a subjective fear is not enough. Instead, the

evidence must be sufficient to show "that his reactions were those of a reasonable man acting in self-defense." *Reynoso,* 73 N.Y.2d at 818, 537 N.Y.S.2d 113, 534 N.E.2d 30. In determining whether the defendant's belief was reasonable "under the circumstances," *see People v. Goetz,* 68 N.Y.2d 96, 114–15, 506 N.Y.S.2d 18, 497 N.E.2d 41 (1986), the physical attributes of both the defendant and the assailant are relevant, *see, e.g., In re Delroy S.,* 25 N.Y.3d 1064, 1067, 12 N.Y.S.3d 19, 33 N.E.3d 1289 (2015) (evidence supporting justification defense included that "[t]he complainant was older, taller, heavier and stronger than [defendant]"), as are the "physical movements of the potential assailant" in the moments preceding the homicide, *see Goetz,* 68 N.Y.2d at 114, 506 N.Y.S.2d 18, 497 N.E.2d 41; *Strack,* 270 F.3d at 119–20, 130 (justification charge warranted where defendant shot man who had attacked him on previous occasions after the man moved his hand toward his waist and started to turn toward defendant). Courts will also consider "any relevant knowledge" that the defendant had about the assailant, such as whether he was under the influence of drugs. *See, e.g., Davis v. Strack,* 270 F.3d at 117, 120, 129 (relying in part on the fact that the assailant was "visibly high" on PCP in concluding that the defendant's fear was reasonable); *People v. Frazier,* 6 A.D.3d 455, 776 N.Y.S.2d 294, 294 (2004) (whether "the victim had ingested PCP before

the altercation ... was relevant on the issue of whether it was objectively reasonable for [the] defendant to perceive him as dangerous."). Under New York law, a determination of the "reasonableness" of a defendant's fear must be based on the "'circumstances' facing a defendant or his 'situation.'" *Goetz,* 68 N.Y.2d at 114, 506 N.Y.S.2d 18, 497 N.E.2d 41. Such a determination properly includes "any relevant knowledge the defendant had about that person," including the perceived assailant's "physical attributes" and "any prior experiences [the defendant] had which could provide a reasonable basis for a belief that [the] person's intentions were to injure or rob him." *Id.*

In *Davis v. Strack, supra,* the Second Circuit held that the habeas petitioner challenging his state court manslaughter conviction was entitled to a justification charge under New York law in spite of the fact that the petitioner Davis had not seen a gun on the victim's person, though the victim reached for his waistband. *See Davis,* 648 N.Y.S.2d at 80.

Mr. Perez submits that the liberal principles utilized by the New York state courts (and federal courts interpreting those laws) as to the justification defense should, by analogy, be applied to the evidentiary rules in this case and that, accordingly, the gun found on Hernandez should be admissible.

The fact that Hernandez had a gun corroborates Mr. Perez's belief that the actions of Hernandez "reaching/drawing" were, in fact, for a gun to be used to kill Mr. Perez. It is, quite simply, the *res gestae* of the case. If it turned out that Hernandez was reaching for his cell phone, the Government would be vehemently arguing for the cell phone's admissibility. Or, if Mr. Perez was a New York City police officer raising a self-defense claim after shooting to death a suspect, the fact that the suspect/"victim" was armed with a gun would be the most salient fact in the Government's arsenal.

The Government's motion to preclude evidence that Hernandez was in possession of a gun at the time Mr. Perez shot him should be denied.

## POINT II

### RAP VIDEOS AND LYRICS BY MR. PEREZ PURPORTEDLY RELATING TO THE CHARGED CRIMES SHOULD NOT BE ADMITTED

While the Second Circuit has admittedly held that rap lyrics may be admitted at criminal trials (*see United States v. Pierce*, 785 F.3d 832, 841 (2d Cir. 2015), this Court still must assess whether the proposed evidence is relevant. In addition, the Court must also assess whether the probative value is substantially outweighed by the danger of unfair prejudice. Fed. R. Evid. 403 (providing for the exclusion of relevant evidence if "its probative value is substantially outweighed by the danger of . . . unfair prejudice").

The Government conveniently overlooks the published Eastern District January 30, 2024 decision in *United States v. Jordan*, 714 F.Supp.3d 158 (E.D. 2024), in which the Honorable LaShann DeArcy Hall held that rap lyrics in which the defendant described shooting people in the head were not relevant, and lyrics in which the defendant described "breaking down bricks" were not relevant. As this opinion begins:

> The abundance of rap music, particularly songs depicting criminal conduct, has invited even greater scrutiny of rap

11

artists--not only from the public, but also from law enforcement. As a result, the admissibility of rap lyrics has become the subject of dispute in courtrooms across the country. And, it is the subject of this opinion. *Id.* at 162.

As this opinion cogently explains:

> In the context of rap music, however, the Court must remain cognizant that "hip hop is fundamentally an *art form* that traffics in hyperbole, parody, kitsch, dramatic license, double entendres, signification, and other literary and artistic conventions to get it (sic) point across." Michael Eric Dyson, Forward, That's the Joint!: The Hip-Hop Studies Reader, xii (Forman & Neal eds. 2004). *Id.* at 163 (emphasis in original).

Of particular relevance to this case is Judge Hall's insightful statement that "rap artists have become increasingly incentivized to create music about drugs and violence to gain commercial success, and will exaggerate or fabricate the contents of their music in pursuit of that success. Indeed, a number of celebrated rap artists have said as much." *Ibid.*

Even the *Pierce* case, relied on by the Government (Gb14), acknowledges a significant risk of prejudice may accompany the introduction of rap lyrics and rap music video evidence. Indeed, the Second Circuit has noted that rap lyrics are only properly admitted "where they are relevant and their probative value is not substantially outweighed by the danger of unfair prejudice." *U.S. v. Pierce*, 785 F.3d

832, 841 (2d Cir. 2015).

Courts have tried to reconcile these considerations by holding that in order to be admissible under Rule 403, "rap lyrics and rap music videos [must] speak with specificity to the precise conduct with which [the defendant] was charged." *U.S. v. Carpenter*, 2022 WL 16960577, at *3 (2d Cir. Nov. 16, 2022).

Courts have applied this principle where the rap videos resembled aspects of the charged crime, established the defendant's association with a street gang and motive to participate in the charged conduct, and demonstrated a defendant's knowledge of the drug trade. *Herron*, 2014 WL 1871909, at *4; *U.S. v. Wilson*, 493 F. Supp. 2d 484, 488–89 (E.D.N.Y. 2006); *U.S. v. Pierce*, 785 F.3d 832, 841 (2d Cir. 2015); *U.S. v. Foster*, 939 F.2d 445, 456 (7th Cir. 1991).

Similarly, in cases in which the rap music evidence was less closely connected to the charged conduct, courts have been more reticent to admit it. *See, e.g.*, *U.S. v. Wiley*, 610 F. Supp. 3d 440, 446 (D. Conn. 2022) (Court recognized that "not every lyric in a rap video is probative of the charged conduct" and therefore excluded "[l]yrics containing statements with only a tenuous connection to the charged conduct" while admitting "statements or images with offense-specific content tending to corroborate the Government's other evidence."); *U.S. v. Sneed*,

3:14 CR 00159, 2016 WL 4191683, at *5–6 (M.D. Tenn. Aug. 9, 2016); *U.S. v. Gamory*, 635 F.3d 480, 493 (11th Cir. 2011).

In addition to the evidentiary issues, a constitutional one has been raised: whether there are First Amendment implications of evidentiary uses of speech and expression. While the First Amendment protects freedom of speech and expression, U.S. Const. amend I, it generally "does not prohibit the evidentiary use of speech to establish the elements of a crime or to prove motive or intent." *Wisconsin v. Mitchell*, 508 U.S. 476, 489 (1993). When determining whether the evidentiary use of speech or expression is appropriate in a given case, "[t]he crucial question is whether the evidence at issue was used for permissible purposes or merely to show that [the defendant] was morally reprehensible due to his abstract beliefs." *U.S. v. Fell*, 531 F.3d 197, 229 (2d Cir. 2008). "Where a defendant 'does not face prosecution for his speech,' there is no danger of violating that defendant's rights guaranteed by the First Amendment." *U.S. v. Wiley*, 610 F. Supp. 3d 440, 444 (D. Conn. 2022) (quoting *U. S. v. Herron*, No. 10-CR-0615 NGG, 2014 WL 1871909, at *3 (E.D.N.Y. May 8, 2014)), aff'd, 762 F. App'x 25 (2d Cir. 2019).

As stated in *Wiley*, 610 F.Supp.3d at 446, "[A]lthough rap music contains

14

first-person accounts of the speaker's lifestyle and activities--including criminal activities--the lyrics are not always autobiographical statements."

As explained in *Jordan*:

> The Second Circuit has not provided specific guidance as to how courts should address the admissibility of rap lyrics. However, a rule-of-thumb has emerged from court decisions that have considered this issue—the relevance of rap lyrics as trial evidence depends on the existence of a specific factual nexus between the content of rap music and the crimes alleged.16 *See, e.g., id.* (admitting lyrics "only where the Government can point to lyrics that communicate specific details related to the charged conduct"); *United States v. Sneed*, 3:14 CR 00159, 2016 WL 4191683, at *5–6 (M.D. Tenn. Aug. 9, 2016) (excluding a rap video, which "depict[ed] men (including Defendant Sneed) rapping about selling drugs" but did not include any "reference to a specific gang or group of individuals working in concert to sell those drugs"); *see also United States v. Gamory*, 635 F.3d 480, 493 (11th Cir. 2011) (holding a rap video irrelevant because there was no evidence that the defendant "authored the lyrics or that the views and values reflected in the video were, in fact, adopted or shared by" the defendant). *Jordan, supra*, 714 F.Supp.3d at 163-164.

The final words in the *Jordan* opinion are worth repeating here:

> A final note is in order. Courts should be wary of overly permissive rules allowing the use of rap lyrics and videos against criminal defendants at trial. Some of the themes of violence and criminality have become so prevalent within the genre that they have little, if any, probative value at trial. Music artists should be free to create without fear that

15

their lyrics could be unfairly used against them at a trial. Juries, too, should not be placed in the unenviable position of divining a defendant's guilt, in whole or in part, from a musical exposition with only a tenuous relationship to the criminal conduct alleged. Individuals who choose to confess unmistakable details of their crimes should be held to those statements, to be sure. It is critical, however, that resolution of guilt and innocence emerge from evidence with a close relationship to a specific criminal act, and not be based on perceptions born from the commercial and artistic promotion of a criminal lifestyle. *Id.* at 167.

Turning to the case at bar, the Government seeks to introduce "the rap lyrics and music videos, in which Perez interacts with members of Sev Side/DOA, along with the allied gang Third Side, acknowledge his gang affiliation and reference specific criminal conduct carried out in support of the enterprise." (Gb17). Specifically, the Government seeks to introduce the following:

1) Music video clips during which Mr. Perez raps in front of 4646 Park Avenue in the Bronx "with a large group of people, including co-defendant Beamon, who display gang signs." (Gb13).

Mr. Perez submits that these generic video clips have no "specific factual nexus between the content of rap music and the crimes alleged" and constitute nothing more than garden-variety rap/hip hop content. There is no inherent criminality whatsoever in standing at any geographic location and this legal reality cannot plausibly be denied. No element of the crimes charged can be attenuated so

far as to be supported by the Defendant simply shooting a music video in the community he is from. There is nothing more than the Government's bare proffer suggesting that the individuals in this video are displaying gang signs, something defense objects to. Therefore, any potential probative value is far outweighed by the danger of unfair prejudice and of misleading the jury.

2) In the song "Kay Flock-FTO (22 blixky Freestyle Remix)" Mr. Perez refers to DOA, rapping "Like, better run, 'cause I shoot with no sympathy (Sympathy)/DOA bitch, I'm dumpin' on anything." (Gb13).

Again, this is nothing more than generic and garden variety hip hop and rap content with no nexus to any specific crimes. What little probative value might be contained in such "evidence" is substantially outweighed by the danger of unfair prejudice and the risk of misleading the jury to believe that these statements are connected to any incident charged in this indictment. As proof thereof, the Government has failed to allege the same.

3) In "Who Really Bugging" Mr. Perez raps with members of Third Side "about the shooting of the 800 YGz member known as 'Eli' (that is, Victim-1), which Rowson, Perez, and others committed . . . " (GB13-14). The Government further cites Mr. Perez's rap: "33 on me . . . if He Gz he get put in a coffin, hole in his face, that boy look like a dolphin. [As others in the background yell 'Eli'.] Spin the 8th know I'm causing extortion." (Gb13-14).

Yet again, these lyrics in no way provide the "specific factual nexus" to justify

17

their admissibility into evidence. Mr. Perez is simply rapping about a shooting which would be commonly known in the neighborhood. If anything, Mr. Perez is employing a common tactic to enhance his "street cred" without any real meaning to the words he says. Any relevancy and probative value of this "evidence' would be substantially outweighed by the danger of unfair prejudice and the risk of misleading the jury.

As explained in the *Jordan* opinion, the rap genre/hip hop "is fundamentally an *art form* that traffics in hyperbole, parody, kitsch, dramatic license, double entendres, signification, and other literary and artistic conventions to get it (sic) point across."

The lyrics cited by the Government in *Perez* are nothing more than "hyperbole, parody, kitsch, [and] dramatic license" which lack the requisite factual nexus to be admissible. All of the lyrics/videos cited in the Government's brief should be ruled inadmissible and the Government's motion denied.

Mr. Perez submits that it is impossible to address the Government's motion as to any other lyrics/music videos without citations to the exact lyrics and music videos which the Government seeks to admit. Once the Government does this, Mr. Perez can then argue as to the relevancy and admissibility or inadmissibility as to

each. Until then, the Government's motion as to any other lyrics/videos cannot be meaningfully answered. The Government's motion to admit the lyrics and music videos cited in its motion should be denied.

## POINT III

### MR. PEREZ WILL ABIDE BY THE APPLICABLE LAW AS TO EVIDENCE AND ARGUMENT CONCERNING THE POTENTIAL PUNISHMENT OR CONSEQUENCES OF CONVICTION

Mr. Perez will follow the relevant law as to "offering evidence or argument concerning the potential punishment or consequences" if Mr. Perez is convicted. (Gb18).

## POINT IV

### MR. PEREZ WILL ABIDE BY THE APPLICABLE LAW AS TO JURY NULLIFICATION AND THE EVIDENTIARY RULES

The Government seeks to preclude Mr. Perez "from offering evidence of or arguments about aspects of his life that have no bearing on his guilt or innocence . . ." (Gb19). As with Point III, Mr. Perez will follow the relevant law as to "offering evidence or argument concerning the potential punishment or consequences" at his trial. (Gb18).

## POINT V

### MR. PEREZ WILL DECIDE AS TO HIS POSITION
### REGARDING THE ADMISSION OF BUSINESS RECORDS
### ONCE ALL CERTIFICATIONS ARE RECEIVED

The Government seeks to introduce at trial "business records from several entities, including Facebook and Instagram (owned by Meta Platforms, Inc.)" (GB20).  On December 16, 2024, 12 proposed stipulations were provided to the defense. Ibid. As stated in the Motions: "The Government has previously produced written certifications from Meta and is in the process of obtaining written certifications from other entities." (Gb25) (emphasis supplied).

Once the Government has provided all of the certifications Mr.  Perez will decide as to his position on the admissibility/stipulation of business records.

## POINT VI

## MR. PEREZ WILL COMPLY WITH HIS
## RULE 16(b) OBLIGATIONS

Mr. Perez apologizes for any delays in the production of Rule 16(b) materials

and will comply with his reciprocal discovery obligations.

## **CONCLUSION**

For the foregoing reasons and authorities cited, the Defendant Kevin Perez respectfully requests that the Court deny the Government's motions *in limine* that are objected to in this memorandum of law.

Dated: Newark, New Jersey
       January 17, 2025

Respectfully submitted,

*/s/ Thomas R. Ashley*
   Thomas R. Ashley, Esq.

*/s/ Michael T. Ashley*
   Michael T. Ashley, Esq.

*/s/ Husain A. Gatlin*
   Husain A. Gatlin, Esq.
   Attorneys for Defendant
   Kevin Perez