

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

February 14, 2025

**BY ECF**

The Honorable Lewis J. Liman
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

   Re: *United States v. Kevin Perez,* 23 Cr. 99 (LJL)

Dear Judge Liman:

   The Government respectfully submits this letter in response to arguments made by defendant Kevin Perez in his opposition to the Government's motions *in limine*. (*See* Dkt. 194). *First*, because Perez still has not identified evidence showing he knew that Hwascar Hernandez—the victim of the December 16, 2021 shooting—had a gun when Perez shot and killed him, the Court should preclude evidence that a gun was subsequently recovered from Hernandez. *Second*, the limited number of rap videos the Government seeks to admit directly relate to the charged racketeering enterprise and to specific crimes or predicate acts charged in the Indictment—indeed, in those videos, Perez describes his involvement in specific acts of violence charged in the Indictment. Thus, Perez's reliance on *United States v. Jordan,* 714 F. Supp. 3d 158 (E.D.N.Y. 2024), is inapposite. (*See* Dkt. 194 at 11). Accordingly, the Government's motions *in limine* should be granted.

  I. **Absent Additional Evidence—Which Perez Has Yet to Identify—The Court Should Preclude Evidence That a Gun Was Recovered from Hernandez**

   On December 16, 2021, Perez shot and killed Hwascar Hernandez, as charged in Count Two of the Indictment. While paramedics were attempting to perform life-saving measures on Hernandez after the shooting, they recovered a gun from his person. As far as the Government can tell, however, Perez was not aware that Hernandez was in possession of a gun at the time Perez shot him. Surveillance video shows that, prior to the shooting, Hernandez walked out of a barber shop and followed Perez down Amsterdam Avenue. As Hernandez did so, he zipped up his coat and appeared to exchange words with Perez. At no point did Hernandez display a gun or even appear to reach for a gun. When Perez reached the corner of West 151st Street and Amsterdam Avenue, he turned around, pointed his gun at Hernandez, and shot and killed him. (*See* Dkt. 176, Exs. A, B). At the time Perez shot Hernandez, Hernandez was simply walking toward him with his left hand in his pocket and his right hand—which appears to be his dominant hand based on his use of both hands as captured in the surveillance video—on his zipper. Still images below show the seconds before Hernandez was shot (as reflected in the right image, when stuffing from his jacket flew into the air):

  

(*Id.*, Ex. A at 00:08–00:11).

     Under New York law, "[t]o have been justified in the use of deadly physical force, the defendant must have honestly believed that it was necessary to defend himself/herself [or someone else] from what he/she honestly believed to be the use or imminent use of such force . . . and a 'reasonable person' in the defendant's position, <u>knowing what the defendant knew</u> and being in the same circumstances, would have believed that too." New York Jury Instruction, Penal Law 35.15(2) (emphasis added).[1] Thus, only what the defendant subjectively believed and knew *at the time* are relevant to the self-defense inquiry. The fact that the victim in fact had a gun, if it was not within the defendant's knowledge at the time, is irrelevant. In his brief, Perez states only the following: "[t]he fact that Hernandez had a gun corroborates Mr. Perez's belief that the actions of Hernandez 'reaching/drawing' were, in fact, for a gun to be used to kill Mr. Perez." (Dkt. 194 at 10). Notably, the defense has not pointed to any basis for Perez's subjective belief that Hernandez was reaching/drawing a gun—a claim that is demonstrably contradicted by the video. If what Perez knew at the time is simply what can be gleaned from the surveillance video, the fact that first response personnel subsequently found a gun on Hernandez's person has no probative value as to what Perez knew at the time he fired the shot that killed Hernandez. By contrast, admission of that evidence is highly prejudicial because there is a high likelihood the jury will impose their after-the-fact knowledge on an inquiry that must only be limited to what *Perez* knew *at the time*. Accordingly, unless the defense proffers additional evidence demonstrating Perez's knowledge that Hernandez had a gun at the time of the shooting beyond what is in the video—which, again,

---

[1] Available at https://www.nycourts.gov/judges/cji/1-General/Defenses/CJI2d.Justification. Person.Deadly_Force.pdf. The instructions also provide: "The defendant would not be justified if he/she knew that he/she could with complete safety to himself/herself and others avoid the necessity of using deadly physical force by retreating." *Id.*

contradicts the defense's characterization of Hernandez's movements—evidence of Hernandez's gun possession should be precluded. *See* Fed. R. Evid. 401, 403.

## II. Rap Videos and Lyrics by Perez Specifically Relating to the Charged Crimes Should be Admitted

At trial, the Government seeks to admit certain of Perez's music videos that have been publicly posted to YouTube and Perez's own social media account. The evidence at trial will establish that Perez and other members of his gang—Sev Side/DOA—promote each other's music, that Perez in particular has become well-known for his music in the subgenre of "drill," that the gang's criminal proceeds are used to buy studio time, and there are multiple rap songs where Perez and other members of his gang rap about their conflict with rival gangs and their participation in *real shootings* against those rival gang members that they had recently committed. Moreover, multiple witnesses will testify that the shootings and rap music are closely linked: committing a shooting makes a subsequent rap song about that very shooting more "authentic," and thereby raises the status of the rapper (here, Perez) boasting about the shooting, and the boasting feeds a cycle of back-and-forth violence.

As a result, the limited rap videos the Government seeks to introduce (i) establish the existence of Sev Side/DOA, define its membership, and explain its rivalry with the opposing gangs; and/or (ii) corroborate specific acts of violence committed by Perez and his fellow gang members in SevSide/DOA, along with gang members in allied gangs like Third Side. (*See, e.g.* Dkt. 176 at 13-14 and Exs. C-3 (video) and D-3 (lyrics) (describing song "Who Really Bugging," in which Perez describes the real shooting of a rival gang member that he committed along with members of the allied gang Third Side)).

In response, Perez does not dispute that the Second Circuit has held that "rap lyrics may be admitted at criminal trials." (Dkt. 194 at 11, citing *United States v. Pierce*, 785 F.3d 832, 841 (2d Cir. 2015)). Rather, he claims that rap videos in which Perez displays gang signs associated with Sev Side/DOA, raps about real acts of violence, pledges allegiance to the charged racketeering conspiracy, and insults rival gangs, are no more than "garden-variety rap/hip hop content," and that Perez's rapping about the shooting of Victim-1—committed by Perez himself and allied gang members—is simply "rapping about a shooting which would be commonly known in the neighborhood." (*Id.* at 16-17). In doing so, Perez cites only *Jordan,* 714 F. Supp. 3d at 163-167. But *Jordan* itself recognized that rap lyrics are properly admitted where there is "a specific factual nexus between the content of rap music and the crimes alleged." *Id.* at 164. And the concerns that animated *Jordan*—namely, that some artists might "exaggerate or fabricate the contents of their music" or they may rap about "generic references to violence" untied to the crimes charged in the indictment, is simply not the case in the context of *this* trial. To the contrary, multiple witnesses will testify that Perez and his gang's rap music did *not* "exaggerate or fabricate" his affiliation with Sevside/DOA, his intense rivalry with other gangs, and his role in the real shootings and acts of violence because doing so would reduce Perez's authenticity in the drill rap community and among his gang. As a result, Perez only rapped about acts of violence in fact committed by himself or allied gang members.

Consequently, the lyrics and music videos the Government seeks to admit here are not "generic references to violence"; rather, they *directly relate* to the charged offenses by establishing

the existence of the charged SevSide/DOA enterprise, Perez's membership in that enterprise, his insulting and/oror threatening of opposing gangs (including by brandishing firearms while taunting them), and his commission of a number of specific acts of violence. *See, e.g.*, *United States v. Graham*, 293 F. Supp. 3d 732, 738 (E.D. Mich. 2017) ("The court finds that the [rap lyrics] are not merely abstract beliefs of the defendants, because the government has tied the lyrics to the actions of the defendants.").

Accordingly, for the reasons set forth above and, in the Government's opening brief, the Court should grant the Government's motions *in limine*.

Respectfully submitted,

MATTHEW PODOLSKY
Acting United States Attorney

By:      /s/
Michael R. Herman
Patrick R. Moroney
Ni Qian
Assistant United States Attorneys
(212) 637-2221 / -2665 / -2364

cc: All counsel of record (by ECF)