```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 02/19/2025
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
:
UNITED STATES OF AMERICA,                                        :
:
-v-                                                              :  23-cr-99 (LJL)
:
KEVIN PEREZ,                                                     :
:  MEMORANDUM AND
              Defendant.                                         :       ORDER
:
-----------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

The Government moves *in limine* to introduce certain evidence and to exclude other evidence from the trial of defendant Kevin Perez ("Defendant"). Dkt. No. 176. Defendant is charged in an indictment filed on February 21, 2023, with: (1) racketeering conspiracy in violation of Title 18, United States Code, Section 1962(d) with a special sentencing factor of murder, Dkt. No. 1 ¶¶ 1–8; (2) the commission of a violent crime in aid of racketeering in violation of Title 18, United States Code, Section 1959(a)(1), by the December 16, 2021, murder of Hwascar Hernandez, *id.* ¶¶ 9–11; (3) murder through use of a firearm, in violation of Title 18 United States Code, Sections 924(j) and 2, *id.* ¶ 12; (4) the commission of a violent crime in aid of racketeering in violation of Title 18, United States Code, Sections 1959(a)(3), 1959(a)(5), and 2, by the attempted murder of rival gang members on or about November 10, 2021, *id.* ¶¶ 13–15; and (5) the knowing use and carriage of a firearm and the possession of a firearm during and in relation to a crime of violence and in furtherance of such crime, in violation of Title 18, United States Code, Sections 924(c)(1)(A)(i)–(iii), and 2, *id.* ¶ 16. Trial is scheduled to begin on March 10, 2025. Dkt. No. 192. This memorandum and order resolves five of the Government's motions. The Court will hear oral argument at the final pretrial conference on February 25, 2025, on the motion to exclude evidence that the victim of the December 16, 2021, shooting had

a gun in his possession. The Court will also hear from the Government regarding the business records the Government intends to offer at trial, as discussed below.

The purpose of an *in limine* motion is "to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996) (quoting *Banque Hypothecaire Du Canton De Geneve v. Union Mines*, 652 F. Supp. 1400, 1401 (D. Md. 1987)). The decision whether to grant an *in limine* motion "resides in a district court's inherent and discretionary 'authority to manage the course of its trials.'" *United States v. Ray*, 2022 WL 558146, at *1 (S.D.N.Y. Feb. 24, 2022) (quoting *Highland Capital Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 176–77 (S.D.N.Y. 2008)). "The trial court should exclude evidence on a motion *in limine* only when the evidence is clearly inadmissible on all potential grounds." *United States v. Ozsusamlar*, 428 F. Supp. 2d 161, 164 (S.D.N.Y. 2006). "Because a ruling on a motion *in limine* is 'subject to change as the case unfolds,' this ruling constitutes a preliminary determination in preparation for trial." *United States v. Perez*, 2011 WL 1431985, at *1 (S.D.N.Y. Apr. 12, 2011) (quoting *Palmieri*, 88 F.3d at 139); *see United States v. Phillips*, 2023 WL 6620146, at *3 (S.D.N.Y. Oct. 10, 2023).

I.  **Admission of Rap Videos and Lyrics**

The Government seeks to offer into evidence three[1] music videos and corresponding lyrics of rap songs recorded by Defendant and his co-conspirators to corroborate the existence of the racketeering enterprise charged in the indictment and the relationship of Defendant to other members of the enterprise who are alleged to be Defendant's co-conspirators, to "establish Sev

---

[1] The Government has submitted what it claims to be a "representative sample" of the music videos and lyrics. Dkt. No. 176 at 12 n.3. This memorandum and order applies only to the music videos and lyrics submitted by the Government for the Court's review.

Side/DOA's violent back-and-forth conflict with its rival gangs," and to corroborate specific acts of violence committed by Defendant and his co-conspirators. Dkt. No. 176 at 12–13; Dkt. No. 197 at 3–4. The motion is granted in part and denied in part.

The indictment charges Defendant with being a member of a violent criminal organization named "Sev Side" or "DOA" (short for "Dead On Arrival") which operated principally in the Belmont neighborhood of the Bronx, New York. Dkt. No. 1 ¶ 1. Members and associates of Sev Side/DOA allegedly committed, and conspired, attempted, and threatened to commit, acts of violence, including acts involving murder and assault, to protect and to expand Sev Side/DOA's reputation and to retaliate against rival gangs. *Id.* ¶ 5(a). Defendant is charged with having committed murder and attempted murders in aid of that racketeering enterprise. *Id.* ¶¶ 9–11, 13–15. The Government proffers that the evidence at trial will show that the gang's rivals included "800YGz," the "Drillys," "River Park Towers" ("RPT"), the "OYz," and others, and that at times Sev Side/DOA had an alliance with "Third Side." Dkt. No. 176 at 1, 13. Sev Side/DOA members travelled together to rival gang territories to "spin the block," *i.e.*, to shoot at gang rivals and others located in the rival gang's territory. *Id.* at 2. Defendant and other Sev Side/DOA members frequently posted—on their own social media accounts, stories and live streams—videos and photos declaring their affiliation with the gang, discussing specific disputes with rival gang members, and bragging about acts of violence and threatening additional violence. *Id.* In particular, the Government alleges that Defendant, who is a rap musician, frequently released rap songs and videos glorifying his leadership in Sev Side/DOA and his desire to harm rival gang members. *Id.*

The Second Circuit has held that "[r]ap lyrics and tattoos are properly admitted . . . where they are relevant and their probative value is not substantially outweighed by any unfair

3

prejudice." *United States v. Pierce*, 785 F.3d 832, 841 (2d Cir. 2015). Rap lyrics and videos can be "used to establish the existence of, and [defendant's] participation in, the alleged RICO enterprise." *Id.* However, "one cannot necessarily infer criminality simply from a rapper's reference to violence, drug dealing, and the like." *United States v. Jordan*, 714 F. Supp.3d 158, 163 (E.D.N.Y. Jan. 30, 2024). Indeed, "[n]early every rap album in the Billboard Top 200 today contains references to drug use, drug sales, violence, or some combination of the three." *Id.* One court has suggested "a rule of thumb" that "the relevance of rap lyrics as trial evidence depends on the existence of a special factual nexus between the content of rap music and the crimes alleged." *Id.* at 164; *see also United States v. Johnson*, 469 F. Supp. 3d 193, 221–22 (S.D.N.Y. 2019) (excluding lyrics with general violent references because "the Government has not demonstrated that the lyrics contain any direct references to the Blood Hound Brims or to gang activity"); *United States v. Herron*, 2014 WL 1871909, at *3–4 (E.D.N.Y. May 8, 2014) ("[C]ircuit courts have admonished trial judges against admitting rap videos or lyrics with merely a tenuous connection to the defendant or issues in the case."), *aff'd*, 762 F. App'x 25 (2d Cir. 2019).

The Government offers three music videos and lyrics. The statements in the music videos and lyrics are not hearsay, because they are either admissions or adoptive admissions. *See United States v. Graham*, 293 F. Supp. 3d 732, 738 (E.D. Mich. 2017). The issue is whether the probative value of each video outweighs the risk of unfair prejudice. *Pierce*, 785 F.3d at 841.

In "Who Really Bugging," Defendant and persons the Government proffers are other members of Sev Side/DOA rap with persons whom the Government proffers are members of Third Side about the shooting of a person named Eli, a member of the rival gang 800YGz, by Defendant and his co-conspirators. Dkt. No. 176 at 14. Defendant raps: "33 on me . . . if He Gz

4

he get put in a coffin, hole in his face, that boy look like a dolphin. Spin the 8th know I'm causing extortion." *Id.* Others in the background yell "Eli." *Id.* The victim was shot in the face. *Id.* The Government proffers that the "8th" refers to the 800 YGz territory. *Id.* The video and lyrics have a direct and specific nexus to the charged conduct. They are clearly admissible. *See Jordan*, 714 F. Supp.3d at 163; *United States v. Wilson*, 493 F. Supp. 2d 460, 462 (E.D.N.Y. 2006) (admitting lyrics that "describe activity that resembles aspects of the central crime alleged by the Government . . . and appear to have been written after that crime was committed").

In the song "Kay Flock-FTO (22 blixky Freestyle Remix)," Defendant raps in front of 4646 Park Avenue in the Bronx, which witnesses will testify operated as the headquarters of Sev Side/DOA, in the presence of a large group of people, including his co-defendant Ervin Beamon, who display gang signs. Dkt. No. 176 at 13. This video is relevant to show the existence of the alleged RICO enterprise, Defendant's affiliation with it, and his association with his co-defendant. The footage is not highly prejudicial as compared to the charges in the indictment. *See United States v. Livotti*, 196 F.3d 322, 326 (2d Cir. 1999). It depicts a group of young men drinking, smoking, and dancing in front of the aforementioned building. The video is admissible.

In the song "Brotherly Love," the Government proffers that Defendant admits his association with DOA as well as its violent tendencies, rapping "Like, better run, 'cause I shoot with no sympathy (Sympathy)/DOA bitch, I'm dumpin' on anything." Dkt. No. 176 at 13. This lyric is relevant in that it associates Defendant with Sev Side/DOA. However, the lyric is not highly probative of the violent conduct charged in the indictment, as it consists of "generic references to violence that can be found in many rap songs." *Jordan*, 714 F. Supp. 3d at 166. The music video for this song contains what appear to be numerous guns, although it is preceded

5

by a disclaimer that "any props used in this video . . . are merely props and should not be taken seriously." The Government has not argued that any visual content in the video is relevant. The song also contains violent lyrics by persons who are not Defendant, and the Government has not proffered that such lyrics are relevant. On balance, the prejudicial impact of the video, creating the risk that Defendant will be convicted on the basis of a rap video containing violent images, outweighs the probative value of the isolated lyric identified by the Government. This video is excluded.[2]

## II.     Preclusion of Evidence Concerning Potential Punishment or Consequences of Conviction

The Government moves to preclude Defendant from offering evidence or argument concerning the potential punishment or consequences that he faces if convicted. Dkt. No. 176 at 18–19. Defendant does not oppose the motion and states that he will follow the relevant law. Dkt. No. 194 at 20. The potential punishment Defendant faces from conviction is not relevant to the charges in the Indictment. The Government's motion is granted.

## III.    Preclusion of Evidence Intended to Elicit Sympathy or Jury Nullification

The Government moves to preclude Defendant from offering evidence that would have no bearing on his guilt or innocence and that might invite sympathy or jury nullification, such as evidence relating to his family background, his health, or age, or other similar irrelevant personal factors. Dkt. No. 176 at 19–20. Defendant also does not oppose this motion and states he will comply with applicable law. Dkt. No. 194 at 21.

The Second Circuit has directed that "'trial courts have the duty to forestall or prevent' jury nullification." *In re United States*, 945 F.3d 616, 626 (2d Cir. 2019) (quoting *United States*

---

[2] This preliminary ruling is without prejudice to an application by the Government to admit the written lyrics or particular portions of such lyrics on a showing that their probative value outweighs the risk of undue prejudice.

*v. Thomas*, 116 F.3d 606, 615 (2d Cir. 1997)).  It has explained:  "There is no meaningful difference between a court's knowing failure to remove a juror intent on nullification, a court's instruction to the jury that encourages nullification, and a court's ruling that affirmative permits counsel to argue nullification."  *Id.* at 626–27.  Each is improper.  The Court will follow that direction.  Defendant is precluded from offering evidence that has no bearing on his guilt or innocence and, unless it is relevant to the charges and its relevance outweighs the risk to the Government of prejudice and of the possibility of jury nullification, from offering evidence on his family background, health, or age or other personal facts.

IV.     **Deadline for the Production of Rule 16 Discovery**

The Government moves for an order requiring Defendant to produce reciprocal discovery of the material he intended to offer during a defense case-in-chief, including substantive non-impeachment evidence and expert disclosure materials.  Dkt. No. 176 at 26–30.  It notes it has complied with Defendant's Rule 16 request, but that Defendant has not responded to the Government's request for reciprocal discovery.  *Id.*  Defendant states that he will comply with his reciprocal discovery obligations.  Dkt. No. 194 at 23.

Federal Rule of Criminal Procedure 16(b) requires a defendant, if he has made a request for Rule 16 discovery and if the Government has complied with that request, to produce to the Government upon request the items of discovery that are in his possession, custody or control and that he intends to use in his case-in-chief.  Fed. R. Cr. P. 16(b)(1)(A).  The reciprocal obligation also applies to expert reports.  Fed. R. Cr. P. 16(b)(1)(B).  *See United States v. Jasper*, 2003 WL 223212, at *3–6 (S.D.N.Y. Jan. 31, 2003).

The Government has complied with its Rule 16 obligations, but the defense has not. Defendant is ordered to produce the requested reciprocal discovery by no later than February 25, 2025.

V.   **Business Records**

The Government moves for an order permitting it to offer into evidence business records on the basis of written declarations by the relevant custodian of records, including records from Facebook and Instagram, the Arizona Department of Economic Security, and the New York Department of Labor, as well as video footage from several locations. Dkt. No. 176 at 20–26. Defendant acknowledges that the Government has provided twelve proposed stipulations to the defense, but states that it will not decide a position until it has received all of the proposed certifications. Dkt. No. 194 at 22.

Federal Rule of Evidence 803(6)(D) allows the record of a regularly conducted activity to be admitted pursuant to a showing that the requirements of 803(6)(A)–(C) are met by "the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification." Fed. R. Evid. 803(6)(D). Rule 902(11) states that "the original or copy of a domestic record that meets the requirements of Rule 803(6)(A)–(C), as shown by the certification of the custodian or another qualified person" is self-authenticating. Fed. R. Evid. 902(11).

The Second Circuit has not directly addressed whether the certification of a custodian pursuant to Rules 803(6)(D) and 902(11) is a testimonial document for Confrontation Clause purposes. *See United States v. Qualls*, 613 F. App'x 25, 29 n.1 (2d Cir. 2015) (summary order) ("[W]e need not reach the issue of whether the Confrontation Clause would be implicated by admitting certifications prepared by records custodians solely to authenticate or lay the foundation for otherwise admissible business records."). However, in *United States v. Qualls*, an unpublished summary order, the Circuit strongly hinted it is not. *Id.* at 28–29 & n.1. The Circuit cited the statement in *Melendez-Diaz v. Massachusetts,* 557 U.S. 305, 323 (2009), that "[a] clerk could by affidavit authenticate or provide a copy of an otherwise admissible record," but the

prosecution could not "admit into evidence a clerk's certificate." *Qualls*, 613 F. App'x at 29 n.1 (quoting *Melendez-Diaz*, 557 U.S. at 323). The Circuit also noted that business records themselves are not testimonial. *Id.* at 28 (citing *United States v. James*, 712 F.3d 79, 90 (2d Cir. 2013)).

For the reasons suggested in *Qualls*, it would not make sense for a certification under Rule 803(6)(D) to be considered testimonial. The certification is not used to "establish or prove some fact at trial," and does not come into evidence. *United States v. Yeley-Davis*, 632 F.3d 673, 680 (10th Cir. 2011). It merely lays a foundation for the introduction of the business records, which are themselves non-testimonial. This is the historical distinction recognized by *Melendez-Diaz*, which contrasts a certificate used for authentication from a certificate used as "substantive evidence." *Melendez-Diaz*, 557 U.S. at 322–23. Requiring the custodian to testify to the information in the certification would foil the purpose of Rule 902(11), which is to make certified documents self-authenticating without the need for witness testimony. "Every court that has addressed this issue has concluded that admission of certifications provided pursuant to Rule 803(6) . . . does not pose Confrontation Clause problems." *United States v. Al-Imam*, 382 F. Supp. 3d 51, 59 (D.D.C. 2019) (collecting cases).

The Government may authenticate business records via a valid certification under Federal Rule of Evidence 902(11), without the need for confrontation. Whether the Government may introduce such records at trial will depend on a showing of their relevance, which the Government should be prepared to make at the final pretrial conference.

\* \* \*

The Government's motions *in limine* are GRANTED IN PART and DENIED IN PART. The Court reserves judgment on the Government's motion *in limine* to preclude evidence that

9

Hwascar Hernandez possessed a gun at the time Defendant allegedly shot him.

    SO ORDERED.

Dated: February 19, 2025
       New York, New York

                                            LEWIS J. LIMAN
                                     United States District Judge