

*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

February 23, 2025

**BY ECF**

The Honorable Lewis J. Liman
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

    Re:   *United States v. Kevin Perez,* **23 Cr. 99 (LJL)**

Dear Judge Liman:

    The Government respectfully submits this letter in response to the Court's order of February 19, 2025 (Dkt. 202 (the "Order")), and in advance of oral argument at the final pretrial status conference, to (i) describe additional rap video excerpts it wishes to admit into evidence; (ii) provide details of the evidence the Government wishes to admit pursuant to business record certifications; and (iii) seek to authenticate digital extractions from two phones seized from the defendant by certification, pursuant to Rules 902(13) and 902(14).

    **I.**   **Certain Rap Video Excerpts Should be Admitted**

    In the Order, the Court noted that the Government had submitted three representative music videos, and concluded that two of those videos (titled "Who Really Buggin'" and "FTO") were admissible, and a third ("Brotherly Love") would not be admissible in its entirety, without prejudice to the Government moving to admit a more limited portion. (Order at 2–6 & n.2). Consistent with the principles the Court articulated in the Order, the Government has submitted additional video clips (with accompanying transcripts of lyrics), described below, which it respectfully submits are admissible, including a very limited portion of Brotherly Love.[1]

    <u>GX 601</u>: GX 601 is a song titled "Ready 4 War" by the rapper "Edot Baby." The Government expects to elicit witness testimony that Edot Baby (who died in 2022) was a leader of the OYz gang, which is based in the Sugar Hill neighborhood of upper Manhattan—the neighborhood in which the defendant shot and killed Hwascar Hernandez on December 16, 2021. The Government also expects to elicit witness testimony that the defendant, and the Sev Side/DOA gang he led, were in an ongoing dispute with the OYz. The Government also intends to offer social media evidence in which the defendant repeatedly threatened to shoot Edot Baby. The

---

[1] To be sure, if the defendant claims, either in his testimony or in his attorney's arguments to the jury, that he did not possess firearms or is a peace-loving person who did not glorify violence or gunfire, the Government respectfully submits that longer versions or even the entire video of the defendant repeatedly brandishing a firearm should be admitted.

"Ready 4 War" music video depicts Edot Baby and his associates making hand signs that, witnesses will testify, are associated with the OYz, including making the Sev Side/DOA hand sign at the end of the video, pointed down, which witnesses will testify shows disrespect to the defendant's gang. The video also depicts several locations in Sugar Hill in the blocks immediately surrounding where the defendant shot Hernandez, including a park and a brownstone. Video evidence and witness testimony will show that the defendant, armed with a gun, visited those locations looking for OYz gang members in the hour before he shot and killed Hernandez. GX601 thus provides significant evidence of motive for the charged murder of Hernandez.[2] At the same time, because the defendant is not mentioned or shown in GX 601, the risk of unfair prejudice is minimal.

GX 603A and 603B: GX 603A and B depict portions of the music video for "Is Ya Ready" by the defendant. The Government has selected two narrowly-tailored portions to cut out the sound of a gun repeatedly firing and other lyrics that are less probative.

In the first portion of the song, GX 603A, the defendant "disses" Edot Baby by rapping: "Edot Baby, that kid ain't on nothin.'" The defendant also raps: "don't run don't trip," while others shout "Dubski." The Government expects to elicit evidence that those lines refer to an incident in which an associate of the Sev Side/DOA gang shot Dubski, an associate of the rival gang 800 YGz, in the foot and then the head after he tripped, murdering him. The Government expects to elicit witness testimony that glorifying the deaths of rival gang members, such as Dubski, is one way to show disrespect to a rival gang. In GX 603B, the defendant raps: "Catch an LV, put him on his neck," while an individual in the background yells "LVK!" The Government expects to elicit witness testimony that "LV" refers to a rival gang based in the Lambert Houses in the Bronx, with which Sev Side/DOA was in an ongoing dispute, and that "LVK" refers to being a Lambert "killer." Additionally, both GX 603A and 603B depict individuals with the defendant—whom witnesses will identify as fellow Sev Side/DOA members—displaying hand signs to disrespect rival gangs, including "RPT," which is a gang based in the Bronx's River Park Towers complex (also known as "RPT"). The Government expects to establish at trial that, on November 10, 2021, the defendant and other members of Sev Side/DOA committed a drive-by shooting at the River Park Towers, as charged in Counts Four and Five of the Indictment.

The lyrics and visual content in GX 603A and 603B thus have a "direct and specific nexus to the charged conduct" (Order at 5)—that is, violent acts that members or associates of Sev Side/DOA committed, with the defendant's knowledge, in furtherance of the racketeering conspiracy. Moreover, these clips do not depict any guns, and the Government took care to eliminate the portion of the video in which there is an extended sound of a gun repeatedly firing.

GX 605: GX 605 is a two-second clip from the music video for the defendant's song, "Brotherly Love." In the Order, the Court explained that it was excluding "Brotherly Love," but its "preliminary ruling" was "without prejudice" to the Government proposing to admit a more

---

[2] The Government does not seek to admit this video for its truth but rather for its effect on the listener. Witness testimony will establish that the video was widely viewed, and the video explains the rivalry between the defendant's Sev Side/DOA gang and Edot Baby's OYz gang, gives the jury context for why the defendant visited the locations he did on the morning of Hernandez's murder, and helps establish the defendant's motive for killing Hernandez.

2

tailored except. Order at 6 n.2. The Government respectfully submits that it should be permitted to introduce a two-second portion of the video and lyrics from that song in which Perez raps: "DOA bitch I'm dumpin' on anything." In the Government's view, this brief clip is highly probative of the charged racketeering enterprise, in that the defendant defines "DOA" to mean "dumping on anything"—acknowledging his participation in the charged enterprise—while making a hand gesture of a gun shooting into the camera. Use of the video is necessary to show that the defendant is the individual rapping the lyrics, and no gun is displayed in this two-second clip. That the defendant makes a shooting gesture with his hand will corroborate testimony by the Government's witnesses as to the meaning of DOA.

<u>GX 606</u>: GX 606 is a music video of the song "OYK" by Nas EBK and Set Da Trend, two individuals whom witnesses will testify are, respectively, a member and an associate of Sev Side/DOA, that is, the enterprise in the charged racketeering conspiracy.[3] As the song's title—"OYK," that is, "OY Killer"—makes clear, the song is dedicated to disrespecting and threatening the OYz gang, which is the gang whose territory the defendant was in when he killed Hwascar Hernandez. Although the defendant is not listed as one of the artists in the song, he appears throughout the music video, making the sign of a gun to the OYz hand sign (which, witnesses will testify, is a threat to the OYz). At one point in the song, Nas EBK (a fellow member of Sev Side/DOA) raps, in unmistakable terms: "OYz I see gotta die, OYz I see gotta die, OYz I see gotta die, OYz I see gotta die," at which point the defendant appears in the video and yells "All Os shot!"

It is difficult to conceive of evidence that is more probative of the defendant's ongoing dispute with the OYz. That dispute is essential to proving that the December 16, 2021 murder the defendant committed was in aid of the Sev Side/DOA enterprise. On that morning, the defendant traveled to OYz territory, repeatedly displayed his gun, visited a number of locations featured in prominent OYz member Edot Baby's music video (as described above), asked if individuals he encountered were OYz members, and then shot and killed Hernandez. As with the "Who Really Buggin'" video that the Court ruled was "clearly admissible" (Order at 5), GX 606 provides critical evidence that relates directly to one of the charged crimes.

<u>GX611A</u>: GX 611A is an 11-second clip from the song "PSA" by the defendant. In the clip, the defendant raps that if a woman sets him up ("she's the line,") he will carry a firearm ("packin' the bitch") and will shoot it ("Feel under pressure, I'm blastin' the shit"). In addition, he raps that if anyone confronts him and tries to brandish a firearm, the defendant will draw his gun more quickly and will shoot his rival ("I'm wackin' the whip / he tried to up, but I'm faster with it / It get nasty, now he coughin' out blood / told y'all that I get active with it"). The defendant thus boasts in the clip that he will shoot first in response to any threat, real or otherwise. The portion of the video is relevant to the defendant's state of mind, motive, and opportunity to kill

---

[3] This video is admissible as an adoptive admission and as co-conspirator statements. In addition, although this video includes a disclaimer that the featured "illegal materials" are "props," at trial, the Government expects to present testimony that gang members typically include similar disclaimers primarily to avoid law enforcement scrutiny, but that real weapons and drugs are frequently present and featured on rap videos.

3

Hwascar Hernandez, in that Hernandez was walking towards the defendant when the defendant brandished his gun, shooting and killing Hernandez.[4]

## II.  Business Record Certifications

The Court also ruled in the Order that the "Government may authenticate business records via a valid certification under Federal Rule of Evidence 902(11), without the need for confrontation," but also explained that the Government should be prepared at the final pretrial conference to detail the relevance of the underlying business records. (Order at 9). Below, the Government briefly details the relevance of the records associated with the business record certifications it has obtained, all of which have been produced to the defendant:

- Two certifications from Facebook, Inc. (now known as "Meta") authenticating search warrant returns for two of the defendant's Instagram accounts, "kayflockaa" and "kay.flocka." The Government intends to introduce portions of the returns through a summary witness; in those records, the defendant engages in bank and wire fraud, communicates about specific acts of violence, and displayed images and videos depicting his participation in Sev Side/DOA.

- Certifications from the Arizona Department of Economic Security and the New York State Department of Labor, authenticating unemployment claim data for fraudulent claims associated with the defendant.

- Certification from Amiri, a luxury clothing store, whose records reflect that the defendant purchased clothing he wore during the December 16, 2021 murder.

- Certification from the New York City Police Department as to the authenticity of body worn camera footage worn by an officer who responded to the murder, capturing the moments immediately after Hernandez was shot. The Government expects that a witness will also be able to authenticate the video, but has submitted a certification in an abundance of caution.

- Certification from Reliant Partners in Security, a company that manages the video surveillance system at the River Park Towers. The underlying video captures a November 10, 2021 shooting that the defendant is charged with committing in Counts Four and Five of the Indictment.

---

[4] The Government will also seek to admit videos posted by the defendant to his Instagram where the defendant is waving firearms while rap music is playing in the background. Evidence of the defendant inciting and committing violence against rival gang members in order to raise his own status and profile within Sev Side/DOA goes to the heart of the conduct that the Government must prove beyond a reasonable doubt—whether the defendant participated in a racketeering conspiracy that engaged in a pattern of racketeering activities, including murders, attempted murders, and assaults with dangerous weapons. These videos are different in nature to the rap music videos at issue here, in that they are merely videos that the defendant uploaded to his own Instagram account, rather than rap videos he or a co-conspirator created.

4

- Certification from Bronx Community College, whose video surveillance system captures video of the defendant's and his associates' vehicle on their way to River Park Towers on November 10, 2021, moments before the shooting.

- Certifications from St. Barnabas Hospital, authenticating the medical records of the rival 800 YGz gang member who was shot in the face (and later the leg). The defendant rapped about the shooting in "Who Really Bugging." *See* Order at 4-5.

### III. Certifications Under Rule 902(13) and (14)

The Government also seeks to offer two certifications related to extractions of data from cellular phones seized from the defendant. Specifically, on July 18, 2020, members of the NYPD arrested the defendant for possessing a firearm, and a cell phone was seized from him incident to arrest (the "July 2020 Phone"). The Government obtained a warrant to search the phone, and NYPD Computer Crimes Detective Juan Jimenez extracted data from the July 2020 Phone using the Cellebrite tool. Additionally, on November 12, 2021—two days after the River Park Towers shooting—members of the Yonkers Police Department arrested the defendant for possessing a firearm, and also seized a phone from the defendant incident to his arrest (the "November 2021 Phone"). Enrique Santos, a Mobile Forensics Examiner with the United States Attorney's Office, extracted data from the November 2021 Phone using the Cellebrite tool.

Both Detective Jimenez and Mr. Santos have provided signed certifications, pursuant to Federal Rules of Evidence 902(13) and (14), confirming that they verified the authenticity of the extractions they performed, which the Government has marked as GX 401 and 402, respectively. Those certifications are attached as Exhibits A and B. The Government does not intend to seek to admit the full extractions (or the certifications themselves), but will instead offer testimony from a summary witness confirming that various exhibits in fact came from the (authenticated) extractions in GX 401 and 402, at which point the defense will be able to make any objections as to admissibility.

Federal Rules of Evidence 902(13) and 902(14) provide that "[a] record generated by an electronic process or system that produces an accurate result" and "[d]ata copied from an electronic device, storage medium, or file," respectively, that are "shown by a certification of a qualified person that complies with the certification requirements of Rule 902(11) or (12)" are, like properly-certified business records, self-authenticating. The certification requirements of Rules 902(11) and (12), in turn, refer to Rule 803(6). "The reference to Rule 803(6), however, only applies to the procedural requirements contained in that rule." *United States v. Carter*, No. 21Cr681 (NSR), 2024 WL 268248, at *2 (S.D.N.Y. Jan. 24, 2024) (citing Fed. R. Evid. 902(13) & (14) Advisory Committee Note to 2017 Amendment). "That is, 'there is no intent to require . . . a certification under [Rules 902(13) or (14)] to prove the requirements of 803(6)." *Id.* "Therefore, the certification must be made by a 'custodian or another qualified person that complies with a federal statute or a rule prescribed by the Supreme court [. . .]' or 'be signed in a manner that, if falsely made, would subject the maker to a criminal penalty in the country where the certification is signed.'" *Id.* (quoting Fed. Rs. Evid. 902(11) & (12)) (alterations in original).

Here, the certifications from Detective Jimenez and Mr. Santos explain how they authenticated the proposed Government Exhibits by using hash values and by comparing various

5

electronic fields in the proposed Government Exhibits (such as a unique 40-character "Extraction ID" code) to those fields in the original extractions in their possession. Courts in similar circumstances have found such certifications sufficient to authenticate device extractions. *See United States v. Terranova*, ___ F. Supp. 3d ____, 2024 WL 4295508, at *13 (E.D.N.Y. Sept. 26, 2024) (explaining that "the admission of the certification in a criminal trial absent live testimony will not offend the Sixth Amendment's Confrontation Clause because the certification is not 'testimonial,'" and concluding that, "assuming that it produces an appropriate certification from a qualified person, the Government may authenticate the extraction of Terranova's phone without live testimony"); *see also United States v. Miller*, No. 20 Cr. 331 (LDH) (E.D.N.Y.) (ECF Nos. 176, 202) (granting motion *in limine* that sought to authenticate contents of seized electronic devices by certification).

The Advisory Committee Notes on the 2017 Amendment to Federal Rule of Evidence 902, which added Rules 902(13) and (14), apply directly to this scenario. The Advisory Committee explained that it "is often the case that a party goes to the expense of producing an authentication witness, and then the adversary either stipulates authenticity before the witness is called or fails to challenge the authentication testimony once it is presented. The amendment provides a procedure in which the parties can determine in advance of trial whether a real challenge to authenticity will be made, and can then plan accordingly." Fed. R. Evid. 902(14) Advisory Committee Note to 2017 Amendment. For months, the Government has been seeking to obtain a signed stipulation from the defense as to the authenticity of Government Exhibits 401 and 402, along with the authenticity of other exhibits whose authenticity cannot reasonably be disputed. Although the defense has indicated they will likely be willing to stipulate to the authenticity of certain exhibits, to date, they have not returned any signed stipulations. Nor has the defense suggested any good-faith basis on which they could challenge the authenticity of the cell phone extractions. Allowing the Government to authenticate the extractions via certifications under Rules 902(13) and (14) will enable the parties and Court to "determine in advance of trial whether a real challenge to authenticity will be made." *Id.*

        Respectfully submitted,

        MATTHEW PODOLSKY
        Acting United States Attorney

By:       /s/
      Michael R. Herman
      Patrick R. Moroney
      Ni Qian
      Assistant United States Attorneys
      (212) 637-2221 / -2665 / -2364

cc:     All counsel of record (by ECF)