# Law Office of Thomas R. Ashley

### Robert Treat Center
### 50 Park Place, Suite 1400
### Newark, New Jersey 07102
### Tel: (973) 623-0501
### Fax: (973) 623-0329

March 6, 2025

<u>VIA ECF ONLY</u>

The Honorable Lewis J. Liman, U.S.D.J.
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, NY 10007-1312

Re:    <u>United States v. Kevin Perez</u>
       <u>Criminal No. 23-99 (LJL)</u>

Dear Judge Liman:

 This firm serves as counsel for defendant Kevin Perez ("Defendant" or "Mr. Perez") in the above-captioned criminal case. Please accept the within correspondence in lieu of a more formal brief in response to the Government's letter motion dated March 4, 2025 seeking admission of additional rap music, precluding the jury from discovering that Mr. Hernandez was armed with a deadly weapon, and excluding testimony from defense witness Nicholas Zingas.

## I. RAP EXHIBITS THAT LACK PROPER AUTHENTICATION OR FOR WHICH A FACTUAL NEXUS TO THIS INDICTMENT HAS NOT BEEN PRESENTLY ESTABLISHED BY CREDIBLE EVIDENCE SHOULD NOT BE ADMITTED AT THIS TIME

 As a preliminary matter it must be set forth that Defendant objects to the accuracy of the transcriptions of Government exhibits GX 2406A, GX 2407A, and GX 2408 (collectively with the remaining exhibits in the Government's March 4, 2025 motion, "Rap Exhibits"). The alleged lyrics contained in said transcriptions will be addressed for *arguendo*.

 With respect to the Rap Exhibits, the Government has failed to satisfy their burden under <u>Federal Rule of Evidence</u> 901(a) which commands that, "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." The Government is offering the rap lyrics, accompanying videos, and other documents purported to be captions written by Defendant in connection with the public posting of the videos. However, the has been no proof

offered that Mr. Perez controlled the relevant Instagram accounts or authored the post the Government now seeks to admit.

Entering the Rap Exhibits in their entirety without authentication has the potential to tremendously prejudice Mr. Perez considering that celebrity fan accounts are a well-established phenomenon. So much so that Instagram set forth a number of policies meant to ensure that members of the public can identify genuine celebrity accounts from imposters. (**Exhibit A**). The Rap Videos are dated June 15, 2021, July 2, 2021, and July 21, 2021, right in the midst of Mr. Perez's meteoric rise in the music industry. (**Exhibit B**). Mr. Perez's current Instagram account bears a blue check, an indicium denoting that an account is genuinely connected to a celebrity or other public figure. (**Exhibit C**). An Instagram search for the handles "kay.flocka" and "kayflockaa" (asserted by the Government to be controlled by my client) results in the listing of several accounts, one of which bears the blue check symbol and others which do not obviously represent that they are or are not controlled in fact by Mr. Perez. (**Exhibit D**). The undersigned can proffer that the blue check bearing account is the only account unquestionably under the control of Mr. Perez. Under the procedure now proposed by the Government, there is an insufficient factual basis to establish that the Rap Exhibits are what they claim they are.

The Government's novel theory that the promotion of rap music in itself is proof of a racketeering enterprise is totally incongruent to the applicable precedent. This Court relied on United States v. Jordan, 714 F. Supp. 3d 158 (E.D.N.Y. 2024) to decide issues in this case related to the admission of other rap music offered into evidence. It is submitted that the Jordan court made a number of factual findings regarding the business of rap music that should be judicially noticed. "50 years ago, teenagers partied in the Bronx — and gave rise to hip-hop… rap artists have played the part of storytellers, providing a lens into their lives and those in their communities." Id. at 160. Mr. Perez follows in a long legacy of artists hailing from the Bronx who depict the real stories of inner-city youth through music. These stories inevitably include accounts of the illicit trades and violence prevalent in the place that Defendant is from. But, "songs depicting criminal conduct, [have] invited even greater scrutiny of rap artists—not only from the public, but also from law enforcement." Id. at 162. Despite the negative attention, "rap artists have become increasingly incentivized to create music about drugs and violence to gain commercial success, and will exaggerate or fabricate the contents of their music in pursuit of that success. Id. at 163. The Jordan court used a statement from a well-established rapper from the Bronx to emphasize this. He said, "I've been rapping professionally for 30 years. I've lied in almost 95 percent of my songs .... I write like I feel that day. I'm just being creative. You know you ... you couldn't build the jail high enough for the lyrics I've said on songs, which are all untrue." Id.

Because of the nature of rap artistry as described above and considering the many previous decisions regarding the admission of rap music into evidence, the Jordan court established a rule of thumb, "the relevance of rap lyrics as trial evidence depends on the existence of a specific factual nexus between the content of rap music and the crimes alleged." Id. at 164. Other courts have held a rap video irrelevant because there was no evidence that the defendant authored the lyrics or that the views and values in the video were adopted or shared by the defendant. See United States v. Gamory, 635 F.3d 480, 493 (11th Cir. 2011) See also United States v. Stuckey 253 F. App'x 468 (6th Cir. 2007) (admitting lyrics where they described "precisely" the murder the defendant was accused of committing). The Rap Exhibits simply do not contain assertions, if taken as fact, that connect to the crimes charged in this indictment.

Whether or not Defendant, "wrote or performed these lyrics around the time of the alleged murder," is also a relevant consideration. Jordan at 165. Because these videos are said to have been

posted approximately four to five months prior to the acts charged in Counts Two through Five are alleged to have occurred, it is literally impossible that Mr. Perez could have been specifically referencing things which were yet to happen. Therefore, there can be no specific factual nexus to those acts, they are only being offered to suggest a general conflict with others in support of the Count 1 racketeering charge. This is not like other cases where lyrics were properly admitted because they were written, "in the two days following the murders of the victims and at a time when [the defendant] knew he was wanted by the police for the[ ] crimes." United States v. Wilson, 493 F. Supp. 2d 484, 490 (E.D.N.Y. 2006). Such testimony would also be impermissible character evidence under Federal Rule of Evidence 404(a)(1) which prohibits, "[e]vidence of a person's character or character trait…to prove that on a particular occasion the person acted in accordance with the character or trait." General lyrics about disputes with rival rappers or neighborhoods should not be admitted for the purpose of proving that Defendant acted in accord therewith.

The jury should not be put in the position of, "divining a defendant's guilt, in whole or in part, from a musical exposition with only a tenuous relationship to the criminal conduct alleged." Jordan at 167. "Courts should be wary of overly permissive rules allowing the use of rap lyrics and videos against criminal defendants at trial," because, "themes of violence and criminality have become so prevalent within the genre that they have little, if any, probative value[.]" Id. The Government argues that the Rap Exhibits are relevant because the testimony at trial will show that Mr. Perez recruited participants in criminal schemes through Instagram. However, none of the relevant exhibits or any evidence now before the Court demonstrate that Defendant was involved in soliciting criminal conduct online, much less continually as set forth by the Government.

If the Court were inclined to admit any portion of the Rap Exhibits, the argument that the promotion of rap music is indicative of participation in a criminal enterprise must be rebutted with credible testimonial evidence of the commercial success of Mr. Perez's music. It is Defendant's position that any other procedure would effectively forbid him from defending the racketeering counts.

GX 2406A appears to be a video of Mr. Perez posted on an unauthenticated Instagram Account on or about June 15, 2021, less than two months after he turned 18 years old. The young man did what most young aspiring rappers from the Bronx do, as recognized in Jordan, he spoke poorly of nearby neighborhoods and espoused his version of urban bravado like many before him. Yes, this included the name of his area and adjacent places. What is not present is a factual nexus to any crime charged. Non-specific animosity for River Park Towers should not be admitted to prove that Defendant acted in accordance with that trait. The entirety of the clip does not reference SevSide/DOA, the alleged criminal enterprise. To the degree that it is alleged that GX 2406A references the OYz street gang, it must be noted that at the Pretrial Conference the Government conceded regarding alleged victim Hernandez, "[w]e don't think he was actually a member." The fact that the OYz bear no connection to any crime charged in this indictment is not in dispute. The Government's position is that, "whether, in fact, the victim was an OY member is irrelevant," because the evidence at trial will show that Mr. Perez went to an OYz area for the purpose of shooting an OYz member and essentially shot Mr. Hernandez by mistake. But the Government cannot elicit testimony of Mr. Perez's inner thoughts and intentions without him testifying, which is not anticipated at this time.

GX 2407A is another video of Mr. Perez rapping for the internet purportedly posted on July 2, 2021. The Government argues that lines like, "I'm the Flocka promotin' the violence / rappin' and slidin', I don't do the hidin'," are proof that he engaged in real acts of violence. But promoting violence through rap music and not hiding cannot be reasonably construed to infer

personal involvement in any act charged in this indictment. The mention of DOA itself, without a specific nexus to a criminal act is potentially confusing to the jury because Mr. Perez's best-selling musical production is called the "DOA Tape." (**Exhibit E**). The Government is asking this Court to rely on extensive expert opinions regarding Mr. Perez's state of mind to establish the relevance of the Rap Exhibits, but this information has not been provided at this time and is likely inadmissible at any juncture.

GX2408A is a video of an unidentifiable individual in a face mask, purported to be Mr. Perez. Assuming it is Mr. Perez and his voice, the lyrics and video bear no specific relation to any crime he currently faces. Interestingly, the Government in their moving paper admits that a verbal spat, not gang affiliation, is what precedes Hernandez's shooting. This emphasizes the fact that the killing of Hernandez, a man who the Government does not believe is a gang member, was motivated by what can be observed on video: his persistent pursuit of Mr. Perez and his companion, verbally assaulting my client, and ultimately reaching for a loaded pistol in his jacket.

## II. EVIDENCE CORROBORATING THE EYEWITNESS' SUBJECTIVE BELIEF THAT SHE WOULD BE SHOT SHOULD BE ADMITTED

Defense witness Ashanti Washington was present with Defendant at the time they were pursued on a Harlem street by Hernandez. The Government would have this Court believe that Hernandez's possession of a firearm does not tend to corroborate any part of this eyewitness' account of what happened, but that is not the case. Ms. Washington explained that it, "just felt like he was gonna try to shoot us," and that "he did reach in his pockets for something." She also expressed her belief that if Defendant did not act to protect them, that they both would have been shot. This is clear evidence that she had a subjective and objectively reasonable belief that Hernandez had a weapon and intended to use it. The fact that a fully loaded handgun with a bullet in the chamber fell from the coat he was reaching into just minutes after he was shot corroborates Ms. Washington's testimony insofar as it bolsters the objective reasonableness of her subjective belief that Hernandez was armed.

New York Penal Law § 35.15 permits the use of force, "upon another when and to the extent he reasonably believes such to be necessary to defend himself or a third person from what he reasonably believes to be the use or imminent use of unlawful physical force by such other person," and deadly force if he, "reasonably believes that such other person is using or about to use deadly physical force." This is a case in which Mr. Perez is invoking his right to defend himself to rebut the allegation that he used force without justification. "One who reasonably believes that another person is about to use deadly physical force upon him need not wait until he is struck or shot. He may in such circumstances use deadly physical force defensively." Rodriguez v. Heath, 138 F. Supp. 3d 237, 251 (E.D.N.Y. 2015), aff'd, 648 F. App'x 136 (2d Cir. 2016) (internal quotations and citations omitted). The testimony from the only eyewitness expected to be available and the evidence that supports it should not be kept from the jury to ensure that Mr. Perez's Sixth Amendment right to present a defense is not infringed upon.

By no means is the February 27, 2025 statement of Ms. Washington the full extent of her potential testimony. It remains the expectation of defense that at the time of trial there will be testimony elicited that Hernandez made verbal representations that he both possessed a weapon and intended to use it. Under this circumstance, it is defense's position that the discovery of a deadly weapon on Hernandez's person cannot be properly excluded from evidence. *See generally* Horton v. Ercole, 557 F. Supp. 2d 308, 329 (N.D.N.Y. 2008) (citing a collection of self-defense cases

under New York law where whether or not the alleged victim was armed was found to be probative of a defendants subjective belief deadly force was necessary).

### III. BECAUSE THE GOVERNMENT HAS ALLEGED A CRIMINAL ENTERPRISE LAY TESTIMONY REGARDING WITNESSES' PERSONAL KNOWLEDGE OF THE ACTIVITIES OF KEVIN PEREZ OR SEVSIDE/DOA IS NOT EXPERT TESTIMONY OR CHARACTER EVIDENCE

The Government, by nature of the indictment, has raised the issue of whether SevSide/DOA is a criminal enterprise or not. Although they intend to use lay and expert testimony to meet their proofs for Count 1, they assert that Defendant can only introduce evidence of SevSide/DOA's purpose and commercial activity through expert testimony. No precedential authority for this position has been offered.

Defense rejects completely the Governments characterization of the topics Nicholas Zingas will testify to at trial. Mr. Zingas is being offered to provide evidence regarding his personal knowledge of SevSide/DOA's business activities. The Government simply cannot have it both ways. It cannot be the case that the rap music of Mr. Perez and others can be used to suggest that SevSide/DOA was a criminal enterprise, but individuals who did legitimate business with Defendant and his group are precluded from testifying to those facts. Although the Government may wish to exclude any evidence which is favorable to Defendant, their position in inconsistent with centuries old ideals of fundamental fairness enshrined in the United States Constitution and the Federal Rules of Evidence.

The Government argues that Mr. Perez's musicality is not a trait that is pertinent to whether he participated in a racketeering conspiracy. This argument fails for two reasons. First, Mr. Perez's defense to the criminal enterprise allegation is centered around the fact that SevSide is a neighborhood and DOA is a rap music collective. Therefore, Mr. Perez's and other members of SevSide/DOA's participation in legitimate commercial activity must be allowed for him to raise this defense. Second, the Government has opened the door for testimony regarding why Mr. Perez posted the kind of rap content he did, because they intend to introduce testimony that posting on Instagram itself is evidence of the alleged racketeering enterprise.

Neither is testimony regarding Mr. Zingas' experience of Kevin Perez donning the persona of Kay Flock in the studio character evidence under Federal Rule of Evidence 404(a) which would allow the admission of 404(b) material. This potential testimony would be limited to the observations of Mr. Perez in his capacity as an artist who sold millions of records and generated millions of dollars, legally. Evidence being exculpatory, does not make it character evidence since it is not being offered to prove that the defendant acted in accord on any specific occasion. In the 26.2A materials provided, there is no mention of specialized knowledge that informs his perception. Just because Mr. Zingas knows Mr. Perez professionally, that does not make his plain observations expert opinions. It is submitted that Mr. Zingas testimony regarding his personal knowledge of Defendant and SevSide/DOA will assist the trier of fact to determine if the organization was a criminal enterprise and whether Mr. Perez's rap career was in furtherance of illicit ends as will be argued by the Government.

It is hereby requested that the Court enter an order consistent with the positions and precedent herein. I remain…

Very truly yours,

Michael T. Ashley
The Law Office of Thomas R. Ashley
*Attorneys for Defendant Kevin Perez*

cc:    AUSA, Michael R. Herman,
       AUSA, Ni Qian
       AUSA, Patrick A. Moroney
       Defendant, Kevin Perez

EXHIBIT A

Available at https://help.instagram.com/401142933819111

English (US)

Q Search help articles

## When you're asked to select a category for your Instagram account

🔗 Copy link

If you create an Instagram account that's dedicated to a celebrity, public figure, brand, or organization, we may ask that you make it clearer that you're not affiliated with the individual, brand, or organization. This may include asking you to categorize your account as one of the following:

- Fan account: For supporting or appreciating a celebrity, public figure, brand, or organization.
- Commentary account: For offering opinions on a celebrity, public figure, brand, or organization.

We also ask that accounts dedicated to celebrities, public figures, brands, or organizations follow these guidelines:

- Clearly state that the account isn't directly affiliated with the individual, brand, or organization.
- Don't pretend to be the individual, brand, or organization.
- Don't misrepresent your relationship to the individual, brand, or organization.
- Don't post content that infringes or violates someone else's intellectual property rights.

Keep in mind, impersonation isn't allowed on Instagram and could result in the removal of your account. All Instagram accounts must follow the Community Guidelines as well.

## Related Articles

Create a Spring account to open a shop on Instagram

How to set up a business account on Instagram

Select a date range for your account insights on Instagram

About professional accounts on Instagram

Choose topics you're interested in on Instagram

---

◎ Help Center

Instagram Features ›
Manage Your Account ›
Staying Safe ›
Privacy, Security and Reporting ›
Terms and Policies ›
Threads ›

About Us    API    Jobs

↑ Feedback

EXHIBIT B



Dougie B and Kay Flock

COLUMNS

# Listen to Kay Flock, Dougie B, Lil Skrap 1090, and Justo B's "T Cardi" : The Ones

The must-hear rap song of the day

By Alphonse Pierre

May 17, 2021

## Kay Flock, Dougie B, Lil Skrap 1090, and Justo B - "T Cardi"



Kay Flock X Dougie B X Lil Skrap 1090 X Justo B - T Cardi



Try to ignore the second half of "T Cardi." There, the song is made uncomfortable by Lil Skrap 1090, a child who looks like he should be wondering which *Among Us* graphic T-shirt to wear for his final day of elementary school instead of rapping likely ghostwritten drill lyrics. The first minute and a half is good enough to look past this. Kay Flock and Dougie B are a Bronx rap duo who have taken the momentum of drill further Uptown through their sinister joint tracks. On this one, they may rap the usual drill

fare of threats and tough talk, but the appeal of the two is their fiery energy and scratchy voices, which make it sound like they're almost lost by the end. The formidable chemistry of Kay and Dougie means they don't just rap separate verses, but they also go back and forth, finishing each other's lines. Even with a final half that needed to be axed, it's one of the more exciting New York drill songs of the year.

*With artists releasing songs at a fast and furious pace, it's difficult for the average hip-hop head to keep track of it all—no matter how tapped in they are. That's why we created The Ones, a daily post to highlight the song you need to hear.*

Check out underline previous Ones, and listen to new rap from Kay Flock and Dougie B and more on our Spotify playlist.

---

Alphonse Pierre is a senior writer at Pitchfork. He was born and raised in New York. … Read more

Senior Writer

---

TAGS    THE ONES    KAY FLOCK

DOUGIE B    RAP

---

# Hot Links

## A daily roundup of the most important stories

EXHIBIT C



officialkayflocka
ALLAH O AKBAR
16
posts
793K
followers
458
following
Artist
Official Instagram of Kay Flock.
Page Ran by Management
Face Of Bronx Drill BIG DOA
MGMT: @theoneandonlymomma @_banksmanagement
youtu.be/qAgYj8ysXXQ?si=_... and 1 more
Followed by 2 others you know
Follow
Message
Email
DOA
PARENTAL ADVISORY EXPLICIT
Attention Attention I Need Everybody to Stop and Share This Right Now
Help Saved The Essex County Correctional Facility. They are currently giving out Molded food to Inmates including Kevin Perez causing a Big Bacteria that's flowing through out the jail causing them to throw up blood & feel weak. Federal inmates are being locked in without the jail being lock down forcing them to eat the jails food and not let them cook commissary. There's people that don't even get to go to commissary because of

EXHIBIT D

  **kay.flocka** 

🔍 kay.flocka

 **officialkayflocka** ✓
ALLAH O AKBAR ☪ · 793K followers

 **kayflocka.1**
Face Of Bronx Drill 🎤 BIG DOA 💯 🏛️

 **flyhighkay**
Kay Flocka

 **kay.flocka___**
🗑️ 🗑️ 🖤

 **kayflocka_feedpage**
Kaykay

<  kayflockaa 

🔍 kayflockaa

 **kayflockaa**

 **_kayflockaa**
Kayflock fp gang

**kboomiin_**
kayflockaa ♨️

 **kayflockaaa_fanpage**

 **kay_flockaa**
K.royy 👤

EXHIBIT E

**billboard**   CHARTS   MUSIC   VIDEO   SHOP   AWARDS   BUSINESS   LOGIN

FOREVER
WANTED
THE NEW ELIXIR

R&B/HIP-HOP

# Kay Flock: November R&B/Hip-Hop Rookie of the Month

The Bronx drill rapper discusses finding success at 18, his recently-released 'D.O.A. Tape' and the influences that shaped his style.

By EJ Panaligan ⊕
11/24/2021



ADVERTISEMENT



Kay Flock
Kevin Langfois

Kay Flock hails from the Bronx, a New York borough that carries a decorated hip-hop background that includes the legendary likes of Grandmaster Flash, Fat Joe and KRS-One. But at 18, Flock is injecting young blood into the borough's enduring legacy – and he's bringing big Bronx energy to NY drill music.

**+**
**EXPLORE**
SEE LATEST
VIDEOS,
CHARTS AND
NEWS

 **Fat Joe**    **Fivio Foreign**     **G Herbo**

The young rapper has made some early career splashes on multiple *Billboard* charts, indicating that his regionally specific style of New York hip-hop has flashes of crossover potential into the mainstream. His first body of work, *The D.O.A. Tape*, was released earlier this month and debuted at No. 3 on the Billboard Heatseekers Albums Chart. As a featured artist, he debuted at No. 61 on the Billboard Hot 100 earlier this November alongside NY drill veteran Fivio Foreign on Lil Tjay's "Not In The Mood," showing off his energy and his assertive flow on the track while matching the combined intensities of two of the current New York scene's most notable mainstays.

## Trending

1. Police Officer Who Arrested Justin Timberlake for DWI Named Sag Harbor Officer ...

2. How Lady Gaga Tuned Out the 'Noise' of Industry Expectations to Create...

3. BLACKPINK's LISA Says She Didn't Sing Karaoke on 'White Lotus' Set, But...

4. Jelly Roll Opens Up About Earning Back the Right to See His Daughter After...

5. Xzibit on Kendrick Lamar's 'Pedophile' Lyric About Drake: 'This Is Not a...

ADVERTISEMENT



**THE DAILY**
A daily briefing on what matters in the music industry

ADVERTISEMENT